**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| HOWARD K. STERN, as Executor of the Estate of Vickie Lynn Marshall, a/k/a Vickie Lynn Smith, a/k/a Vickie Lynn Hogan, a/k/a Anna Nicole Smith, <br><br> Plaintiff, <br><br> vs. <br><br> STANCIL SHELLEY, a/k/a Ford Shelley, G. BEN THOMPSON, and John or Jane Doe 1-12 whose true names are unknown, <br><br> Defendants. | Civil Action No. |

---

## COMPLAINT

### (JURY TRIAL DEMANDED)

COMES NOW Howard K. Stern ("Stern"), in his capacity as the Executor of the Estate of Vickie Lynn Marshall a/k/a Anna Nicole Smith (the "Estate"), Plaintiff in the above-styled action, and respectfully states his Complaint against Defendants Stancil ["Ford"] Shelley ("Shelley"), G. Ben Thompson ("Thompson"), and John or Jane Doe 1-12 (collectively, "Defendants") as follows:

### PRELIMINARY STATEMENT

This is an action for compensatory, equitable, and punitive relief arising from actions taken by Defendants with respect to personal property of Vickie Lynn Marshall a/k/a Anna Nicole Smith ("Ms. Smith") that passed to the Estate upon Ms. Smith's tragic death.

## THE PARTIES

### 1.

Stern is the duly appointed Executor of the Estate of Ms. Smith. The Last Will and Testament of Ms. Smith was duly probated and admitted to record in the Probate Court of Los Angeles County, California. (A true and correct copy of the Letters Testamentary issued by the Los Angeles County Superior Court appointing Stern as Executor of the Estate is attached hereto as Exhibit A).

### 2.

Pursuant to S.C. Code Ann. §§ 62-4-204 and 62-4-205, Stern has filed with the Probate Court of Horry County, South Carolina, the Will of Vickie Lynn Marshall and a certified copy of the Letters Testamentary issued by the Los Angeles County Superior Court appointing him as Executor of the Estate. (A stamp-filed copy of the same is attached hereto as Exhibit B).

### 3.

Shelley is an individual, the son-in-law of Thompson, and a resident of the State of South Carolina. He may be served by delivery of this Complaint and a Summons at 8000 Beach Drive, Myrtle Beach, South Carolina 29572-4348.

### 4.

Thompson is an individual, the father-in-law of Shelley, and a resident of the State of South Carolina. He may be served by delivery of this Complaint and a Summons at 3760 Waterford, Myrtle Beach, South Carolina 29577.

5.

At all times pertinent and relevant to the incidents described in this Complaint, Defendants John or Jane Doe 1-12 were individuals who acted in concert with Shelley concerning property belonging to the Estate.

6.

The identities of Defendants John or Jane Doe 1-12 are unknown at this time but will be ascertained during discovery, and those individuals will thereafter be added as named party defendants to this action.

## JURISDICTION AND VENUE

7.

Because the Last Will and Testament of Ms. Smith was duly probated and admitted to record in the Probate Court of Los Angeles County, California, Stern, as Executor of the Estate, is a citizen of the State of California for purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(2).

8.

Shelley is a citizen of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

9.

Thompson is a citizen of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

10.

This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Stern and Defendants,

and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

11.

Defendants are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332, in that the assertion of personal jurisdiction is proper under S.C. Code Ann. § 36-2-802, and it comports with due process..

12.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

13.

Venue is proper in this Division because both named defendants reside in Horry County, South Carolina.

## CHOICE OF LAW

14.

Because this Complaint concerns property owned by the Estate, which is considered to be located in California, and because the impact of Defendants' wrongful actions, including injury suffered by the Estate as a direct and proximate result of Defendants' intentional and wrongful actions, is felt in California, California law applies to all Counts of the Complaint.

## STATEMENT OF FACTS

15.

Ms. Smith was an internationally known model, actress, corporate spokeswoman, producer, reality television star, and celebrity.

16.

Ms. Smith died testate on February 8, 2007.

17.

Upon her death, all of Ms. Smith's real and personal property passed to her Estate.

18.

At the time of her death, Ms. Smith maintained a home in the Bahamas which was known as Horizons.

**Shelley, Thompson, and Ms. Smith Were Involved in Contentious Litigation over Horizons**

19.

At the time of her death, Ms. Smith was involved in a contentious dispute with Shelley and his father-in-law, Thompson, over ownership of Horizons.

20.

The dispute first arose after the death of Ms. Smith's son, Daniel, on September 10, 2006.

21.

Thompson had an eviction notice served on Ms. Smith on October 20, 2006, the day after the funeral of Ms. Smith's son, Daniel.

22.

In October 2006, Ms. Smith sued Thompson over ownership of Horizons, and Thompson filed a counterclaim against Ms. Smith.

23.

In mid-November 2006, Thompson had the power at Horizons turned off while Ms. Smith was in the home with her newborn daughter.

24.

On November 20, 2006, the court in the Bahamas entered an injunction (the "Injunction")
against Thompson and his agents, which prohibited Thompson and his agents from entering
Horizons. (A true and correct copy of the Injunction is attached hereto as Exhibit C.)

25.

A true and correct copy of the Injunction was posted prominently on both gates at
Horizons.

26.

Shelley and Thompson publicized the contentious dispute with Ms. Smith in the
international media, including holding a press conference in early November 2006.

27.

Shelley and Thompson also appeared on the Fox News Network ("Fox") show *On the
Record with Greta Van Susteren*, on January 30, 2007, to publicize the contentious dispute with
Ms. Smith.

**Shelley Without Authorization or Consent Removed Personal and Private Items
From Horizons Less than 24 Hours after Ms. Smith's Death**

28.

On or about February 9, 2007, the day following Ms. Smith's sudden death, Shelley and
others entered Horizons without authorization and in violation of the Injunction.

29.

At the time Shelley and his accomplices entered Horizons without authorization and in
violation of the Injunction, an agency relationship existed between Shelley and his accomplices

and Thompson, and Shelley and his accomplices were acting pursuant to the authorization and direction of Thompson.

30.

Shelley has admitted publicly that he was aware of the Injunction at the time he entered Horizons on February 9, 2007.

31.

Shelley did not receive authorization from Ms. Smith's Estate prior to entering Horizons on February 9, 2007.

32.

After entering Horizons without authorization, Shelley and his accomplices removed from Horizons numerous of Ms. Smith's personal and private items that had passed to Ms. Smith's Estate upon her death.

33.

At the time Shelley and his accomplices removed from Horizons numerous of Ms. Smith's personal and private items that passed to Ms. Smith's Estate upon her death, an agency relationship existed between Shelley and his accomplices and Thompson, and Shelley and his accomplices were acting pursuant to the authorization and direction of Thompson.

34.

Shelley did not receive authorization from Ms. Smith's Estate prior to removing personal property from Horizons on February 9, 2007.

35.

The personal and private items removed by Shelley and his accomplices included the following:

a.     Numerous paintings and drawings created by Ms. Smith, including paintings painted specifically for her daughter's nursery;

b.     Documents pertaining to Ms. Smith and her daughter, Dannielynn, including legal contracts, residency certificate, banking information, attorney-client privileged documents, and even Dannielynn's birth certificate, first footprint, hospital records and ultrasound photographs;

c.     Two (2) computers containing Ms. Smith's personal files and images;

d.     One (1) external hard drive containing Ms. Smith's personal files and images;

e.     Approximately twenty-five (25) MiniDV tapes containing Ms. Smith's personal home movies;

f.     In excess of one hundred (100) DVDs containing thousands of images and videos, including Ms. Smith's personal pictures, and a DVD of Ms. Smith's last movie, "Illegal Aliens," which had not yet been released;

g.     Approximately thirty (30) pairs of sunglasses; and

h.     Three (3) cellular telephones, including a U.S. cell phone that had voice messages on it and a local cell phone that contained video of Ms. Smith's commitment ceremony to Stern.

There may also be additional items removed by Shelley and his accomplices.

36.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith having her face painted and playing various games (the "Clown video").

37.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith sharing Christmas with her family (the "Christmas video").

38.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith and Shelley discussing ownership of Horizons (the "Horizons video").

39.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith's wedding ceremony with Stern, which was captured on a cellular telephone (the "Wedding video").

40.

Among the personal and private items taken without authorization from Horizons were images of Ms. Smith with former Bahamian Minister of Immigration, Shane Gibson (the "Gibson photographs").

41.

Among the personal and private items taken without authorization from Horizons was a cellular telephone containing messages from Shane Gibson (the "Gibson messages").

42.

Among the personal and private items taken without authorization from Horizons was Ms. Smith's certificate of permanent residence in the Bahamas (the "Certificate of Permanent Residence").

43.

Among the personal and private items taken without authorization from Horizons were certain Western Union receipts (the "Western Union receipts").

44.

Upon information and belief, Shelley's actions in relation to these items are the subject of an ongoing investigation in the Bahamas.

45.

Shelley has admitted publicly that he assumed, asserted, and exercised dominion, ownership, and control over Ms. Smith's personal and private items after entering Horizons after Ms. Smith's death.

## Shelley Provided to the Media Personal and Private Items Belonging to the Estate

46.

Within days after Ms. Smith's death, certain items that Shelley and his accomplices took from Horizons, without authorization or consent, began appearing in the media.

47.

Court hearings were conducted in Florida from February 14 through 22 to determine custody of Ms. Smith's body for purposes of burial.

48.

Shelley was in Florida during the custody hearings, and he gave sworn testimony during the hearings.

49.

Various reporters were in Florida covering the hearings, physically present inside and outside the Courtroom.

50.

While he was in Florida during February 2007, Shelley had possession of certain items that he had removed from Horizons. These items were shown to Larry Birkhead and his counsel by Shelley.

51.

While he was in Florida during February 2007, Shelley provided certain items that he had removed from Horizons to various media outlets.

52.

Upon information and belief, Shelley provided certain items that had been removed from Horizons to various media outlets in an attempt to gain an advantage for Thompson in the dispute over Horizons.

53.

Shelley provided the Clown video to various media outlets.

54.

Upon information and belief, Shelley provided the Christmas video to various media outlets.

55.

Upon information and belief, Shelley provided the Horizons video to various media outlets.

56.

Upon information and belief, Shelley provided the Wedding video to various media outlets.

57.

Upon information and belief, Shelley provided the Gibson photographs to various media outlets.

58.

Upon information and belief, Shelley provided the Gibson messages to various media outlets.

59.

Upon information and belief, Shelley provided the Certificate of Permanent Residence to various media outlets.

60.

Upon information and belief, Shelley provided the Western Union receipts to various media outlets.

61.

Shelley did not receive authorization from Ms. Smith's Estate to provide to any media outlet any of the items that he and his accomplices had taken from Horizons.

62.

The Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts have all been widely and internationally broadcast in the mainstream media.

63.

Upon information and belief, certain items that had been removed from Horizons were widely and internationally broadcast in the mainstream media to various media outlets in an

edited form to imply false circumstances in an attempt for Shelley and Thompson to gain an advantage in the dispute over Horizons.

64.

The Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts are the rightful property of the Estate.

65.

Upon information and belief, Shelley received pecuniary gain from various media outlets for releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and/or Western Union receipts.

66.

Upon information and belief, Shelley provided the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and/or Western Union receipts to Fox.

67.

Upon information and belief, the Gibson photographs were first broadcast on or about February 12, 2007, during *On the Record with Greta Van Susteren* on Fox.

68.

Upon information and belief, the Certificate of Permanent Residence was first broadcast on or about February 15, 2007, during *On the Record with Greta Van Susteren* on Fox.

69.

Upon information and belief, the Clown video was first broadcast on or about February 19, 2007, during *On the Record with Greta Van Susteren* on Fox.

70.

Upon information and belief, the Wedding video was first broadcast on or about March 5, 2007, during *On the Record with Greta Van Susteren* on Fox.

71.

Upon information and belief, the Gibson messages were first broadcast on or about March 12, 2007, during *On the Record with Greta Van Susteren* on Fox.

72.

Upon information and belief, the Christmas video was first broadcast on or about March 22, 2007, during *On the Record with Greta Van Susteren* on Fox.

73.

Upon information and belief, the Horizons video was first broadcast on or about March 22, 2007, during *On the Record with Greta Van Susteren* on Fox.

74.

Upon information and belief, the Western Union receipts were first broadcast on or about March 23, 2007, during *On the Record with Greta Van Susteren* on Fox.

75.

Ms. Smith's Estate did not provide authorization to any media outlets, including Fox, to broadcast the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, or Western Union receipts.

## Shelley Surrendered Some of the Items He Took from Horizons

76.

Stern, as the then-nominated Executor of the Estate,[1] immediately demanded the return of the items taken by Shelley and his accomplices from Horizons.

77.

On or about February 12, 2007, Shelley surrendered two (2) computers, an external hard drive, nine (9) MiniDV tapes, and miscellaneous papers to Horry County, South Carolina authorities. These items represented a small portion of the personal and private items that Shelley and his accomplices took from Horizons without authorization or consent.

78.

Forensic analyses of the computers and external hard drive have established that between February 9, 2007 and February 12, 2007, within days after Ms. Smith's death, all of the files contained on the two (2) computers and external hard drive, taken without authorization or consent from Horizons, were copied and transferred to other external hard drives and DVDs. Certain information was also deleted from the hard drives.

79.

In media appearances following Shelley's return of some of the Estate property to the Horry County, South Carolina authorities, Shelley falsely asserted that he had returned all Estate property in his possession to those authorities.

80.

However, Shelley did not surrender to Horry County, South Carolina authorities all of the Estate items or copies of those items taken without authorization or consent from Horizons.

---

[1] As stated in Paragraph 1 above, Stern is now the duly appointed Executor of the Estate of Anna Nicole Smith.

81.

Stern has made numerous demands upon Shelley to return all items taken without authorization from the Estate, including written demands upon Shelley's attorneys dated March 30, 2007; April 13, 2007; May 17, 2007; May 31, 2007; June 21, 2007; July 25, 2007; October 30, 2007; and November 29, 2007. (True and correct copies of these demand letters are attached hereto as Exhibit D.)

82.

Stern has consistently demanded that Shelley return all property in his possession belonging to the Estate to Stern's attorneys in Atlanta, Georgia.

83.

Stern has never authorized Shelley to return Estate property to anyone other than Stern's counsel, and Stern has never authorized anyone other than his counsel to accept Estate property on his behalf.

84.

On or about May 22, 2007, in blatant disregard of Stern's demands that Estate property be returned to Stern's counsel only, Shelley delivered certain Estate property to Larry Birkhead ("Mr. Birkhead"), the father of Dannielynn Birkhead, who is Ms. Smith's daughter, in Kentucky.

85.

Mr. Birkhead had specifically notified Shelley that he was not authorized to accept Estate property on behalf of Stern. (See emails from Mr. Birkhead to Shelley, true and correct copies of which are attached hereto as Exhibit E.)

86.

The Estate property delivered to Mr. Birkhead included eight (8) paintings and drawings created by Ms. Smith; a photograph of Ms. Smith; a photo album containing ultrasounds of Ms. Smith's daughter, Dannielynn; two (2) MiniDV tapes; and three (3) pairs of sunglasses, which represented only a small portion of the personal and private items that Shelley and his accomplices took without authorization or consent from Horizons.

87.

Shelley did not surrender to Mr. Birkhead all of the personal and private items that passed to Ms. Smith's Estate upon her death that he and his accomplices took without authorization or consent from Horizons.

88.

Upon information and belief, Shelley admitted to Mr. Birkhead that he continued to assume, assert, and exercise dominion, ownership, and control over personal and private items and copies thereof that passed to Ms. Smith's Estate upon her death that he and his accomplices took without authorization or consent from Horizons.

89.

On or about November 8, 2007, Shelley's counsel delivered certain Estate property to Stern's counsel in Atlanta, Georgia.

90.

The Estate property delivered to Stern's counsel in Atlanta included one (1) original sketch created by Ms. Smith; one (1) original compact flash disk; one (1) original MiniDV tape; and one (1) CD containing a copy of the Clown video, which represented only a portion of the

personal and private items that Shelley and his accomplices took without authorization or consent from Horizons.

91.

Shelley did not surrender to Stern's counsel in Atlanta all of the personal and private items that passed to Ms. Smith's Estate upon her death that he and his accomplices took without authorization or consent from Horizons.

92.

Shelley has never returned the originals of any video or document aired in the media.

## COUNT ONE: CONVERSION

### (All Defendants)

93.

Stern incorporates Paragraphs 1 through 92 of this Complaint by reference with the same force and effect as if fully set forth herein.

94.

Defendants have intentionally acted in a manner inconsistent with the Estate's ownership or right of control over the personal and private items that Shelley and his accomplices, acting as agents of Thompson and pursuant to his authorization and direction, removed without authorization or consent from Horizons.

95.

Upon information and belief, from February 9, 2007, through February 12, 2007, Shelley intentionally and wrongfully assumed, asserted, and exercised dominion, ownership, and control over the following Estate property in a manner inconsistent with the Estate's ownership or right of control over the same:

a)      Two (2) computers and one (1) external hard drive;

b)      Nine (9) MiniDV tapes; and

c)      Documents belonging to Ms. Smith, including personal and legal documents, contracts, and records.

96.

From February 9, 2007, through May 22, 2007, Shelley intentionally and wrongfully assumed, asserted, and exercised dominion, ownership, and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same:

a)      A photograph of Ms. Smith;

b)      Eight (8) artistic works created by Ms. Smith;

c)      One (1) photo album containing ultrasounds of Ms. Smith's daughter, Dannielynn;

d)      Two (2) MiniDV tapes; and

e)      Three (3) pairs of sunglasses.

97.

From February 9, 2007, through November 8, 2007, Shelley intentionally and wrongfully assumed, asserted, and exercised dominion, ownership, and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same:

a)      One (1) original sketch created by Ms. Smith;

b)      One (1) original compact flash disk;

c)      One (1) original MiniDV tape; and

d)      One (1) CD containing a copy of the Clown video.

98.

From February 9, 2007, through the present, Shelley has intentionally and wrongfully assumed, asserted, and exercised dominion, ownership, and control over the following Estate property in a manner inconsistent with the Estate's ownership or right of control over the same:

a)  Approximately seven (7) to eleven (11) artistic works created by Ms. Smith;

b)  In excess of one hundred (100) DVDs containing personal and private images of Ms. Smith, including but not limited to the Gibson photographs;

c)  Approximately twenty-two (22) original and an undetermined number of copied MiniDV tapes containing Ms. Smith's personal home videos, including but not limited to the Clown video, Christmas video, Wedding video, and Horizons video;

d)  Three (3) cellular telephones and the contents thereon, including but not limited to the Wedding video and Gibson messages;

e)  Copies of all files from the two computers and external hard drive Shelley surrendered to Horry County, South Carolina authorities;

f)  Documents belonging to Ms. Smith, including the Certificate of Permanent Residence and Western Union receipts; and

g)  Approximately twenty-seven (27) pairs of Ms. Smith's sunglasses.

99.

When Shelley intentionally and wrongfully assumed, asserted, and exercised dominion, ownership, and control over the Estate property set forth in Paragraphs 95 through 98, an agency

- 20 -

relationship existed between Shelley and Thompson, and Shelley was acting pursuant to the authorization and direction of Thompson.

100.

The Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts are the rightful property of the Estate.

101.

The Estate has suffered damages as a direct and proximate result of Defendants' actions.

102.

As a direct and proximate result of Defendants' continued intentional and wrongful exercise of dominion, ownership, and control over Estate property, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

103.

The unlawful actions of Defendants demonstrate willful misconduct, malice, wantonness, oppression, and entire want of care which raises a presumption of conscious indifference to the consequences.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Defendants on Count One of this Complaint;

(b)     That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)     That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(d)     That this Court order Shelley to return all items he and his accomplices removed from Horizons on or about February 9, 2007, including any unauthorized copies Shelley or his accomplices made of those items;

(e)     That this Court order Defendants to disgorge all benefits they received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith;

(f)     That this Court order Shelley and his accomplices to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)     That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)     That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

**TRIAL BY JURY DEMANDED ON COUNT ONE.**

## COUNT TWO: WRONGFUL TAKING OF ESTATE PROPERTY
## (CAL. PROB. CODE § 850 *et seq.*)

### (All Defendants)

104.

Stern incorporates Paragraphs 1 through 103 of this Complaint by reference with the same force and effect as if fully set forth herein.

105.

Upon information and belief, Shelley is in unlawful possession of the following items:

a)      Approximately seven (7) to eleven (11) artistic works created by Ms. Smith;

b)      In excess of one hundred (100) DVDs containing personal and private images of Ms. Smith, including but not limited to the Gibson photographs;

c)      Approximately twenty-two (22) original and an undetermined number of copied MiniDV tapes containing Ms. Smith's personal home videos, including but not limited to the Clown video, Christmas video, Wedding video, and Horizons video;

d)      Three (3) cellular telephones and the contents thereon, including but not limited to the Wedding video and Gibson messages;

e)      Files copied from the two computers and external hard drives Shelley surrendered to Horry County, South Carolina authorities;

f)      Documents belonging to Ms. Smith, including the Certificate of Permanent Residence and Western Union receipts; and

g)      Approximately twenty-seven (27) pairs of Ms. Smith's sunglasses.

106.

The items identified in Paragraph 105 of this Complaint, as well as any copies, excerpts, and media depicting the items or any portion of the same, belong solely to the Estate.

107.

Since the items identified in Paragraph 105 of this Complaint were taken without authorization from Horizons, they have been in the unlawful possession of Shelley and/or his accomplices and remain in their possession despite requests by Stern for the immediate return of the property.

108.

Shelley's and/or his accomplices' unlawful possession of the Estate property set forth in Paragraph 105 is the result of an agency relationship between Shelley and Thompson, in which Shelley and his accomplices were acting pursuant to the authorization and direction of Thompson.

109.

Defendants have in bad faith wrongfully taken property belonging to the Estate.

110.

The Estate has suffered damages as a direct and proximate result of Defendants' actions.

111.

As a direct and proximate result of Defendants' wrongful taking of Estate property, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Defendants on Count Two of this Complaint;

(b)     That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)     That, pursuant to Cal. Prob. Code § 859, this Court award double damages for Count Two of this Complaint;

(d)     That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(e)     That this Court order Shelley to return all items he and his accomplices removed from Horizons on or about February 9, 2007, including any unauthorized copies Shelley or his accomplices made of those items;

(f)     That this Court order Defendants to disgorge all benefits they received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith;

(g)     That this Court order Shelley and/or his accomplices to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(h)     That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(i)     That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

## TRIAL BY JURY DEMANDED ON COUNT TWO.

## COUNT THREE: STATUTORY & COMMON LAW COMMERCIAL APPROPRIATION OF RIGHT OF PUBLICITY (CAL. CIV. CODE § 3344.1)

### (Defendant Shelley)

112.

Stern incorporates Paragraphs 1 through 111 of this Complaint by reference with the same force and effect as if fully set forth herein.

113.

Ms. Smith held an intangible property right of publicity in the images contained on the computers, external hard drives, MiniDV tapes, DVDs, and cellular telephones, which Shelley and his accomplices removed from Horizons without authorization or consent.

114.

Ms. Smith held an intangible property right of publicity in her name, voice, photograph, and likeness contained on the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts.

115.

Ms. Smith commercially exploited her right of publicity during her life.

116.

Upon Ms. Smith's death, her right of publicity passed to her Estate.

117.

Shelley used Ms. Smith's name, voice, photograph, and likeness contained in the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts without consent.

118.

Upon information and belief, Shelley received financial gain for his unauthorized use of Ms. Smith's name, voice, photograph, and likeness contained in the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts.

119.

Shelley's conduct in using, displaying, transferring, and selling or attempting to sell the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts, as set forth above, constitutes "use" of Ms. Smith's name, voice, likeness and photograph within the meaning of California Civil Code § 3344.1.

120.

The Estate has suffered damages as a direct and proximate result of Shelley's actions.

121.

As a direct and proximate result of Shelley's use of Ms. Smith's name, voice, photograph and likeness, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

122.

The unlawful actions of Shelley demonstrate willful misconduct, malice, wantonness, oppression, and entire want of care which raises a presumption of conscious indifference to the consequences.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Shelley on Count Three of this Complaint;

(b)     That this Court enter judgment against Shelley for compensatory damages in an amount to be determined at trial;

(c)     That, pursuant to Cal. Civ. Code § 3344.1, this Court award attorneys' fees for Count Three of this Complaint;

(d)     That this Court enter judgment against Shelley for punitive damages in an amount sufficient to punish and penalize Shelley and to deter Shelley from repeating his unlawful conduct;

(e)     That this Court order Shelley to return all items he and his accomplices removed from Horizons on or about February 9, 2007, including any unauthorized copies Shelley or his accomplices made of those items;

(f)     That this Court order Shelley to disgorge all benefits he received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith;

(g)     That this Court order Shelley to disgorge all benefits he received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(h)    That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(i)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

## TRIAL BY JURY DEMANDED ON COUNT THREE.

## COUNT FOUR: UNJUST ENRICHMENT/RESTITUTION

### (Defendant Shelley)

123.

Stern incorporates Paragraphs 1 through 122 of this Complaint by reference with the same force and effect as if fully set forth herein.

124.

By intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith, Shelley has unjustly enriched himself at the expense of the Estate.

125.

Under the circumstances, it is unjust for Shelley to retain any benefit he received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith.

126.

By releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts to the media, Shelley has unjustly enriched himself at the expense of the Estate.

127.

Under the circumstances, it is unjust for Shelley to retain any benefit he received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts.

128.

The unlawful actions of Shelley demonstrate willful misconduct, malice, wantonness, oppression, and entire want of care which raises a presumption of conscious indifference to the consequences.

129.

The Estate lacks an adequate remedy at law.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Shelley on Count Four of this Complaint;

(b)     That this Court enter judgment against Shelley for compensatory damages in an amount to be determined at trial;

(c)     That this Court enter judgment against Shelley for punitive damages in an amount sufficient to punish and penalize Shelley and to deter Shelley from repeating his unlawful conduct;

(d)     That this Court order Shelley to return all items he and his accomplices removed from Horizons on or about February 9, 2007, including any unauthorized copies Shelley or his accomplices made of those items;

(e)    That this Court order Shelley to disgorge all benefits he received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith;

(f)    That this Court order Shelley to disgorge all benefits he received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)    That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

## TRIAL BY JURY DEMANDED ON COUNT FOUR.


## COUNT FIVE: UNFAIR COMPETITION
## (CAL. BUS. & PROF. CODE § 17200 *et seq.*)

### (All Defendants)

130.

Stern incorporates Paragraphs 1 through 129 of this Complaint by reference with the same force and effect as if fully set forth herein.

131.

Defendants' conduct, and in particular, their conversions and violations of California Civil Code section 3344.1, constitute an "unlawful . . . business act or practice" within the meaning of California Business & Professions Code section 17200 *et seq.*

132.

Shelley's conversions were made within the scope of his agency relationship with Thompson and were made pursuant to the authorization and direction of Thompson.

133.

The Estate has suffered damages as a direct and proximate result of Defendants' unlawful business practices.

134.

As a direct and proximate result of Defendants' unlawful business practices, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

135.

Stern is entitled to an order requiring that Defendants return to the Estate all Estate property currently in the possession, custody or control of Defendants.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)    That this Court enter judgment in favor of the Plaintiff and against Defendants on Count Five of this Complaint;

(b)    That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)    That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(d)    That this Court order Shelley to return all items he and his accomplices removed from Horizons on or about February 9, 2007, including any unauthorized copies Shelley or his accomplices made of those items;

(e)    That this Court order Defendants to disgorge all benefits they received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith;

(f)    That this Court order Shelley to disgorge all benefits he received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)    That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

## TRIAL BY JURY DEMANDED ON COUNT FIVE.


## COUNT SIX: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
## (18 U.S.C. § 1030(a)(5))

### (Defendant Shelley)

136.

Stern incorporates Paragraphs 1 through 135 of this Complaint by reference with the same force and effect as if fully set forth herein.

137.

Upon information and belief, Shelley copied confidential and proprietary data from Ms. Smith's computers and external hard drives.

138.

Upon information and belief, Shelley also deleted certain confidential and proprietary data from Ms. Smith's hard drives.

139.

Shelley knowingly caused the transmission of the "copy" and other commands to a protected computer, and as a result of such conduct, intentionally caused damage without authorization.

140.

Shelley accessed a protected computer without authorization, and as a result of such conduct, recklessly caused damage.

141.

Shelley intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage.

142.

As a direct and proximate result of Shelley's unlawful access of Ms. Smith's computers and external hard drives, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

143.

Shelley's conduct caused loss to the Estate during a 1-year period aggregating at least $5,000 in value.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Shelley on Count Six of this Complaint;

(b)     That this Court enter judgment against Shelley for compensatory damages in an amount to be determined at trial;

(c)     That this Court enter judgment against Shelley for punitive damages in an amount sufficient to punish and penalize Shelley and to deter Shelley from repeating his unlawful conduct;

(d)     That this Court order Shelley to return all items he and his accomplices removed from Horizons on or about February 9, 2007, including any unauthorized copies Shelley or his accomplices made of those items;

(e)     That this Court order Shelley to disgorge all benefits he received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith;

(f)     That this Court order Shelley to disgorge all benefits he received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)     That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)     That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

**TRIAL BY JURY DEMANDED ON COUNT SIX.**

## COUNT SEVEN: CIVIL CONSPIRACY

### (All Defendants)

144.

Stern incorporates Paragraphs 1 through 143 of this Complaint by reference with the same force and effect as if fully set forth herein.

145.

In furtherance of Defendants' actions that resulted in conversions of Estate property and wrongful taking of Estate property in violation of Cal. Prob. Code § 850, *et seq.*, Shelley and Thompson formed and operated an agreement to convert Estate property and to wrongfully take Estate property in violation of Cal. Prob. Code § 850, *et seq.*

146.

The Estate has suffered damages as a direct and proximate result of Shelley's and Thompson's agreement and by acts done by Shelley and/or Thompson in furtherance of the agreement.

147.

As a direct and proximate result of Defendants' conspiracy that resulted in the conversion and wrongful taking of Estate property, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Defendants on Count Seven of this Complaint;

(b)     That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)     That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(d)     That this Court order Shelley to return all items he and his accomplices removed from Horizons on or about February 9, 2007, including any unauthorized copies Shelley or his accomplices made of those items;

(e)     That this Court order Shelley to disgorge all benefits he received by intentionally and wrongfully assuming, asserting, and exercising dominion and control over the personal and private items of Ms. Smith;

(f)     That this Court order Shelley to disgorge all benefits he received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)     That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)     That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

**TRIAL BY JURY DEMANDED ON COUNT SEVEN.**

Respectfully submitted this 4 day of August, 2008.

L. Lin Wood
(Georgia Bar No. 774588) (Pro hac vice submitted)
llwood@pogolaw.com

- 37 -

Nicole Jennings Wade
(Georgia Bar No. 390922) (Pro hac vice submitted)
nwade@pogolaw.com
Luke A. Lantta
(Georgia Bar No. 141407) (Pro hac vice submitted)
llantta@pogolaw.com

**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
Telephone:     (404) 572-6600
Facsimile:     (404) 572-6999

Karl A. Folkens
(District Court ID No. 854)
karl@folkenslaw.com
Louis Nettles
(District Court ID No. 2521)
louis@folkenslaw.com

**FOLKENS LAW FIRM, P.A.**
3326 West Palmetto Street
Florence, South Carolina 29501
Telephone:     (843) 665-0100
Facsimile:     (843) 665-0500

1270263/4