# MOTION FOR LEAVE

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| HOWARD K. STERN, as Executor of the Estate of Vickie Lynn Marshall, a/k/a Vickie Lynn Smith, a/k/a Vickie Lynn Hogan, a/k/a Anna Nicole Smith,  )  )  )  )  )  )  Plaintiff,  )  )  vs.  )  )  STANCIL SHELLEY,  )  a/k/a Ford Shelley,  )  G. BEN THOMPSON,  )  GAITHER BENGENE THOMPSON, II,  )  MELANIE THOMPSON,  )  GINA THOMPSON SHELLEY,  )  SUSAN M. BROWN, and  )  THE LAW OFFICES OF SUSAN M. BROWN, P.C.  )  )  Defendants.  )  _____/ | Civil Action No. 4:08-cv-2753-TLW |

**FIRST AMENDED COMPLAINT**

COMES NOW Howard K. Stern ("Stern"), in his capacity as the Executor of the Estate of Vickie Lynn Marshall a/k/a Anna Nicole Smith (the "Estate"), Plaintiff in the above-styled action, and respectfully states his First Amended Complaint against Defendants Stancil ["Ford"] Shelley ("Ford"), G. Ben Thompson ("Ben"), Gaither Bengene Thompson, II ("Gaither"), Melanie Thompson ("Melanie"), Gina Thompson Shelley ("Gina"), Susan M. Brown ("Brown"), and The Law Offices of Susan M. Brown, P.C. (the "Law Firm") (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

This is an action for compensatory, equitable, and punitive relief arising from actions taken by Defendants with respect to personal property of Vickie Lynn Marshall a/k/a Anna Nicole Smith ("Ms. Smith") that passed to the Estate upon Ms. Smith's tragic death.

## THE PARTIES

1.

Stern is the duly appointed Executor of the Estate of Ms. Smith. The Last Will and Testament of Ms. Smith was duly probated and admitted to record in the Probate Court of Los Angeles County, California. (A true and correct certified copy of the Letters Testamentary issued by the Los Angeles County Superior Court appointing Stern as Executor of the Estate is attached hereto as Exhibit A).

2.

Pursuant to S.C. Code Ann. §§ 62-4-204 and 62-4-205, in connection with the filing of the Original Complaint in this action, Stern has previously filed with the Probate Court of Horry County, South Carolina, the Will of Vickie Lynn Marshall and a certified copy of the Letters Testamentary issued by the Los Angeles County Superior Court appointing him as Executor of the Estate. (A true and correct copy of the Will and Letters Testamentary file-stamped by the Horry County Probate Court on August 4, 2008, are attached hereto as Exhibit B.)

3.

Ford is an individual; the son-in-law of Ben, the brother-in-law of Gaither and Melanie, and husband of Gina; and a resident of the State of South Carolina. Ford has been previously served with the Original Complaint and a Summons.

4.

Ben is an individual; the father-in-law of Ford and Melanie and father of Gaither and Gina; and a resident of the State of South Carolina. Ben has been previously served with the Original Complaint and a Summons.

5.

Gaither is an individual; the son of Ben, the husband of Melanie, the brother of Gina, and the brother-in-law of Ford; and a resident of the State of South Carolina. He may be served by delivery of this Amended Complaint and a Summons at 3250 Plattmoor Drive, Myrtle Beach, South Carolina 29588.

6.

Melanie is an individual; the daughter-in-law of Ben, the wife of Gaither, the sister-in-law of Ford and Gina; and a resident of the State of South Carolina. She may be served by delivery of this Amended Complaint and a Summons at 3250 Plattmoor Drive, Myrtle Beach, South Carolina 29588.

7.

Gina is an individual; the daughter of Ben, the wife of Ford, the sister of Gaither, and the sister-in-law of Melanie; and a resident of the State of South Carolina. She may be served by delivery of this Amended Complaint and a Summons at 400 52nd Avenue North, Myrtle Beach, South Carolina 29577.

8.

Brown is an individual and a resident of the State of Georgia. She may be served by delivery of this Amended Complaint and a Summons at 140 Colony Point, Fayetteville, Georgia 30215.

9.

The Law Firm is a Georgia professional corporation organized as a law firm with its main office located at 525 Clubhouse Drive, Suite 120, Peachtree City, Georgia 30269. Brown is the sole shareholder of the Law Firm.

10.

At all times relevant to Stern's claims, Brown was acting as an authorized agent of the Law Firm in representing Ford, Ben, Gaither and/or Melanie.

11.

At all times relevant to Stern's claims, Brown was authorized by and on behalf of the Law Firm to make the acts and omissions set forth in this First Amended Complaint.

## JURISDICTION AND VENUE

12.

Because the Last Will and Testament of Ms. Smith was duly probated and admitted to record in the Probate Court of Los Angeles County, California, Stern, as Executor of the Estate, is a citizen of the State of California for purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(2).

13.

Ford is a citizen of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

14.

Ben is a citizen of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

15.a

Gaither is a citizen of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

16.

Melanie is a citizen of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

17.

Gina is a citizen of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

18.

Brown is a citizen of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

19.

The Law Firm is a citizen of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

20.

This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Stern and Defendants, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

21.

Ford, Ben, Gaither, Melanie, and Gina are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332, in that the assertion of personal jurisdiction is proper under S.C. Code Ann. § 36-2-802.

22.

Brown and the Law Firm are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332, in that the assertion of personal jurisdiction is proper under S.C. Code Ann. §§ 36-2-803 and 36-2-805.

23.

Specifically, Brown and the Law Firm have

a.    Transacted business in South Carolina by virtue of their representation of Ford, Ben, Gaither, and Melanie;

b.    Contracted to supply services in South Carolina by virtue of their representation of Ford, Ben, Gaither, and Melanie;

c.    Committed tortious acts in South Carolina, by, among other things (i) traveling to South Carolina on several occasions to transfer the property at issue in this action; (ii) displaying in South Carolina the property at issue in this action; and (iii) taking acts in South Carolina in furtherance of the conspiracy outlined in this First Amended Complaint; and

d.    Entered into a contract to be performed in whole or in part in South Carolina by virtue of their representation of Ford, Ben, Gaither, and Melanie.

24.

All of the causes of action asserted against Brown and the Law Firm arise from the acts upon which this Court's jurisdiction over them is based.

25.

Brown and the Law Firm are also subject to the jurisdiction of this Court pursuant to the conspiracy theory of jurisdiction, which provides that if the non-resident defendant was part of an actionable conspiracy, and a co-conspirator performed a substantial act in furtherance of that conspiracy in the forum state, then the non-resident defendant is subject to the personal jurisdiction of the forum court.

26.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

27.

Venue is proper in this Division because five of the seven named defendants reside in Horry County, South Carolina.

## CHOICE OF LAW

28.

Because this Amended Complaint concerns property owned by the Estate, which is considered to be located in California, and because the impact of Defendants' wrongful actions are felt in California, California law applies to all Counts of the Amended Complaint.

## STATEMENT OF FACTS

29.

Ms. Smith was an internationally known model, actress, corporate spokeswoman, producer, reality television star, and celebrity.

30.

Ms. Smith died testate on February 8, 2007.

31.

Upon her death, all of Ms. Smith's real and personal property passed to her Estate.

32.

At the time of her death, Ms. Smith maintained a home in the Bahamas which was known as Horizons.

**Ford, Ben, and Ms. Smith Were Involved in Contentious Litigation over Horizons**

33.

At the time of her death, Ms. Smith was involved in a contentious dispute with Ford and his father-in-law, Ben, over ownership of Horizons.

34.

The dispute first arose after the death of Ms. Smith's son, Daniel, on September 10, 2006.

35.

Ben had an eviction notice served on Ms. Smith on October 20, 2006, the day after the funeral of Ms. Smith's son, Daniel.

36.

In October 2006, Ms. Smith sued Ben over ownership of Horizons, and Ben filed a counterclaim against Ms. Smith.

37.

In mid-November 2006, Ben had the power at Horizons turned off while Ms. Smith was in the home with her newborn daughter.

38.

On November 20, 2006, the court in the Bahamas entered an injunction (the "Injunction") against Ben and his agents, which prohibited Ben and his agents from entering Horizons. (A true and correct copy of the Injunction is attached hereto as Exhibit C.)

39.

A true and correct copy of the Injunction was posted prominently on both gates at Horizons.

40.

Ford and Ben publicized the contentious dispute with Ms. Smith in the international media, including holding a press conference in early November 2006.

41.

Ford and Ben also appeared on the Fox News Network ("Fox") show *On the Record with Greta Van Susteren*, on January 30, 2007, to publicize the contentious dispute with Ms. Smith.

**Ford, Gaither, Melanie, and Gina Without Authorization or Consent Removed
Personal and Private Items
From Horizons Less than 24 Hours after Ms. Smith's Death**

42.

On or about February 9, 2007, the day following Ms. Smith's sudden death, Ford, Gaither, Melanie, and Gina entered Horizons without authorization and in violation of the Injunction.

43.

At the time Ford, Gaither, Melanie, and Gina entered Horizons without authorization and in violation of the Injunction, an agency relationship existed between Ford, Gaither, Melanie,

and Gina, on the one hand, and Ben on the other; and Ford, Gaither, Melanie, and Gina were acting pursuant to the authorization and direction of Ben and his agents.

44.

Ford was aware of the Injunction at the time he entered Horizons on February 9, 2007, and has publicly admitted the same.

45.

Gaither, Melanie, and Gina were aware of the Injunction at the time they entered Horizons on February 9, 2007.

46.

Ford, Gaither, Melanie, and Gina did not receive authorization from Ms. Smith's Estate prior to entering Horizons on February 9, 2007.

47.

Instead, Ford, Gaither, Melanie, and Gina contend that Ben's Bahamian lawyer and agent, Tracy Ferguson, stated they were authorized to enter Horizons on February 9, 2007.

48.

Ford, Gaither, Melanie, and Gina further contend that Ben's Bahamian lawyer and agent, Tracy Ferguson, also stated that they were authorized to remove from Horizons numerous of Ms. Smith's personal and private items that passed to Ms. Smith's Estate upon her death.

49.

After entering Horizons without authorization, Ford, Gaither, Melanie, and Gina removed from Horizons numerous of Ms. Smith's personal and private items that had passed to Ms. Smith's Estate upon her death.

50.

At the time Ford, Gaither, Melanie, and Gina removed from Horizons numerous of Ms. Smith's personal and private items that passed to Ms. Smith's Estate upon her death, an agency relationship existed between Ford, Gaither, Melanie, and Gina, on the one hand, and Ben, on the other; and Ford, Gaither, Melanie, and Gina were acting pursuant to the authorization and direction of Ben and his agents.

51.

At the time Ford, Gaither, Melanie, and Gina removed from Horizons numerous of Ms. Smith's personal and private items that passed to Ms. Smith's Estate upon her death, an agency relationship existed between Tracy Ferguson and Ben; and Ford, Gaither, Melanie, and Gina were acting pursuant to the authorization and direction of Ben's agent, Tracy Ferguson.

52.

Ford, Gaither, Melanie, and Gina did not receive authorization from Ms. Smith's Estate prior to removing personal property from Horizons on February 9, 2007.

53.

The personal and private items removed by Ford, Gaither, Melanie, and Gina included the following:

    a.     Numerous paintings and drawings created by Ms. Smith, including paintings painted specifically for her daughter's nursery;

    b.     Documents pertaining to Ms. Smith and her daughter, Dannielynn, including legal contracts, residency certificate, banking information, attorney-client privileged documents, and even Dannielynn's birth certificate, first footprint, hospital records and ultrasound photographs;

c.     Two (2) computers containing Ms. Smith's personal files and images;

d.     One (1) external hard drive containing Ms. Smith's personal files and images;

e.     Approximately twenty-five (25) MiniDV tapes containing Ms. Smith's personal home movies;

f.     In excess of one hundred (100) DVDs containing thousands of images and videos, including Ms. Smith's personal pictures, and a DVD of Ms. Smith's last movie, "Illegal Aliens," which had not yet been released;

g.     Approximately thirty (30) pairs of sunglasses; and

h.     Three (3) cellular telephones, including a U.S. cell phone that had voice messages on it and a local cell phone that contained video of Ms. Smith's commitment ceremony to Stern.

There may also be additional items removed by Ford, Gaither, Melanie, and Gina.

54.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith having her face painted and playing various games (the "Clown video").

55.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith sharing Christmas with her family (the "Christmas video").

56.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith and Ford discussing ownership of Horizons (the "Horizons video").

57.

Among the personal and private items taken without authorization from Horizons was a private video of Ms. Smith's wedding ceremony with Stern, which was captured on a cellular telephone (the "Wedding video").

58.

Among the personal and private items taken without authorization from Horizons were images of Ms. Smith with former Bahamian Minister of Immigration, Shane Gibson (the "Gibson photographs").

59.

Among the personal and private items taken without authorization from Horizons was a cellular telephone containing messages from Shane Gibson (the "Gibson messages").

60.

Among the personal and private items taken without authorization from Horizons was Ms. Smith's certificate of permanent residence in the Bahamas (the "Certificate of Permanent Residence").

61.

Among the personal and private items taken without authorization from Horizons were certain Western Union receipts (the "Western Union receipts").

62.

Upon information and belief, Ford's actions in relation to these items are the subject of an ongoing investigation in the Bahamas.

63.

Ford has admitted publicly that he assumed and exercised dominion and control over Ms. Smith's personal and private items after entering Horizons after Ms. Smith's death.

**Ford Provided to the Media Personal and Private Items Belonging to the Estate**

64.

Within days after Ms. Smith's death, certain items that Ford, Gaither, Melanie, and Gina took from Horizons, without authorization or consent, began appearing in the media.

65.

Court hearings were conducted in Florida from February 14 through 22, 2007, to determine custody of Ms. Smith's body for purposes of burial.

66.

Ford was in Florida during the custody hearings, and he gave sworn testimony during the hearings.

67.

Various reporters were in Florida covering the hearings, physically present inside and outside the Courtroom.

68.

While he was in Florida during February 2007, Ford had possession of certain items that he had removed from Horizons. These items were shown to Larry Birkhead and his counsel, Debra Opri, by Ford.

69.

While he was in Florida during February 2007, Ford transferred certain items that he had removed from Horizons to Debra Opri.

70.

While he was in Florida during February 2007, Ford transferred certain items that he had removed from Horizons to various media outlets.

71.

Upon information and belief, Ford provided certain items that had been removed from Horizons to various media outlets in an attempt to gain an advantage for Ben in the dispute over Horizons.

72.

Ford provided certain items that had been removed from Horizons to various media outlets with the specific intent to injure the Estate and Stern, individually and as Executor.

73.

Ford provided the Clown video to various media outlets, including Geraldo Rivera at Fox.

74.

Ford provided the Christmas video to various media outlets.

75.

Ford did not receive authorization from Ms. Smith's Estate to provide to any media outlet any of the items that he, Gaither, Melanie, and Gina had taken from Horizons.

76.

The Clown video and Christmas video, which Ford admits to having distributed to the media, have been widely and internationally broadcast in the mainstream media. Other items that were taken from Horizons by Ford, Gaither, Melanie and Gina, including the Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and

Western Union receipts, have all been widely and internationally broadcast in the mainstream media.

77.

Upon information and belief, certain items that had been removed from Horizons were widely and internationally broadcast in the mainstream media to various media outlets in an edited form to imply false circumstances in an attempt for Ford and Ben to gain an advantage in the dispute over Horizons.

78.

Ford provided the Clown video to various media outlets with the intent to cause harm to Stern and to create a negative public perception of Stern.

79.

The Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts are the rightful property of the Estate.

80.

Ford provided the Clown video and Christmas video to Fox.

81.

Upon information and belief, the Gibson photographs were first broadcast on or about February 12, 2007, during *On the Record with Greta Van Susteren* on Fox.

82.

Upon information and belief, the Certificate of Permanent Residence was first broadcast on or about February 15, 2007, during *On the Record with Greta Van Susteren* on Fox.

83.

Upon information and belief, the Clown video was first broadcast on or about February 19, 2007, during *On the Record with Greta Van Susteren* on Fox.

84.

Upon information and belief, the Wedding video was first broadcast on or about March 5, 2007, during *On the Record with Greta Van Susteren* on Fox.

85.

Upon information and belief, the Gibson messages were first broadcast on or about March 12, 2007, during *On the Record with Greta Van Susteren* on Fox.

86.

Upon information and belief, the Christmas video was first broadcast on or about March 22, 2007, during *On the Record with Greta Van Susteren* on Fox.

87.

Upon information and belief, the Horizons video was first broadcast on or about March 22, 2007, during *On the Record with Greta Van Susteren* on Fox.

88.

Upon information and belief, the Western Union receipts were first broadcast on or about March 23, 2007, during *On the Record with Greta Van Susteren* on Fox.

89.

Ms. Smith's Estate did not provide authorization to any media outlets, including Fox, to broadcast the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, or Western Union receipts.

90.

The only Estate property which Ford distributed to the media that he has purportedly attempted to have returned to him is the Clown video.

91.

Ford has contended that he requested that Geraldo Rivera with Fox return the Clown video, but Rivera purportedly refused.

**Ford and Brown Provided to Stern's and the Estate's Adversaries**
**Personal and Private Items Belonging to the Estate**

*The O'Quinn Law Firm*

92.

John O'Quinn, Neil McCabe, and The O'Quinn Law Firm have represented Ms. Smith's estranged biological mother, Virgie Arthur, in matters adverse to the Estate, such as the hearings concerning the custody of Ms. Smith's body that were held in Florida during February 2007.

93.

Upon information and belief, members of The O'Quinn Law Firm have contemplated representing Arthur in additional matters adverse to the Estate with respect to the Estate's claims against the estate of E. Pierce Marshall and have taken certain acts in furtherance of that contemplated representation.

94.

Neil McCabe, Don Clark, and The O'Quinn Law Firm have discussed representing third parties, including Ford, in matters adverse to the Estate.

95.

John O'Quinn, Neil McCabe, and The O'Quinn Law Firm also represent Arthur in various matters adverse to Stern in his individual capacity.

96.

Shortly after Ms. Smith's tragic death, John O'Quinn made numerous media appearances wherein he accused Stern of murdering Ms. Smith and her son, Daniel, and kidnapping Ms. Smith's daughter, Dannielynn, for ransom.

97.

On April 13, 2007, Stern, in his individual capacity, sued John O'Quinn for slander based on the false and defamatory statements made by O'Quinn in his various media appearances. *See Stern v. O'Quinn*; In the United States District Court for the Southern District of Florida; Civil Action No.: 07-60534-CIV-DIMITROULEAS. The Complaint was later amended to add The O'Quinn Law Firm. The matter was resolved by agreement in late 2008, and the terms of the settlement are subject to a strict confidentiality order.

98.

Just six months after Stern sued O'Quinn, on October 9, 2007, Arthur, with Neil McCabe of The O'Quinn Law Firm as lead counsel, sued Stern, in his individual capacity, for allegedly conspiring with CBS Studios, Inc. to defame Arthur through an interview given by Ms. Smith. *See Arthur v. Stern*; In the United States District Court for the Southern District of Texas; Civil Action No.: 4:07-CV-03742 (Rosenthal, J.) (the case was originally filed in the District Court of Harris County, Texas, but was subsequently removed to federal court). On the eve of summary judgment briefing, Arthur dismissed this case with prejudice.

99.

On April 21, 2008, Arthur, with McCabe as lead counsel, yet again sued Stern, in his individual capacity, for allegedly conspiring with various Internet bloggers to defame Arthur through the publication of an article on the TMZ celebrity gossip website. *See Arthur v. Stern*; In

the District Court of Harris County, Texas (280th Judicial District); Cause No.: 2008-24181. This matter remains pending.

100.

The O'Quinn Law Firm, Neil McCabe, its in-house investigator Don Clark, and its amateur investigator Wilma Vicedomine have attempted to instigate the filing of criminal charges against Stern in connection with the death of Ms. Smith. They tried but failed in the Bahamas and in Florida, but have succeeded in working closely with the California Department of Justice and Attorney General and gubernatorial candidate Jerry Brown to have certain charges brought against Stern in California for alleged violations of the California Business & Professions Code and Health & Safety Code. The criminal prosecution of Stern is pending.

101.

In approximately October 2007, members of The O'Quinn Law Firm, including Clark, Vicedomine, and Tom Pirtle, and O'Quinn's personal counsel, Robert Klein, traveled to Myrtle Beach, South Carolina to meet with Ford.

102.

During the meeting with members of The O'Quinn Law Firm, Brown was present in her capacity as attorney for both Ford and Ben.

103.

During the meeting with members of The O'Quinn Law Firm, Ford and Brown displayed the Clown video to members of The O'Quinn Law Firm.

104.

Ms. Smith's Estate did not provide authorization to Ford, Ben, or Brown to display the Clown video to members of The O'Quinn Law Firm.

105.

In approximately July 2008, members of The O'Quinn Law Firm, including McCabe, again traveled to Myrtle Beach, South Carolina to meet with Ford.

106.

Upon information and belief, during the meeting with members of The O'Quinn Law Firm, Ford again displayed to members of The O'Quinn Law Firm property belonging to the Estate.

107.

Ms. Smith's Estate did not provide authorization to Ford to display to members of The O'Quinn Law Firm any of the property belonging to the Estate.

108.

In May 2008, Brown had in her possession two (2) external hard drives, which contained electronic files copied from computers belonging to the Estate.

109.

In May 2008, Brown transferred to Don Clark with The O'Quinn Law Firm the two (2) hard drives, which contained electronic files copied off of computers belonging to the Estate.

110.

Brown transferred the two (2) hard drives to The O'Quinn Law Firm with the specific intent to injure the Estate and Stern, individually and as Executor.

111.

At the time that Brown transferred the two (2) hard drives to Clark, she knew and had already admitted to Stern's counsel that the hard drives contained property belonging to the Estate.

112.

At the time that Clark exercised possession, custody, and control over the two (2) hard drives, Clark knew that Stern had publicly accused Ford of stealing Estate property from Horizons, including Ms. Smith's computers.

113.

At the time that Clark exercised possession, custody, and control over the two (2) hard drives, Clark knew that the hard drives contained property belonging to the Estate.

114.

At the time that Brown transferred the two (2) hard drives to Clark, she knew that The O'Quinn Law Firm had "a computer forensic expert in Kansas City at work."

115.

Upon information and belief, The O'Quinn Law Firm did have their "computer forensic expert in Kansas City," BKD, LLP, perform unknown forensic services on the two (2) hard drives which Brown transferred to Clark.

116.

After some period of time, The O'Quinn Law Firm mailed Brown two (2) hard drives, but Brown is unsure whether the drives The O'Quinn Law Firm mailed to her are the same two (2) drives she provided to The O'Quinn Law Firm in May 2008.

117.

Ms. Smith's Estate did not provide authorization to The O'Quinn Law Firm or BKD, LLP to maintain possession, custody, or control of the files belonging to the Estate on the two (2) hard drives, to have access to any of those files, to view any of those files, or to perform any computer forensic services on any of those files.

118.

Stern issued a subpoena to BKD, LLP in this litigation seeking information concerning BKD's and The O'Quinn Law Firm's activities concerning the two (2) hard drives and the Estate property contained thereon, but upon motion by The O'Quinn Law Firm, the United States District Court for the Southern District of Texas quashed the subpoena in its entirety without explanation. (A true and correct copy of the March 25, 2009, order quashing the BKD subpoena is attached hereto as Exhibit D.)

119.

Brown purportedly transferred the two (2) hard drives to Clark based on a Common Interest and Confidentiality Agreement purportedly entered into between Arthur, Ford, and Gaither. The Common Interest and Confidentiality Agreement is executed by McCabe on his own behalf and on Brown's behalf. (A true and correct copy of the purported Common Interest and Confidentiality Agreement is attached hereto as Exhibit E.)

120.

At the time that Brown transferred the two (2) hard drives to The O'Quinn Law Firm, Brown believed that Ford was in discussions with McCabe for The O'Quinn Law Firm to represent Ford in (i) litigation against CBS Studios, Inc.; (ii) litigation against Stern, individually and as Executor of the Estate, purportedly for slander; and/or (iii) litigation against Stern as Executor concerning ownership of Horizons.

121.

Brown transferred the two (2) hard drives to The O'Quinn Law Firm in an attempt to gain the benefit of The O'Quinn Law Firm's representation of Ford in various litigation matters adverse to, among others, the Estate and Stern.

- 23 -

122.

Ford has testified that he did not authorize Brown to enter into the Common Interest and Confidentiality Agreement on his behalf and that he did not authorize Brown to transfer the two (2) hard drives to The O'Quinn Law Firm.

123.

Gaither has testified that he has entered into no agreements with The O'Quinn Law Firm and never even considered filing a lawsuit against Stern.

124.

Ben has testified that he did not authorize Brown to enter into the Common Interest and Confidentiality Agreement on his behalf and that he did not authorize Brown to transfer the two (2) hard drives to The O'Quinn Law Firm.

125.

Ms. Smith's Estate did not provide authorization to Ford, Ben, Gaither, or Brown to transfer the Estate property contained on the two (2) hard drives to The O'Quinn Law Firm.

126.

On September 25, 2009, Brown sent a letter to McCabe terminating the Common Interest and Confidentiality Agreement on behalf of Gaither, and attempting to recover the Estate property contained on the two (2) hard drives that she had provided to The O'Quinn Law Firm. (A true and correct copy of Brown's letter to McCabe dated September 25, 2009, is attached hereto as Exhibit F.)

127.

The O'Quinn Law Firm has not complied with Brown's demand to return Estate property.

- 24 -

*Rita Cosby*

128.

On September 4, 2007, Rita Cosby and Hachette Book Group USA, Inc. published the hardback book entitled BLONDE AMBITION: THE UNTOLD STORY BEHIND ANNA NICOLE SMITH'S DEATH.

129.

In *Blonde Ambition*, Cosby and Hachette falsely accuse Stern of a litany of criminal, immoral, and unethical actions.

130.

On October 2, 2007, Stern, in his individual capacity, sued Cosby and Hachette for libel. *See Stern v. Cosby*; In the United States District Court for the Southern District of New York; Civil Action No.: 07-CIV-8536 (Chin, J.). Summary judgment was granted in its entirety in favor of Hachette, but summary judgment was denied as to eleven of the nineteen libelous statements contained in the Complaint as they pertained to Cosby. The matter is still pending with respect to Cosby.

131.

In the litigation concerning *Blonde Ambition*, Cosby and Hachette have taken actions adverse to the Estate and have caused the Estate to incur unnecessary expense defending against Cosby's and Hachette's litigation tactics directed at the Estate.

132.

On April 15, 2008, Ford met in Myrtle Beach, South Carolina with Liz McNamara and Elisa Miller, attorneys for Cosby.

133.

During the April 2008 meeting with McNamara and Miller, Ford provided McNamara and Miller with copies of property belonging to the Estate, including but not limited to a Material License Agreement and a Photography Copyright Agreement.

134.

Ford transferred to McNamara and Miller copies of property belonging to the Estate with the specific intent to injure the Estate and Stern, individually and as Executor.

135.

Ms. Smith's Estate did not provide authorization to Ford to transfer to McNamara or Miller any copies of any property belonging to the Estate.

136.

Upon information and belief, Ford has displayed to Cosby's and/or Hachette's attorneys property belonging to the Estate.

137.

Ford displayed copies of property belonging to the Estate to McNamara and Miller with the specific intent to injure the Estate and Stern, individually and as Executor.

138.

Ms. Smith's Estate did not provide authorization to Ford to display to Cosby's and/or Hachette's attorneys any property belong to the Estate.

139.

Ford has made no demand to Cosby's and/or Hachette's lawyers to return the copies of Estate property that Ford gave to them.

140.

Stern has demanded that Cosby's and Hachette's lawyers return to his counsel the copies of Estate property that Ford gave to them.

*The California Department of Justice*

141.

Sometime in 2007, the California Department of Justice began an investigation with respect to medications prescribed to Ms. Smith.

142.

During October 2007, Ford, Ben, Gaither, Melanie, and Gina voluntarily provided interviews to Danny Santiago with the California Department of Justice. Brown was present for these interviews and actively participated in the interviews.

143.

During the time that Santiago was present in Myrtle Beach for the interviews, Ford voluntarily transferred to Santiago a copy of the Clown video.

144.

Ford transferred the Clown video to Santiago with the specific intent to injure the Estate and Stern, individually and as Executor.

145.

Upon information and belief, Ford and Gaither transferred to Santiago additional property belonging to the Estate.

146.

Gaither transferred additional property belonging to the Estate to Santiago with the specific intent to injure the Estate and Stern, individually and as Executor.

- 27 -

147.

Ms. Smith's Estate did not provide authorization to Ford or Gaither to transfer to Santiago a copy of the Clown video or any property belong to the Estate.

148.

Ford has made no demand to Santiago or the California Department of Justice to return the copies of Estate property that Ford gave to them.

**Ford Surrendered Some of the Items He Took from Horizons**

149.

When Stern learned of the removal of Estate property from Horizons, Stern, as the then-nominated Executor of the Estate,[1] immediately demanded the return of the items taken by Ford, Gaither, Melanie, and Gina from Horizons.

150.

On or about February 12, 2007, Ford surrendered two (2) computers, an external hard drive, nine (9) MiniDV tapes, and miscellaneous papers to Horry County, South Carolina authorities. These items represented a small portion of the personal and private items that Ford and his accomplices took from Horizons without authorization or consent.

151.

After returning to Myrtle Beach from the Bahamas with Estate property, but prior to surrendering certain property to Horry County authorities, Ford transferred at least one of the Estate's computer hard drives and additional Estate property to Melanie.

152.

Upon information and belief, Ford later retrieved the Estate's hard drive from Melanie.

_____

[1] As stated in Paragraph 1 above, Stern is now the duly appointed Executor of the Estate of Anna Nicole Smith.

153.

Upon information and belief, Melanie has exercised possession, custody, and control over copies of Estate property that were contained on the hard drive Ford transferred to her.

154.

Horry County authorities transferred the items – which were taken without authorization or consent from Horizons and which were surrendered by Ford – to Seminole Tribe authorities in Hollywood, Florida. Seminole authorities subsequently transferred the items surrendered by Ford to the California Department of Justice.

155.

While the original hard drives were in the custody of the Seminole Tribe, Stern was permitted to conduct a forensic analysis of the drives.

156.

Forensic analyses of the computers and external hard drive established that between February 9, 2007 and February 12, 2007, within days after Ms. Smith's death, all of the files contained on the two (2) computers and external hard drive, taken without authorization or consent from Horizons, were copied and transferred to other external hard drives and DVDs. Certain information was also deleted from the hard drives.

157.

Without authorization from Ms. Smith's Estate, Ford had copied the files contained on the two (2) computers and external hard drive to two (2) external hard drives.

158.

In media appearances following Ford's return of some of the Estate property to the Horry County, South Carolina authorities, Ford falsely asserted that he had returned all Estate property in his possession to those authorities.

159.

However, Ford did not surrender to Horry County, South Carolina authorities all of the Estate items or copies of those items taken without authorization or consent from Horizons.

160.

Stern has made numerous demands upon Ford to return all items taken without authorization from the Estate, including written demands upon Ford's attorneys dated March 30, 2007; April 13, 2007; May 17, 2007; May 31, 2007; June 21, 2007; July 25, 2007; October 30, 2007; and November 29, 2007. (True and correct copies of these demand letters are attached hereto as Exhibit G.)

161.

Stern has consistently demanded that Ford return all property in his possession belonging to the Estate to Stern's attorneys in Atlanta, Georgia.

162.

Stern has never authorized Ford to return Estate property to anyone other than Stern's counsel, and Stern has never authorized anyone other than his counsel to accept Estate property on his behalf.

163.

On or about May 22, 2007, in blatant disregard of Stern's demands that Estate property be returned to Stern's counsel only, Ford delivered certain Estate property to Larry Birkhead ("Mr. Birkhead"), the father of Dannielynn Birkhead, who is Ms. Smith's daughter, in Kentucky.

164.

Mr. Birkhead had specifically notified Ford that he was not authorized to accept Estate property on behalf of Stern. (See emails from Mr. Birkhead to Ford, true and correct copies of which are attached hereto as Exhibit H.)

165.

The Estate property delivered to Mr. Birkhead included eight (8) paintings and drawings created by Ms. Smith; a photograph of Ms. Smith; a photo album containing ultrasounds of Ms. Smith's daughter, Dannielynn; two (2) MiniDV tapes; and three (3) pairs of sunglasses, which represented only a small portion of the personal and private items that Ford, Gaither, Melanie, and Gina took without authorization or consent from Horizons.

166.

Ford did not surrender to Mr. Birkhead all of the personal and private items that passed to Ms. Smith's Estate upon her death that Ford, Gaither, Melanie, and Gina took without authorization or consent from Horizons.

167.

Upon information and belief, Ford admitted to Mr. Birkhead that he continued to assume and exercise dominion and control over personal and private items and copies thereof that passed to Ms. Smith's Estate upon her death that Ford, Gaither, Melanie, and Gina took without authorization or consent from Horizons.

168.

On or about November 8, 2007, Ford's counsel, Brown, delivered certain Estate property to Stern's counsel in Atlanta, Georgia.

169.

The Estate property delivered to Stern's counsel in Atlanta included one (1) original sketch created by Ms. Smith; one (1) original compact flash disk; one (1) original MiniDV tape; and one (1) CD containing a copy of the Clown video, which represented only a portion of the personal and private items that Ford, Gaither, Melanie, and Gina took without authorization or consent from Horizons.

170.

Ford did not surrender to Stern's counsel in Atlanta all of the personal and private items that passed to Ms. Smith's Estate upon her death that Ford, Gaither, Melanie, and Gina took without authorization or consent from Horizons.

171.

At the time that Brown delivered certain Estate property to Stern's counsel in Atlanta, Georgia, she had in her possession the two (2) hard drives containing property belonging to the Estate; however, Brown neither mentioned nor surrendered the hard drives when she delivered certain Estate property to Stern's counsel in Atlanta, Georgia on November 8, 2007.

172.

At all times since first receiving the two (2) hard drives from Ford, Brown knew or had reason to know that the two (2) hard drives contained Estate property.

173.

Prior to November 8, 2007, Brown had traveled to Myrtle Beach, South Carolina where Ford transferred to her certain Estate property, including the Estate property contained on the two (2) hard drives.

174.

On or about November 12, 2007, Brown first informed Stern's counsel of the existence of the two (2) hard drives.

175.

Upon learning of their existence, Stern's counsel repeatedly demanded that Brown surrender the two (2) hard drives to Stern's counsel in Atlanta.

176.

Brown committed to Stern's counsel that she would return the hard drives as requested, and she assured Stern's counsel that in the meantime, the two (2) hard drives were safely locked up and protected where neither Ford nor Ben had access to them.

177.

Despite Stern's counsel's demands that Brown immediately return the two (2) hard drives and despite Brown's assurances that she would do so and that neither Ford nor Ben had access to the hard drives, Brown traveled to Myrtle Beach, South Carolina and gave the two (2) hard drives containing Estate property back to Ford.

178.

After some period of time, Brown traveled back to Myrtle Beach, South Carolina where Ford again transferred two (2) hard drives to her.

179.

Brown is unsure whether the hard drives Ford transferred to her the second time are the same two (2) hard drives he transferred to her the first time.

180.

On January 16, 2009, this Court entered a Consent Order Entering Preliminary Injunction [DE 39], which states in pertinent part:

> Susan M. Brown . . . shall deliver to the Executor's attorneys at Bryan Cave Powell Goldstein, One Atlantic Center – Fourteenth Floor, 1201 West Peachtree Street, NW, Atlanta, Georgia 30309, any of the Property belonging to the Estate which is in Ms. Brown's possession or custody, including all originals and all duplicates of such Property, specifically including but not limited to the two (2) hard drives belonging to the Estate which are in Ms. Brown's possession.

181.

On January 21, 2009, pursuant to the Consent Order Entering Preliminary Injunction, a courier retrieved from Brown's offices the two (2) hard drives containing Estate property. No other Estate property was surrendered by Brown at that time.

182.

On June 18, 2009, Stern issued to Brown and the Law Firm subpoenas duces tecum and a subpoena commanding Brown's attendance at a deposition.

183.

Brown moved to quash the subpoenas.

184.

By Order dated August 31, 2009, the United States District Court for the Northern District of Georgia denied Brown's motion to quash, finding, at least in part, a sufficient *prima facie* showing of applicability of the crime-fraud exception to the attorney-client privilege. (A true and correct copy of the Order dated August 31, 2009, is attached hereto as Exhibit I.)

185.

Accordingly, on September 22 and 24, 2009, Brown and the Law Firm produced to Stern documents responsive to the subpoenas.

186.

Contained within Brown's and the Law Firm's production were numerous copies of property belonging to the Estate, which Brown had neither surrendered to Stern's counsel pursuant to the Consent Order Entering Preliminary Injunction nor disclosed the existence of to Stern's counsel.

187.

Brown had stored electronic copies of the Estate property on her Law Firm computer and has maintained certain hard copies of Estate property in the Law Firm.

188.

On October 5, 2009, Brown surrendered to Stern's counsel certain hard copies of Estate Property, including:

 a)  Work for Hire Agreement;

 b)  Photography Copyright Agreement;

 c)  Agreement;

 d)  Materials License Agreement; and

 e)  Commonwealth of Bahamas Certificate of Permanent Residence.

189.

Pursuant to agreement with Stern's counsel, on October 9, 2009, Brown's computer hard drive was removed from the Law Firm computer and on October 10, 2009, the hard drive was destroyed completely at a destruction facility.

190.

Ford's counsel in the above-captioned action has confirmed that as of October 6, 2009, all copies of the Estate property which Brown and the Law Firm produced to her in response to Stern's subpoenas have been destroyed or returned to Stern's counsel.

191.

Brown's counsel has confirmed that all copies of the Estate property contained in Brown's and the Law Firm's production have been destroyed, have been returned to Stern's counsel, or will be destroyed as of October 29, 2009.

192.

Upon information and belief, Ford, Melanie, Gaither, Gina, and Brown have all without authorization from the Estate displayed Estate property – much of which contains commercial value through its very display to the public – to third parties.

193.

Ford has never returned the originals of any video or document aired in the media.

## COUNT ONE: CONVERSION

### (All Defendants)

194.

Stern incorporates Paragraphs 1 through 193 of this Amended Complaint by reference with the same force and effect as if fully set forth herein.

195.

Defendants have intentionally acted in a manner inconsistent with the Estate's ownership or right of control over the personal and private items that Ford, Gaither, Melanie, and Gina,

acting as agents of Ben and pursuant to his and his agent Tracy Ferguson's authorization and direction, removed without authorization or consent from Horizons.

196.

Through the act of removing Estate property without authorization from Horizons, Ford, Gaither, Melanie, and Gina assumed and exercised dominion and control over all the Estate property they removed.

197.

From February 9, 2007, through February 12, 2007, Ford assumed and exercised dominion and control over the following Estate property in a manner inconsistent with the Estate's ownership or right of control over the same:

      a)    Two (2) computers and one (1) external hard drive;

      b)    Nine (9) MiniDV tapes; and

      c)    Documents belonging to Ms. Smith, including personal and legal documents, contracts, and records.

198.

From February 9, 2007, though May 22, 2007, Ford assumed and exercised dominion and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same:

      a)    A photograph of Ms. Smith;

      b)    Eight (8) artistic works created by Ms. Smith;

      c)    One (1) photo album containing ultrasounds of Ms. Smith's daughter, Dannielynn;

      d)    Two (2) MiniDV tapes; and

e)    Three (3) pairs of sunglasses.

199.

From February 9, 2007, though November 8, 2007, Ford assumed and exercised dominion and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same:

a)    One (1) original sketch created by Ms. Smith;

b)    One (1) original compact flash disk;

c)    One (1) original MiniDV tape; and

d)    One (1) CD containing a copy of the Clown video.

200.

From February 9, 2007, though January 21, 2009, Ford, Brown, and the Law Firm each at times but in a continuous temporal chain assumed and exercised dominion and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same:

a)    Two (2) external hard drives containing files belonging to the Estate.

201.

From approximately October 2007, though October 5, 2009, Brown and the Law Firm assumed and exercised dominion and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same:

a)    Work for Hire Agreement;

b)    Photography Copyright Agreement;

c)    Agreement;

d)    Materials License Agreement; and

e)      Commonwealth of Bahamas Certificate of Permanent Residence.

202.

From approximately October 2007, though October 9, 2009, Brown and the Law Firm assumed and exercised dominion and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same:

a)      Copies of numerous personal and private photographs.

203.

Upon information and belief, from February 9, 2007, through the present, Ford has assumed and exercised dominion and control over the following Estate property in a manner inconsistent with the Estate's ownership or right of control over the same:

a)      Approximately seven (7) to eleven (11) artistic works created by Ms. Smith;

b)      In excess of one hundred (100) DVDs containing personal and private images of Ms. Smith, including but not limited to the Gibson photographs;

c)      Approximately twenty-two (22) original and an undetermined number of copied MiniDV tapes containing Ms. Smith's personal home videos, including but not limited to the Clown video, Christmas video, Wedding video, and Horizons video;

d)      Three (3) cellular telephones and the contents thereon, including but not limited to the Wedding video and Gibson messages;

e)      Copies of all files from the two computers and external hard drive Ford surrendered to Horry County, South Carolina authorities;

f)    Documents belonging to Ms. Smith, including the Certificate of Permanent Residence and Western Union receipts; and

g)    Approximately twenty-seven (27) pairs of Ms. Smith's sunglasses.

204.

Upon information and belief, from February 9, 2007, through the present, Melanie has assumed and exercised dominion and control over the following Estate property in a manner inconsistent with the Estate's ownership or right of control over the same:

a)    Copies of files from the Estate computer that Ford transferred to her; and

b)    Additional property belonging to the Estate that Ford transferred to her.

205.

When Ford, Gaither, Melanie, and Gina assumed and exercised dominion and control over the Estate property set forth in Paragraphs 196 and 204, an agency relationship existed between Ford, Gaither, Melanie, and Gina, on the one hand, and Ben on the other; and Ford, Gaither, Melanie, and Gina were acting pursuant to the authorization and direction of Ben and his agents.

206.

When Ford, Gaither, Melanie, and Gina assumed and exercised dominion and control over the Estate property set forth in Paragraph 196 and 204, an agency relationship existed between Tracy Ferguson and Ben; and Ford, Gaither, Melanie, and Gina were acting pursuant to the authorization and direction of Ben's agent, Tracy Ferguson.

207.

When Ford assumed and exercised dominion and control over the Estate property set forth in Paragraphs 197 through 200 and Paragraph 203, an agency relationship existed between Ford and Ben, and Ford was acting pursuant to the authorization and direction of Ben.

208.

When Brown and the Law Firm assumed and exercised dominion and control over the Estate property set forth in Paragraphs 200 through 202, an agency relationship existed between Brown and the Law Firm and Ben; and Brown and the Law Firm were acting pursuant to the authorization and direction of Ben.

209.

The Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, Western Union receipts, and the content contained on the two (2) external hard drives are the rightful property of the Estate.

210.

The Estate has suffered damages as a direct and proximate result of Defendants' actions.

211.

As a direct and proximate result of Defendants' continued exercise of dominion and control over Estate property, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

4:08-cv-02753-JMC     Date Filed 10/27/09     Entry Number 78-1     Page 43 of 155

212.

The unlawful actions of Defendants demonstrate willful misconduct, malice, wantonness, oppression, and entire want of care which raises a presumption of conscious indifference to the consequences.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Defendants on Count One of this Amended Complaint;

(b)     That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)     That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(d)     That this Court order Defendants to return to Plaintiff all items Ford, Gaither, Melanie, and Gina removed from Horizons on or about February 9, 2007, including any unauthorized copies Defendants made of those items;

(e)     That this Court order Defendants to disgorge all benefits they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith;

(f)     That this Court order Defendants to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)     That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

- 42 -

(h)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

**TRIAL BY JURY DEMANDED ON COUNT ONE.**

**COUNT TWO: WRONGFUL TAKING OF ESTATE PROPERTY**
**(CAL. PROB. CODE § 850 *et seq.*)**

**(All Defendants)**

213.

Stern incorporates Paragraphs 1 through 212 of this Amended Complaint by reference with the same force and effect as if fully set forth herein.

214.

Upon information and belief, Ford is in unlawful possession, custody, or control of the following items:

a)    Approximately seven (7) to eleven (11) artistic works created by Ms. Smith;

b)    In excess of one hundred (100) DVDs containing personal and private images of Ms. Smith, including but not limited to the Gibson photographs;

c)    Approximately twenty-two (22) original and an undetermined number of copied MiniDV tapes containing Ms. Smith's personal home videos, including but not limited to the Clown video, Christmas video, Wedding video, and Horizons video;

d)    Three (3) cellular telephones and the contents thereon, including but not limited to the Wedding video and Gibson messages;

e)    Files copied from the two computers and external hard drives Ford surrendered to Horry County, South Carolina authorities;

f)    Documents belonging to Ms. Smith, including the Certificate of Permanent Residence and Western Union receipts; and

g)    Approximately twenty-seven (27) pairs of Ms. Smith's sunglasses.

215.

Upon information and belief, Gaither, Melanie, and Gina are in unlawful possession, custody, or control of the following items:

a)    Files copied from the two computers and external hard drives Ford surrendered to Horry County, South Carolina authorities.

216.

By virtue of their claim that the items were provided to The O'Quinn Law Firm pursuant to the Common Interest and Confidentiality Agreement, Brown and The Law Firm are in unlawful possession, custody, or control of the following items:

a)    Files copied from the two computers and external hard drives Ford surrendered to Horry County, South Carolina authorities.

217.

The items identified in Paragraphs 214 through 216 of this Amended Complaint, as well as any copies, excerpts, and media depicting the items or any portion of the same, belong solely to the Estate.

218.

Since the items identified in Paragraphs 214 through 216 of this Amended Complaint were taken without authorization from Horizons, they have been in the unlawful possession of

Ford, Gaither, Melanie, Gina, Brown, and the Law Firm and remain in their possession despite requests by Stern for the immediate return of the property.

219.

Ford, Gaither, Melanie, Gina, Brown, and the Law Firm's unlawful possession, custody, or control of the Estate property set forth in Paragraphs 214 through 216 of this Amended Complaint is the result of an agency relationship between Ford, Gaither, Melanie, Gina, Brown, and the Law Firm, on one hand, and Ben on the other, in which Ford, Gaither, Melanie, Gina, Brown, and the Law Firm were acting pursuant to the authorization and direction of Ben and his agents.

220.

Ford, Gaither, Melanie, Gina, Brown, and the Law Firm's unlawful possession, custody, or control of the Estate property set forth in Paragraphs 214 through 216 of this Amended Complaint is the result of an agency relationship between Tracy Ferguson and Ben, in which Ford, Gaither, Melanie, and Gina were acting pursuant to the authorization and direction of Ben's agent, Tracy Ferguson.

221.

Defendants have in bad faith wrongfully taken property belonging to the Estate.

222.

The Estate has suffered damages as a direct and proximate result of Defendants' actions.

  
223.

As a direct and proximate result of Defendants' wrongful taking of Estate property, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)    That this Court enter judgment in favor of the Plaintiff and against Defendants on Count Two of this Amended Complaint;

(b)    That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)    That, pursuant to Cal. Prob. Code § 859, this Court award double damages for Count Two of this Amended Complaint;

(d)    That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(e)    That this Court order Defendants to return to Plaintiff all items Ford, Gaither, Melanie, and Gina took from Horizons on or about February 9, 2007, including any unauthorized copies Defendants made of those items;

(f)    That this Court order Defendants to disgorge all benefits they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith;

(g)    That this Court order Defendants to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(h)    That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(i)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

**TRIAL BY JURY DEMANDED ON COUNT TWO.**

**COUNT THREE: STATUTORY & COMMON LAW COMMERCIAL APPROPRIATION OF RIGHT OF PUBLICITY (CAL. CIV. CODE § 3344.1)**

**(Defendants Ford, Brown, and the Law Firm)**

224.

Stern incorporates Paragraphs 1 through 223 of this Amended Complaint by reference with the same force and effect as if fully set forth herein.

225.

Ms. Smith held an intangible property right of publicity in the images contained on the computers, external hard drives, MiniDV tapes, DVDs, and cellular telephones, which Ford, Gaither, Melanie and Gina removed from Horizons without authorization or consent.

226.

Ms. Smith held an intangible property right of publicity in her name, voice, photograph, and likeness contained on the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, Western Union receipts, and photographs and videos contained on the Estate's computers.

227.

Ms. Smith commercially exploited her right of publicity during her life.

228.

Upon Ms. Smith's death, her right of publicity passed to her Estate.

229.

Ford, Brown, and the Law Firm used Ms. Smith's name, voice, photograph, and likeness contained in the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, Western Union receipts, and photographs and videos contained on the Estate's computers without consent.

230.

Ford, Brown, and the Law Firm's conduct in using, displaying, transferring, and selling or attempting to sell the Clown video, Christmas video, and photographs and videos contained on the Estate's computers, as set forth above, constitutes "use" of Ms. Smith's name, voice, likeness and photograph within the meaning of California Civil Code § 3344.1.

231.

The Estate has suffered damages as a direct and proximate result of Ford's, Brown's, and the Law Firm's actions.

232.

As a direct and proximate result of Ford's, Brown's, and the Law Firm's use of Ms. Smith's name, voice, photograph and likeness, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

233.

The unlawful actions of Ford, Brown, and the Law Firm demonstrate willful misconduct, malice, wantonness, oppression, and entire want of care which raises a presumption of conscious indifference to the consequences.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Ford, Brown, and the Law Firm on Count Three of this Amended Complaint;

(b)     That this Court enter judgment against these Defendants for compensatory damages in an amount to be determined at trial;

(c)     That, pursuant to Cal. Civ. Code § 3344.1, this Court award attorneys' fees for Count Three of this Amended Complaint;

(d)     That this Court enter judgment against these Defendants for punitive damages in an amount sufficient to punish and penalize these Defendants and to deter these Defendants from repeating their unlawful conduct;

(e)     That this Court order these Defendants to return to Plaintiff all items Ford, Gaither, Melanie, and Gina removed from Horizons on or about February 9, 2007, including any unauthorized copies Defendants made of those items;

(f)     That this Court order these Defendants to disgorge all benefits they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith;

(g)     That this Court order these Defendants to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

- 49 -

(h)    That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(i)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

## TRIAL BY JURY DEMANDED ON COUNT THREE.

## COUNT FOUR: UNJUST ENRICHMENT

### (Defendants Ford, Gaither, Melanie, Gina, Brown, and the Law Firm)

234.

Stern incorporates Paragraphs 1 through 233 of this Amended Complaint by reference with the same force and effect as if fully set forth herein.

235.

By assuming and exercising dominion and control over the personal and private items of Ms. Smith, Ford, Gaither, Melanie, Gina, Brown, and the Law Firm have unjustly enriched themselves at the expense of the Estate.

236.

Under the circumstances, it is unjust for Ford, Gaither, Melanie, Gina, Brown, and the Law Firm to retain any benefit they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith.

237.

Further, by releasing the Clown video and Christmas video, Ford has unjustly enriched himself at the expense of the Estate.

238.

Under the circumstances, it is unjust for Ford to retain any benefit he received by releasing the Clown video and Christmas video.

239.

The unlawful actions of Ford, Gaither, Melanie, Gina, Brown, and the Law Firm demonstrate willful misconduct, malice, wantonness, oppression, and entire want of care which raises a presumption of conscious indifference to the consequences.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)    That this Court enter judgment in favor of the Plaintiff and against Ford, Gaither, Melanie, Gina, Brown, and the Law Firm on Count Four of this Amended Complaint;

(b)    That this Court enter judgment against these Defendants for compensatory damages in an amount to be determined at trial;

(c)    That this Court enter judgment against these Defendants for punitive damages in an amount sufficient to punish and penalize these Defendants and to deter these Defendants from repeating their unlawful conduct;

(d)    That this Court order Defendants to return to Plaintiff all items Ford, Gaither, Melanie, and Gina removed from Horizons on or about February 9, 2007, including any unauthorized copies Defendants made of those items;

(e)    That this Court order these Defendants to disgorge all benefits they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith;

(f)    That this Court order these Defendants to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)     That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)     That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

## TRIAL BY JURY DEMANDED ON COUNT FOUR.

## COUNT FIVE: UNFAIR COMPETITION
### (CAL. BUS. & PROF. CODE § 17200 *et seq.*)

### (All Defendants)

240.

Stern incorporates Paragraphs 1 through 239 of this Amended Complaint by reference with the same force and effect as if fully set forth herein.

241.

Defendants' conduct, and in particular, their conversions and violations of California Civil Code section 3344.1, constitute an "unlawful . . . business act or practice" within the meaning of California Business & Professions Code section 17200, *et seq.*

242.

Ford's, Gaither's, Melanie's, Gina's, Brown's and the Law Firm's conversions were made within the scope of their agency relationship with Ben and were made pursuant to the authorization and direction of Ben.

243.

Ford's, Gaither's, Melanie's, and Gina's conversions were made pursuant to the authorization and direction of Ben's agent, Tracy Ferguson.

- 52 -

244.

Brown's and the Law Firm's conversions were made within the scope of their agency relationship with Ben and Ford and were made pursuant to the authorization and direction of Ben and Ford.

245.

The Estate has suffered damages as a direct and proximate result of Defendants' unlawful business practices.

246.

As a direct and proximate result of Defendants' unlawful business practices, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

247.

Stern is entitled to an order requiring that Defendants return to the Estate all Estate property currently in the possession, custody or control of Defendants.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)     That this Court enter judgment in favor of the Plaintiff and against Defendants on Count Five of this Amended Complaint;

(b)     That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)     That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(d)     That this Court order Defendants to return to Plaintiff all items Ford, Gaither, Melanie, and Gina removed from Horizons on or about February 9, 2007, including any unauthorized copies Defendants made of those items;

(e)     That this Court order Defendants to disgorge all benefits they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith;

(f)     That this Court order Defendants to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)     That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)     That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

### TRIAL BY JURY DEMANDED ON COUNT FIVE.

### COUNT SIX: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030(a)(5))

### (Defendants Ford, Brown, and the Law Firm)

248.

Stern incorporates Paragraphs 1 through 247 of this Amended Complaint by reference with the same force and effect as if fully set forth herein.

249.

Upon information and belief, Ford, Brown, and the Law Firm copied confidential and proprietary data from Ms. Smith's computers and external hard drives and/or from copies of Ms. Smith's computers and external hard drives.

250.

Upon information and belief, Ford, Brown, and the Law Firm also deleted certain confidential and proprietary data from Ms. Smith's hard drives and/or from copies of Ms. Smith's computers and external hard drives.

251.

Ford, Brown, and the Law Firm knowingly caused the transmission of the "copy" and other commands to a protected computer, and as a result of such conduct, intentionally caused damage without authorization.

252.

Ford, Brown, and the Law Firm accessed a protected computer without authorization, and as a result of such conduct, recklessly caused damage.

253.

Ford, Brown, and the Law Firm intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage.

254.

As a direct and proximate result of Ford's, Brown's, and the Law Firm's unlawful access of Ms. Smith's computers and external hard drives, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

255.

Ford's, Brown's, and the Law Firm's conduct caused loss to the Estate during a 1-year period aggregating at least $5,000 in value.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)    That this Court enter judgment in favor of the Plaintiff and against Ford, Brown, and the Law Firm on Count Six of this Amended Complaint;

(b)    That this Court enter judgment against these Defendants for compensatory damages in an amount to be determined at trial;

(c)    That this Court enter judgment against these Defendants for punitive damages in an amount sufficient to punish and penalize these Defendants and to deter these Defendants from repeating their unlawful conduct;

(d)    That this Court order Defendants to return to Plaintiff all items Ford, Gaither, Melanie, and Gina removed from Horizons on or about February 9, 2007, including any unauthorized copies Defendants made of those items;

(e)    That this Court order these Defendants to disgorge all benefits they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith;

(f)    That this Court order these Defendants to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)    That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

**TRIAL BY JURY DEMANDED ON COUNT SIX.**

## COUNT SEVEN: CIVIL CONSPIRACY

### (All Defendants)

256.

Stern incorporates Paragraphs 1 through 255 of this Amended Complaint by reference with the same force and effect as if fully set forth herein.

257.

In furtherance of Defendants' actions that resulted in conversions of Estate property and wrongful taking of Estate property in violation of Cal. Prob. Code § 850, *et seq.*, Defendants formed and operated an agreement to convert Estate property and to wrongfully take Estate property in violation of Cal. Prob. Code § 850, *et seq.*

258.

The Estate has suffered damages as a direct and proximate result of Defendants' agreement and by acts done by Defendants in furtherance of the agreement.

259.

As a direct and proximate result of Defendants' conspiracy that resulted in the conversion and wrongful taking of Estate property, the Estate has been damaged with respect to business opportunities with entities interested in entering into licensing agreements with respect to certain Estate property.

WHEREFORE, Plaintiff Howard K. Stern demands:

(a)    That this Court enter judgment in favor of the Plaintiff and against Defendants on Count Seven of this Amended Complaint;

(b)    That this Court enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

(c)    That this Court enter judgment against Defendants for punitive damages in an amount sufficient to punish and penalize Defendants and to deter Defendants from repeating their unlawful conduct;

(d)    That this Court order Defendants to return to Plaintiff all items Ford, Gaither, Melanie, and Gina removed from Horizons on or about February 9, 2007, including any unauthorized copies Defendants made of those items;

(e)    That this Court order Defendants to disgorge all benefits they received by assuming and exercising dominion and control over the personal and private items of Ms. Smith;

(f)    That this Court order Defendants to disgorge all benefits they received by releasing the Clown video, Christmas video, Horizons video, Wedding video, Gibson photographs, Gibson messages, Certificate of Permanent Residence, and Western Union receipts;

(g)    That this Court award Stern his expenses of litigation, including reasonable attorneys' fees and costs; and

(h)    That this Court grant such other and further relief as the Court may deem equitable, just, and proper.

**TRIAL BY JURY DEMANDED ON COUNT SEVEN.**

Respectfully submitted this 27th day of October, 2009.

_____

L. Lin Wood
(Georgia Bar No. 774588) (Pro hac vice)
Lin.Wood@BryanCave.com
Nicole Jennings Wade
(Georgia Bar No. 390922) (Pro hac vice)
Nicole.Wade@BryanCave.com
Luke A. Lantta
(Georgia Bar No. 141407) (Pro hac vice)
Luke.Lantta@BryanCave.com

- 58 -

**BRYAN CAVE LLP**
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
Telephone:     (404) 572-6600
Facsimile:     (404) 572-6999

Karl A. Folkens
(District Court ID No. 854)
Karl@folkenslaw.com
Louis Nettles
(District Court ID No. 2521)
Louis@folkenslaw.com

**FOLKENS LAW FIRM, P.A.**
3326 West Palmetto Street
Florence, South Carolina 29501
Telephone:     (843) 665-0100
Facsimile:     (843) 665-0500

*Attorneys for the Executor*

# AMENDED COMPLAINT

# EXHIBIT A

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
Bruce S. Ross, SBN 51468
Vivian L. Thoreen, SBN 224162
Luce, Forward, Hamilton & Scripps LLP
601 S. Figueroa St. Suite 3900, Los Angeles, CA 90017

TELEPHONE AND FAX NOS.:
213.892.4992
213.892.7731

ATTORNEY FOR (Name): Howard K. Stern

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central

ESTATE OF (Name): Vickie Lynn Marshall, aka Vickie Lynn Smith, aka Vickie Lynn Hogan, aka Anna Nicole Smith

DECEDENT

**FILED**
Los Angeles Superior Court
JUN 18 2007
John A. Clarke, Executive Officer/Clerk
By
R. AGUIRRE, Deputy

CASE NUMBER:
BP 104575

## LETTERS

☒ TESTAMENTARY
☐ OF ADMINISTRATION WITH WILL ANNEXED
☐ OF ADMINISTRATION
☐ SPECIAL ADMINISTRATION

### LETTERS

1. ☒ The last will of the decedent named above having been proved, the court appoints (name):
   Howard K. Stern
   a. ☒ executor.
   b. ☐ administrator with will annexed.

2. ☐ The court appoints (name):
   a. ☐ administrator of the decedent's estate.
   b. ☐ special administrator of decedent's estate
      (1) ☐ with the special powers specified in the Order for Probate.
      (2) ☐ with the powers of a general administrator.
      (3) ☐ letters will expire on (date):

3. ☒ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☒ with full authority
   ☐ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

### AFFIRMATION

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621 (c)).

2. ☒ INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY (name):
   I solemnly affirm that the institution will perform the duties of personal representative according to law I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   (Name and title):

4. Executed on (date): June 18, 2007
   at (place): Studio City, California

_(signature)_
(SIGNATURE)
Howard K. Stern

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued by the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

WITNESS, clerk of the court, with seal of the court affixed.

Date: JUN 19 2007
Clerk, by JOHN A. CLARKE
_(signature)_ (DEPUTY)

Date: MAY 13 2008
Clerk, by John A. Clarke
_(signature)_ (DEPUTY)
S OCHOA

ORIGINAL

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

LETTERS
(Probate)

Probate Code, §§ 1001, 8403
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

American LegalNet, Inc.
www.USCourtForms.com

This copy, produced from the Court's Imaging System, is deemed to be the original pursuant to GC Section 68150 (c)

# **AMENDED COMPLAINT**

# **EXHIBIT B**

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Bruce S. Ross, SBN 51468
Vivian L. Thoreen, SBN 224162
Luce, Forward, Hamilton & Scripps LLP
601 S. Figueroa St. Suite 3900, Los Angeles, CA 90017

TELEPHONE AND FAX NOS.:
213.892.4992
213.892.7731

ATTORNEY FOR *(Name):* Howard K. Stern

**FILED**
Los Angeles Superior Court

JUN 1 8 2007

John A. Clarke, Executive Officer/Clerk
By _____ , Deputy
R. AGUIRRE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central

ESTATE OF *(Name):* Vickie Lynn Marshall, aka Vickie Lynn Smith, aka Vickie Lynn Hogan, aka Anna Nicole Smith
                                                                                      DECEDENT

| LETTERS | CASE NUMBER: |
|---|---|
| ☒ TESTAMENTARY       ☐ OF ADMINISTRATION<br>☐ OF ADMINISTRATION WITH WILL ANNEXED   ☐ SPECIAL ADMINISTRATION | BP 104575 |

## LETTERS

1. ☒ The last will of the decedent named above having been proved, the court appoints *(name):*
   Howard K. Stern
   a. ☒ executor.
   b. ☐ administrator with will annexed.

2. ☐ The court appoints *(name):*

   a. ☐ administrator of the decedent's estate.
   b. ☐ special administrator of decedent's estate
      (1) ☐ with the special powers specified in the *Order for Probate.*
      (2) ☐ with the powers of a general administrator.
      (3) ☐ letters will expire on *(date):*

3. ☒ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☒ with full authority
   ☐ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

## AFFIRMATION

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621 (c)).

2. ☒ INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY *(name):*

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. *(Name and title):*

4. Executed on *(date):* June 18, 2007
   at *(place):* Studio City, California

   _____
   (SIGNATURE)
   Howard K. Stern

## CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued by the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

ORIGINAL

WITNESS, clerk of the court, with seal of the court affixed.

Date: JUN 1 9 2007
Clerk, by JOHN A. CLARKE
_____ (DEPUTY)

Date: MAY 1 3 2008
Clerk, by John A. Clarke
_____ (DEPUTY)
S. OCHOA

LETTERS
(Probate)

Probate Code, §§ 1001, 8403
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

American LegalNet, Inc.
www.USCourtForms.com

This copy, produced from the Court's Imaging System, is deemed to be the original pursuant to Gov Section 68150 (c)

DE-111

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Bruce S. Ross, SBN 51468<br>John T. Rogers, Jr., SBN 101280<br>Luce, Forward, Hamilton & Scripps LLP<br>601 S. Figueroa St. Suite 3900, Los Angeles, CA 90017<br>TELEPHONE NO: 213.892.4992    FAX NO. *(Optional)*: 213.892.7731<br>E MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Petitioner Howard K. Stern | **FILED**<br>LOS ANGELES SUPERIOR COURT<br>**MAY 14 2007**<br>John A. Clarke, Executive Officer/Clerk<br>By _A. Watts_, Deputy<br>A. Watts |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central

ESTATE OF *(Name)*: VICKIE LYNN MARSHALL, aka VICKIE LYNN SMITH, aka
VICKIE LYNN HOGAN, aka ANNA NICOLE SMITH
                                                                    DECEDENT

| PETITION FOR ☒ Probate of Will and for Letters Testamentary<br>☐ Probate of Will and for Letters of Administration with<br>  Will Annexed<br>☐ Letters of Administration<br>☐ Letters of Special Administration ☐ with general powers<br>☒ Authorization to Administer Under the Independent<br>  Administration of Estates Act ☐ with limited authority | CASE NUMBER:<br>BP104575<br><br>HEARING DATE:<br>6-19-07<br>DEPT: S    TIME: 8: |
|---|---|

1.    Publication will be in *(specify name of newspaper)*: Los Angeles Daily Journal
   a.   ☒   Publication requested.
   b.   ☐   Publication to be arranged.
2. Petitioner *(name each)*:  Howard K. Stern
   a   ☒   decedent's will and codicils, if any, be admitted to probate.
   b.  ☒   *(name)*: Howard K. Stern                                                              requests that
           be appointed
           (1) ☒   executor
           (2) ☐   administrator with will annexed
           (3) ☐   administrator
           (4) ☐   special administrator    ☐ with general powers
           and Letters issue upon qualification.
   c.  ☒ full  ☐ limited authority    be granted to administer under the Independent Administration of Estates Act.
   d.  (1) ☒   bond not be required for the reasons stated in item 4d.
       (2) ☐   $_____    bond be fixed. The bond will be furnished by an admitted surety insurer or as
               otherwise provided by law. *(Specify reasons in Attachment 2 if the amount is different from the maximum
               required by Prob. Code, § 8482.)*
       (3) ☐   $_____    in deposits in a blocked account be allowed. Receipts will be filed.
               *(Specify institution and location)*:

3. a.   Estimated value of the estate for filing fee purposes *(Complete in all cases. The estimated value of the estate is the fair
        market value of the real and personal property of the estate at the date of the decedent's death, without reduction for
        encumbrances. See Gov. Code, § 26827.)*:

       (1) ☐   Less than $250,000                          (6) ☒   At least $1 .5 million and less than $2 million
       (2) ☐   At least $250,000 and less than $500,000    (7) ☐   At least $2 million and less than $2.5 million
       (3) ☐   At least $500,000 and less than $750,000    (8) ☐   At least $2.5 million and less than $3.5 million
       (4) ☐   At least $750,000 and less than $1 million  (9) ☐   $ 4,000 000.00*
       (5) ☐   At least $1 million and less than $1.5 million       *(For estates of $3.5 million or more, specify total
                                                                      estimated value of estate.)*

   b.  ☐   This petition is not the first petition for appointment of a personal representative with general powers filed in this
           proceeding. The first petition was filed on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
DE-111 [Rev. January 1, 2005]

**PETITION FOR PROBATE**
(Probate—Decedents Estates)

Probate Code, §§ 8002, 10450;
Government Code, § 26827
American LegalNet, Inc.
www.USCourtForms.com

| ESTATE OF *(Name)*: VICKIE LYNN MARSHALL, aka VICKIE LYNN SMITH, aka VICKIE LYNN HOGAN, aka ANNA NICOLE SMITH | NUMBER: |
|---|---|
| | DECEDENT |

4. a. Decedent died on *(date)*: 2/8/2007 at *(place)*: Hollywood, Florida
   (1) ☐ a resident of the county named above.
   (2) ☒ a nonresident of California and left an estate in the county named above located at *(specify location permitting publication in the newspaper named in item 1)*:
     Studio City, California

  b. Street address, city, and county of decedent's residence at time of death *(specify)*:
   Horizons on Eastern Road
   Nassau, Bahamas

  c. Character and estimated value of the property of the estate *(complete in all cases)*:
   (1) Personal property:      $ 10,000.00
   (2) Annual gross income from
     (a) real property:   $ 0.00
     (b) personal property:   $ 0.00
   (3) Subtotal *(add (1) and (2))*:   $ 10,000.00
   (4) Gross fair market value of real property: $ 1,800,000.00
   (5) (Less) Encumbrances: $( 1,100,000.00)
   (6) Net value of real property:   $ 710,000.00
   (7) Total *(add (3) and (6))*:   $ 710,000.00

  d. (1) ☒ Will waives bond. ☐ Special administrator is the named executor, and the will waives bond.
   (2) ☐ All beneficiaries are adults and have waived bond, and the will does not require a bond. *(Affix waiver as Attachment 4d(2).)*
   (3) ☐ All heirs at law are adults and have waived bond. *(Affix waiver as Attachment 4d(3).)*
   (4) ☐ Sole personal representative is a corporate fiduciary or an exempt government agency.
  e. (1) ☐ Decedent died intestate.
   (2) ☒ Copy of decedent's will dated: 7/30/2001  ☐ codicil dated *(specify for each)*:
     are affixed as Attachment 4e(2).
   *(Include typed copies of handwritten documents and English translations of foreign-language documents.)*
   ☒ The will and all codicils are self-proving (Prob. Code, § 8220).
  f. Appointment of personal representative *(check all applicable boxes)*:
   (1) Appointment of executor or administrator with will annexed:
    (a) ☒ Proposed executor is named as executor in the will and consents to act.
    (b) ☐ No executor is named in the will.
    (c) ☐ Proposed personal representative is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 4f(1)(c).)*
    (d) ☐ Other named executors will not act because of ☐ death ☐ declination
      ☐ other reasons *(specify)*:

    ☐ Continued in Attachment 4f(1)(d).
   (2) Appointment of administrator:
    (a) ☐ Petitioner is a person entitled to Letters. *(If necessary, explain priority in Attachment 4f(2)(a).)*
    (b) ☐ Petitioner is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 4f(2)(b).)*
    (c) ☐ Petitioner is related to the decedent as *(specify)*:
   (3) ☐ Appointment of special administrator requested. *(Specify grounds and requested powers in Attachment 4f(3).)*

DE-111 [Rev. January 1, 2005]     **PETITION FOR PROBATE**     Page 2 of 4
**(Probate— Decedents Estates)**

| ESTATE OF *(Name)*: VICKIE LYNN MARSHALL, aka VICKIE LYNN SMITH, aka VICKIE LYNN HOGAN, aka ANNA NICOLE SMITH | CASE NUMBER: |
|---|---|
| **DECEDENT** | |

4. g. Proposed personal representative is a
  - ☒ resident of California.
  - ☐ nonresident of California *(specify permanent address):*

  - ☒ resident of the United States.
  - ☐ nonresident of the United States

5. ☒ Decedent's will does not preclude administration of this estate under the Independent Administration of Estates Act.

6. a. Decedent is survived by *(check items (1) or (2), and (3) or (4), and (5) or (6), and (7) or (8))*
  - (1) ☐ spouse.
  - (2) ☒ no spouse as follows:
    - (a) ☐ divorced or never married.
    - (b) ☒ spouse deceased.
  - (3) ☐ registered domestic partner.
  - (4) ☒ no registered domestic partner.
    *(See Fam. Code, § 297.5(c); Prob. Code, §§ 37(b), 6401 (c), and 6402.)*
  - (5) ☒ child as follows:
    - (a) ☒ natural or adopted.
    - (b) ☐ natural adopted by a third party.
  - (6) ☐ no child.
  - (7) ☐ issue of a predeceased child.
  - (8) ☒ no issue of a predeceased child.

  b. Decedent ☐ is ☒ is not   survived by a stepchild or foster child or children who would have been adopted by decedent but for a legal barrier. *(See Prob. Code, § 6454.)*

7. *(Complete if decedent is survived by (1) a spouse or registered domestic partner but no issue (only a or b apply), or (2) no spouse, registered domestic partner, or issue. (Check the first box that applies):*
  - a. ☐ Decedent is survived by a parent or parents who are listed in item 9.
  - b. ☐ Decedent is survived by issue of deceased parents, all of whom are listed in item 9.
  - c. ☐ Decedent is survived by a grandparent or grandparents who are listed in item 9.
  - d. ☐ Decedent is survived by issue of grandparents, all of whom are listed in item 9.
  - e. ☐ Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 9.
  - f. ☐ Decedent is survived by next of kin, all of whom are listed in item 9.
  - g. ☐ Decedent is survived by parents of a predeceased spouse or issue of those parents, if both are predeceased, all of whom are listed in item 9.
  - h. ☐ Decedent is survived by no known next of kin.

8. *(Complete only if no spouse or issue survived decedent.)*
  - a. ☐ Decedent had no predeceased spouse.
  - b. ☐ Decedent had a predeceased spouse who
    - (1) ☐ died not more than 15 years before decedent and who owned an interest in **real property** that passed to decedent,
    - (2) ☐ died not more than five years before decedent and who owned **personal property** valued at $ 10,000 or more that passed to decedent,
      *(If you checked (1) or (2), check only the first box that applies):*
      - (a) ☐ Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 9.
      - (b) ☐ Decedent is survived by a parent or parents of the predeceased spouse who are listed in item 9.
      - (c) ☐ Decedent is survived by issue of a parent of the predeceased spouse, all of whom are listed in item 9.
      - (d) ☐ Decedent is survived by next of kin of the decedent, all of whom are listed in item 9.
      - (e) ☐ Decedent is survived by next of kin of the predeceased spouse, all of whom are listed in item 9.
    - (3) ☐ neither (1) nor (2) apply.

**PETITION FOR PROBATE**
**(Probate— Decedents Estates)**

American LegalNet, Inc.
www.USCourtForms.com

ESTATE OF (Name): VICKIE LYNN MARSHALL, aka VICKIE LYNN SMITH, aka VICKIE LYNN HOGAN, aka ANNA NICOLE SMITH

CASE NUMBER:

DECEDENT

9. Listed below are the names, relationships to decedent, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons mentioned in decedent's will or any codicil, whether living or deceased; (2) all persons named or checked in items 2, 6, 7, and 8; and (3) all beneficiaries of a trust named in decedent's will or any codicil in which the trustee and personal representative are the same person.

| Name and relationship to decedent | Age | Address |
|---|---|---|
| Daniel Wayne Smith - Son | Deceased N/A | |
| Dannielynn Hope Marshall Birkhead - Daughter | Minor | P.O. Box 9114 Louisville, KY 40202 |
| Larry Birkhead – Father of Minor Dannielyn Hope Marshall Birkhead | Adult | P.O. Box 9114 Louisville, KY 40202 |
| Howard Stern aka Howard K. Stern - Executor | Adult | 2800 Neilson Way #1609, Santa Monica, CA 90405 And: Horizons on Eastern Road Nassau, Bahamas |
| Ron Rale aka Ronald A. Rale - First Successor Executor | Adult | Trope & Trope 12121 Wilshire Blvd., Suite 801 Los Angeles, CA 90025 |
| Eric James Lund - Second Successor Executor | Adult | Lund Law Corp. 1901 Avenue of the Stars, Suite 1555 Los Angeles, CA 90067-6001 |
| Wells Fargo Bank - Successor Executor | n/a | 333 So. Grand Ave. Los Angeles, CA 90071 |

☐ Continued on Attachment 9.

10. Number of pages attached: ___19___

Date: May 7, 2007

BRUCE S. ROSS, SBN 051468
_____
(TYPE OR PRINT NAME OF ATTORNEY)

▶ _____
(SIGNATURE OF ATTORNEY)*

* (Signatures of all petitioners are also required. All petitioners must sign, but the petition may be verified by any one of them (Prob. Code, §§ 1020, 1021; Cal. Rules of Court, rule 7.103).)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 7, 2007

HOWARD K. STERN
_____
(TYPE OR PRINT NAME OF PETITIONER)

▶ _____
(SIGNATURE OF PETITIONER)

▶

_____
(TYPE OR PRINT NAME OF PETITIONER)

_____
(SIGNATURE OF PETITIONER)

☐ Signatures of additional petitioners follow last attachment.

DE-111 [Rev. January 1, 2005]

**PETITION FOR PROBATE**
**(Probate— Decedents Estates)**

Page 4 of 4

American LegalNet, Inc.
www.USCourtForms.com

 Attachment 4e(2) 

# WILL
## OF
### VICKIE LYNN MARSHALL

by Eric James Lund, Esq.
Lund Law Corporation
1901 Avenue of the Stars
Suite 1555
Los Angeles, California 90067
(310) 286-7485

Attachment 4e(2)
Petition for Probate

 Attachment 4e(2) 

1. ARTICLE I
   FAMILY DECLARATIONS AND STATUTORY DISINHERITANCES                        1

2. ARTICLE II
   DISPOSITION OF ESTATE                                                    1

ARTICLE III
   PROVISIONS REGARDING EXECUTORS                                           2
   3.1.  Nomination of Executor.                                            2
   3.2.  Power to Nominate Executor.                                        3
   3.3.  Waiver of Bond.                                                    3
   3.4.  Powers of Executor.                                                3
         3.4.1.   Independent Administration.                               3
         3.4.2.   Tax Elections and Decisions.                              3
         3.4.3.   Disclaimers.                                              4
         3.4.4.   Limitation on Tax Elections and Decisions.                
                                                                           4
         3.4.5.   Management and Administrative Powers of
                  Executor.                                                 5
   3.5.  Resignation of Executor.                                          5
   3.6.  Successor Executors.                                              5
   3.7.  Liability of Executor.                                            6
   3.8.  Executor's Authority to Transfer to Trust.                        7
   3.9.  Co-Executors.                                                     7

4. ARTICLE IV
   GENERAL PROVISIONS                                                       7
   4.1.  No Interest.                                                       7
   4.2.  Life Insurance Policies.                                          8
         4.2.1.   Collection of Proceeds.                                   8
   4.3.  Construction.                                                      8
         4.3.1.   Number and Gender.                                        8
         4.3.2.   Headings.                                                 9
         4.3.3.   Severability of Provisions.                               9
   4.4.  Governing Law                                                      9

5. ARTICLE V
   TAXES AND OTHER EXPENSES OF MY ESTATE                                    9
   5.1.  Payment from Trust.                                                9
   5.2.  Tax Decisions and Elections.                                      12

WILL OF VICKIE LYNN MARSHALL                 *VLM*

-i-                                          VLM

Attachment 4e(2)
Petition for Probate

 Attachment 4e(2) 

ARTICLE VI
    NO CONTEST; DISINHERITANCE    12
    6.1.  Contestants Disinherited.    12
    6.2.  General Disinheritance.    13

ARTICLE VII
    OFFICE OF GUARDIAN    13
    7.1.  Nomination of Guardian of the Person.    13
    7.2.  Waiver of Bond.    14

WILL OF VICKIE LYNN MARSHALL

-ii-

VLM

VLM

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

## WILL

### OF

### VICKIE LYNN MARSHALL

I, VICKIE LYNN MARSHALL, also known as Vickie Lynn Smith, and Vickie Lynn Hogan, and Anna Nicole Smith, a resident of Los Angeles County, California, declare that this is my Will. I revoke all prior Wills and Codicils. I hereby dispose of all property that I am entitled to dispose of by Will and exercise all general powers of appointment that I am entitled to exercise. I have not entered into a contract to make or not revoke a Will.

1.                        ARTICLE I

### FAMILY DECLARATIONS AND STATUTORY DISINHERITANCES

I am unmarried. I have one child DANIEL WAYNE SMITH. I have no predeceased children nor predeceased children leaving issue.

Except as otherwise provided in this Will, I have intentionally omitted to provide for my spouse and other heirs, including future spouses and children and other descendants now living and those hereafter born or adopted, as well as existing and future stepchildren and foster children.

* END OF ARTICLE *

2.                        ARTICLE II

### DISPOSITION OF ESTATE

WILL OF VICKIE LYNN MARSHALL                *VLW*
-1-                                          VLM

Attachment 4e(2)
Petition for Probate

 Attachment 4e(2)

All of the property of my estate (the "residue"), after payment of any taxes or other expenses of my estate as provided below, including property subject to a power of appointment exercised hereby, shall be distributed to HOWARD STERN, Esq., to hold in trust for my child under such terms as he and a court of competent jurisdiction may declare, such that my children are distributed sufficient sums for the health, education, and support according to their accustomed manner of living from either the income or principal of the trust until age twenty-five; and are at that time given one-third of all of the income of the trust and one-third of the principal of the trust as then constituted; and at thirty are given one-half of the income from the trust and one-half of the principal of the trust as then constituted; and at thirty-five are given all of the principal of the trust. If, in the discretion of the Trustee, the amount remaining in the Trust is too small to efficiently administer, he may give all of the corpus of the trust to my child at once.

* END OF ARTICLE *

3.                        **ARTICLE III**

**PROVISIONS REGARDING EXECUTORS**

3.1. _Nomination of Executor._

I nominate as Executor and as successor Executors of this Will those named below.  Each successor Executor shall serve in the order and priority designated if the prior designated Executor fails to qualify or ceases to act.

> First:    HOWARD STERN, Esq.
>
> Second:   RON RALE, Esq.
>
> Third:    ERIC JAMES LUND, Esq.

**WILL OF VICKIE LYNN MARSHALL**

VLM

-2-

Attachment 4e(2)
Petition for Probate

 Attachment 4e(2)

    Fourth: Wells Fargo Bank (Sandra K. Von Paul) or its successor by merger, consolidation, or otherwise.

  3.2. <u>Power to Nominate Executor</u>.

    If all of the foregoing Executors are unable or unwilling to act, the majority of adult beneficiaries under this Will shall have the power to designate as successor Executor any corporate fiduciary having assets under management of at least Two Hundred Fifty Million Dollars ($250,000,000). Such designation shall be filed with the court in which this Will is probated.

  3.3. <u>Waiver of Bond</u>.

    I request that no bond be required of any Executor nominated above, including nonresidents, whether such Executor is acting alone or together with another.

  3.4. <u>Powers of Executor</u>.

    My Executor shall have the following powers in addition to all powers now or hereafter conferred by law, and except as otherwise expressly provided, shall have the broadest and most absolute permissible discretion in exercising all powers. I intend and direct that the probate court uphold any action taken by my Executor, absent clear and convincing evidence of bad faith or gross negligence.

    3.4.1. <u>Independent Administration</u>.

    My Executor may administer my estate with full authority under the California Independent Administration of Estates Act.

    3.4.2. <u>Tax Elections and Decisions</u>.

**WILL OF VICKIE LYNN MARSHALL**

-3-

VLM

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

My Executor may value my gross estate for federal estate tax purposes as of the date of my death or any permissible alternate valuation date, may claim any items of expense as income or estate tax deductions, or both, and may make such other tax elections or tax oriented decisions as my Executor believes will achieve an overall reduction in taxes.  No compensating adjustments shall be made among my beneficiaries or between income and principal accounts by reason of the elections and decisions authorized by the preceding sentence, except as my Executor deems equitable, and no such election or decision shall be subject to challenge absent clear and convincing evidence of gross negligence or bad faith.

3.4.3.    Disclaimers.

My Executor may disclaim all or any portion of any bequest, devise or trust interest provided for me under any Will or Trust.  In particular, I authorize and encourage my Executor to try to obtain overall tax savings, even though this may change the ultimate recipients of the property that is disclaimed.

3.4.4.    Limitation on Tax Elections and Decisions.

No person serving as Executor for federal tax purposes, hereunder or pursuant to the terms of the Trust, shall have authority to make or participate in any tax election or decision if the power to do so would result in his or her having a general power of appointment (for federal gift and estate tax purposes) over property with respect to which he or she would (or might) not otherwise have such a general power, and in such event

WILL OF VICKIE LYNN MARSHALL

-4-

VLM

VLM

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

such authority shall pass to the next successor fiduciary who is not so disqualified.

       3.4.5.   <u>Management and Administrative Powers of Executor</u>.

         Subject to any express limitation stated elsewhere in this Will, I hereby grant to my Executor all administrative powers that may legally be granted to an Executor under California law as of the date of my death, including, without limitation and to the extent that I am permitted to do so by California law. Without limiting any of the foregoing, I specifically provide that my Executor shall have the broadest and most unrestricted permissible powers to sell, lease or retain any property, make investments, make tax elections and tax oriented decisions, defer distributions, retain professional advisors and compensate them from my estate, or continue or restructure any business. I also direct that my Executor obtain court approval only as my Executor deems appropriate or if such approval is required by law despite any provision in a Will purporting to eliminate the need for such approval, it being my desire that, whenever possible, my Executor rely on Notices of Proposed Action or Waivers of Notice and Consents, unless my Executor desires court approval.

    3.5.  <u>Resignation of Executor</u>.

        My Executor may resign at any time (a) by filing a written instrument with the court having jurisdiction over my estate, or (b) by giving written notice to all successor Executors.

    3.6.  <u>Successor Executors</u>.

WILL OF VICKIE LYNN MARSHALL

-5-

*VLM*

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

All authority, titles and powers of the original Executor shall automatically pass to a successor Executor. A successor Executor may accept as correct or contest any accounting made by any predecessor Executor; provided that a successor Executor shall be obligated to inquire into the propriety of any act or omission of a predecessor if so requested in writing by a Trustee of the Trust, any Protector of the Trust, or any adult beneficiary or the guardian of a minor beneficiary of the Trust within ninety (90) days of the date that the successor is appointed.

3.7. <u>Liability of Executor</u>.

No Executor, other than a corporate Executor, shall be liable to any person interested in my estate for any act or default of my Executor or any other person, or for any obligation of my estate, unless it results from my Executor's own bad faith, willful misconduct, or gross negligence. My estate shall indemnify my Executor from any liability with respect to which my Executor is held harmless pursuant to the preceding sentence. I specifically indemnify my Executor, including any corporate Executor, from any personal liability for any clean-up costs relating to property held in my estate that contains toxic substances, and direct that any such clean-up costs be paid from my estate in proportion to its interest in the toxic property. Furthermore, if my Executor suspects that property held in my estate may present toxic clean-up problems, my Executor may obtain an environmental assessment, and my estate shall pay for such assessment. Prior to appointment, a nominated Executor may obtain court authority for such assessment, and be reimbursed

WILL OF VICKIE LYNN MARSHALL

-6-

Attachment 4e(2)
Petition for Probate

*VLM*
VLM

Attachment 4e(2)

from the residue of my estate therefor.  Such assessment shall also be obtained before any purchase of any property by my estate if my Executor suspects toxic contamination, the cost of such assessment to be paid from my estate.

3.8.  <u>Executor's Authority to Transfer to Trust</u>.

I hereby authorize my Executor (or the person nominated to serve as Executor even if no Letters Testamentary are issued) to transfer to the Trustee of the Trust any asset and to execute any document in connection with any such transfer to the extent necessary or appropriate to carry out any assignment of assets to the Trust.

3.9.  <u>Co-Executors</u>.

If more than one person is serving as Executor, one Executor acting alone may transfer securities and execute all documents in connection therewith; open accounts with one or more banks or savings and loan associations; authorize deposit or withdrawal of funds to or from accounts; and sign checks. Transfer agents, corporations and financial institutions dealing with a single Executor as provided in the preceding sentence shall have no liability as a consequence of dealing with only one Executor. My Executor may delegate any ministerial duties to any Co-Executor.


\* END OF ARTICLE \*


4.                              **ARTICLE IV**

                         **GENERAL PROVISIONS**

4.1.  <u>No Interest</u>.

**WILL OF VICKIE LYNN MARSHALL**

*V L M*

VLM

-7-

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

No interest shall be paid on any gift hereunder, except to the extent necessary to qualify for the marital deduction.

4.2. Life Insurance Policies.

4.2.1.    Collection of Proceeds.

Upon the death of any person insured under a policy of insurance payable to my Executor, my Executor may exercise any option provided in the policy, and receive all sums due under the terms of the policy.   To facilitate receipt of such sums, my Executor may execute receipts and other instruments, and compromise disputed claims; provided, however, that if payment of a claim is contested, my Executor shall not be obligated to take any action for collection until my Executor has been personally indemnified to my Executor's satisfaction against any liability or expense, including attorneys' fees; provided, further, that my Executor may use any funds in my Executor's hands to pay the expenses, including attorneys' fees, to collect the proceeds of a policy, and may reimburse himself, herself or itself for advances made for this purpose.  No insurance company shall have any obligation to inquire into the application of the proceeds of any policy.  Upon payment to my Executor of the amounts due under a policy, an insurance company shall be relieved of all further liability thereunder.

4.3. Construction.

4.3.1.    Number and Gender.

In all matters of interpretation, the masculine, feminine and neuter shall each include the other, as the context indicates, and the singular shall include the plural and vice versa.

WILL OF VICKIE LYNN MARSHALL

-8-

*VLM*
VLM

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

4.3.2.    <u>Headings</u>.

The headings in this Will are inserted for convenient reference and shall be ignored in interpreting this Will.

4.3.3.    <u>Severability of Provisions</u>.

If any provision hereof is unenforceable, the remaining provisions shall remain in full effect.

4.4. <u>Governing Law</u>.

The validity, interpretation, and administration of this Will shall be governed by the laws of the State of California in force from time to time.

\* END OF ARTICLE \*

5.                                    **ARTICLE V**

**TAXES AND OTHER EXPENSES OF MY ESTATE**

5.1. <u>Payment from Trust</u>.

All federal estate and other death taxes imposed and all expenses and charges incidental thereto, shall be payable by the Executor out of the residue of the estate, without charge against or reimbursement from any beneficiary; but excluding the taxes referred to in the following Subsections 5.1.1. through 5.1.13 below, which shall be paid as provided below:

5..1..1.  Any additional taxes under Section 2032A(c) of the Code, which shall be paid or bonded by the recipients of the property subject to special use valuation as provided in Section 2032A(c)(5);

**WILL OF VICKIE LYNN MARSHALL**

-9-

*VLM*
VLM

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

5..1..2.  Any tax under Section 2036 of the Code caused by my retaining any interest subject to Section 2036 of the Code, which shall be paid as provided in Section 2207B of the Code;

5..1..3.  Any taxes under Section 2039 of the Code;

5..1..4.  Any tax under Section 2041 of the Code caused by my possession of a general power of appointment not validly exercised by me during my lifetime or in this Will, imposed upon or in relation to any property or interest therein included in my gross estate as determined for federal estate tax purposes, which shall be paid as provided in Section 2207 of the Code;

5..1..5.    Any tax under Section 2042 of the Code with respect to any policy of insurance if the Deceased Trustor did not possess the right to change the beneficiary of such policy on the date of my death, which shall be paid as provided in Section 2206 of the Code;

5..1..6.  Any taxes under Section 2056A(b) of the Code, which shall be computed and paid as provided in Section 2056A(b) of the Code;

5..1..7. Any taxes caused by failure to make a full election under Section 2056(b)(7) of the Code with respect to any portion of the Marital Gift.  Such taxes shall be paid from the portion of the Marital Gift as to which such election is not made or from any separate Trust created to hold such portion;

5.1.8.  Any generation-skipping transfer taxes under Section 2601 et seq. of the Code, which shall be

WILL OF VICKIE LYNN MARSHALL                    V L M
                   -10-                          VLM

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

computed as provided in Section 2601 et seq. of the
Code and be paid as provided in Section 2603 of the
Code;

5.1.9.    Any taxes under Section 2701 et seq. of the
Code;

5..1..10. Any tax under Section 4980A(d) of the Code.

5..1..11. Any tax caused by my possession of a vested
reversion or remainder interest that has been deferred under
Section 6163 of the Code; and

5..1..12. Any state death taxes imposed on property
subject to the taxes described in Subsections 5.1.1. through
5.1.13 above.

The foregoing taxes excluded from payment from the Residuary
Amount shall be charged against and paid from the property and
interests with respect to which such taxes are imposed, or by the
recipients or owners of such property and interests within thirty
(30) days after a written demand from the Trustee, as the Trustee
deems appropriate.  Except as otherwise provided above with
respect to certain of the taxes imposed by the Code, the amounts
to be paid pursuant to the preceding sentence shall be computed
on a pro-rata basis based on the ratio of (a) the value for
federal estate tax purposes of the property and interests with
respect to which such taxes are imposed, to (b) the value of the
my taxable Estate for federal estate tax purposes, multiplied by
(c) the sum of the total estate and other death taxes payable,
i.e (a/b) x c.  Notwithstanding the foregoing, none of the taxes
listed in Subsections 5.1.1. through 5.1.13 above shall be
payable (directly or indirectly) by or from a gift to or in trust

WILL OF VICKIE LYNN MARSHALL
-11-

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

for the Survivor if the effect of such payment would be to cause an increase in the overall death taxes payable by reason of my death nor shall any such taxes be payable (directly or in-directly) by or from a gift to any charitable entity if the effect of such payment would be to reduce the charitable deduc-tion allowable to my Estate.

    5.2. <u>Tax Decisions and Elections</u>.

       After reasonable consultation with the Trustee of the Trust, my Executor may take any action and make any election to minimize the tax liabilities of my estate or the beneficiaries of the Trust.  Except as otherwise expressly provided herein, my Executor shall have the power (but not the obligation) to make adjustments to compensate for the consequences of any tax election or any investment or administrative decision that my Executor believes has had the effect of directly or indirectly preferring one beneficiary or group of beneficiaries over another.  No decision of my Executor regarding tax matters shall be subject to challenge by any person or entity, unless the party affected can clearly prove that the decision was grossly negligent or made in bad faith.

* END OF ARTICLE *

6.                 **ARTICLE VI**

<u>NO CONTEST; DISINHERITANCE</u>

    6.1. <u>Contestants Disinherited</u>.

       If any legal heir of mine, any person claiming under any such heir, or any other person, in any manner, directly or

**WILL OF VICKIE LYNN MARSHALL**
-12-
*VLM*
VLM

 Attachment 4e(2)

indirectly, contests or attacks this Will or the Trust or any of the provisions of said instruments, or conspires with or assists anyone in any such contest, or pursues any creditor's claim that my Executor reasonably deems to constitute a contest, any share or interest in my estate or the Trust given to that contesting beneficiary under this Will or the Trust is revoked and shall be disposed of as if the contesting beneficiary had predeceased me without descendants, and shall augment proportionately the shares of my estate passing to or in trust for my beneficiaries who have not participated in such acts. This Article shall not apply to a disclaimer. Expenses to resist a contest or other attack of any nature shall be paid from my estate as expenses of administration.

6.2. <u>General Disinheritance</u>.

Except as otherwise provided herein and in the Trust, I have intentionally omitted to provide for any of my heirs, or persons claiming to be my heirs, whether or not known to me.

* END OF ARTICLE *

7.                          **ARTICLE VII**

**<u>OFFICE OF GUARDIAN</u>**

7.1. <u>Nomination of Guardian of the Person</u>.

I nominate HOWARD STERN as guardian and successor guardian of the person of my minor child DANIEL WAYNE SMITH:

Any such nominee who is a resident of a state other than California may, at the nominee's election, file a petition for appointment in such other state and/or in California. I request that any court having jurisdiction permit the guardian to change

WILL OF VICKIE LYNN MARSHALL

-13-

<u>VLM</u>
VLM

Attachment 4e(2)
Petition for Probate

Attachment 4e(2)

the residence and domicile of my minor children to the
jurisdiction where the guardian resides.

    I give the guardian of the person of my minor children the
same authority as a parent having legal custody and authorize the
guardian to exercise such authority without need for notice,
hearing, court authorization, instructions, approval or
confirmation in the same manner as a parent having legal custody.
I request that no bond be required because of the grant of these
independent powers.

    7.2. Waiver of Bond.

    I request that no bond be required of any guardian
nominated above.

* END OF ARTICLE *

Signature Clause. I subscribe my name to this Will at Los
Angeles, California, on this ___30th___ day of ___July___,
2001.

*Vickie Lynn Marshall*
VICKIE LYNN MARSHALL

WILL OF VICKIE LYNN MARSHALL
-14-
Attachment 4e(2)
Petition for Probate

VLM

Attachment 4e(2)

## ATTESTATION CLAUSE

The testator declared to us, the undersigned, that this instrument, consisting of the number of pages indicated below, including this page, is the testator's Will and asked us to witness it. The testator then signed this Will in our presence, all of us being present at the same time.  The testator is now over the age of eighteen (18) years, and appears to be of sound mind.  None of us has knowledge of any facts indicating that said instrument, or any part of it, was procured by duress, menace, fraud, or undue influence.  We now, at the testator's request, in the testator's presence, and in the presence of each other, subscribe our names as witnesses.

_James Khavarian_    _Kimberly Walther_    _____
[signature of witness]    [signature of witness]    [signature of witness]

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the date and at the place indicated below.

Date: _7/30_____, 2001     Place: _LOS ANGELES, CALIFORNIA_

_____
Signature of Witness
_JAMES KHAVARIAN_
Print Name

_5250 BELLINGHAM AVENUE, #6_
Address
_VALLEY VILLAGE, CALIFORNIA 91607_
City, State and Zip Code

_Kimberly Walther_
Signature of Witness
_Kimberly Walther_
Print Name

_12439 Magnolia Blvd. #126_
Address
_Valley Village, CA 91607_
City, State and Zip Code

**WILL OF VICKIE LYNN MARSHALL**

-15-

_VLM_
VLM

Attachment 4e(2)
Petition for Probate

 Attachment 4e(2) 

_____    _____
Signature of Witness                Address

_____    _____
Print Name                          City, State and Zip Code

                                    _____

WILL OF VICKIE LYNN MARSHALL                    *VLM*
            -16-                                 VLM

          Attachment 4e(2)
         Petition for Probate

DE-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | TELEPHONE AND FAX NOS. : | FOR COURT USE ONLY |
|---|---|---|
| Bruce S. Ross, SBN 51468<br>Vivian L. Thoreen, SBN 224162<br>Luce, Forward, Hamilton & Scripps LLP<br>601 S. Figueroa St. Suite 3900, Los Angeles, CA 90017 | Tel: 213-892-4992<br>Fax: 213-892-7731 | |

ATTORNEY FOR *(Name)*: Petitioner Howard K. Stern

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central

**FILED**
LOS ANGELES SUPERIOR COURT

JUN 19 2007

JOHN A. CLARKE, CLERK
~~John Williams~~
BY S.L. WILLIAMS, DEPUTY

ESTATE OF *(Name)*: Vickie Lynn Marshall, aka Vickie Lynn Smith, aka Vickie Lynn Hogan, aka Anna Nicole Smith

DECEDENT

### ORDER FOR PROBATE

ORDER APPOINTING
☒ Executor
☐ Administrator with Will Annexed
☐ Administrator ☐ Special Administrator
☒ Order Authorizing Independent Administration of Estate
☒ with full authority ☐ with limited authority

CASE NUMBER:
BP 104575

**WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.**

1. Date of hearing: June 19, 2007    Time: 10:30 a.m.    Dept./Room: 5    Judge: Hon. Mitchell L. Beckloff

THE COURT FINDS
2. a. All notices required by law have been given.
   b. Decedent died on *(date)*: 02/08/07
      (1) ☐ a resident of the California county named above.
      (2) ☐ a nonresident of California and left an estate in the county named above,
   c. Decedent died
      (1) ☐ intestate
      (2) ☒ testate
      and decedent's will dated: July 30, 2001    and each codicil dated:
      was admitted to probate by Minute Order on *(date)*: June 19, 2007

*[handwritten]* Wt The Court is making no finding regarding the Decedent's domicile or residency at this time.

THE COURT ORDERS
3. *(Name)*: Howard K. Stern
   is appointed **personal representative**:
   a. ☒ executor of the decedent's will
   b. ☐ administrator with will annexed
   c. ☐ administrator
   d. ☐ special administrator
      (1) ☐ with general powers
      (2) ☐ with special powers as specified in Attachment 3c(2)
      (3) ☐ without notice of hearing
      (4) ☐ letters will expire on *(date)*:
   and letters shall issue on qualification.

4. a. ☒ Full authority is granted to administer the estate under the Independent Administration of Estates Act.
   b. ☐ Limited authority is granted to administer the estate under the Independent Administration of Estates Act (there is no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

*[handwritten]* Wt

5. a. ☒ Bond is not required.
   b. ~~☐~~ Bond is fixed at: ~~$~~ ~~$0.00~~    to be furnished by an authorized surety company or as otherwise provided by law.
   c. ☐ Deposits of: $    are ordered to be placed in a blocked account at *(specify institution and location)*:
      and receipts shall be filed. No withdrawals shall be made without a court order. ☐ Additional orders in Attachment 5c.
   d. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

6. ☐ *(Name)*:    is appointed probate referee.

Date: JUN 19 2007

7. Number of pages attached: 0

*[signature]* JUDGE OF THE SUPERIOR COURT
☒ SIGNATURE FOLLOWS LAST ATTACHMENT
**MITCHELL L. BECKLOFF**

Form Approved by the
Judicial Council of California
E-140 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

ORDER FOR PROBATE

Probate Code, §§ 8006, 8400

American LegalNet, Inc.
www.USCourtForms.com

# **AMENDED COMPLAINT**

# **EXHIBIT C**

01-11-2008 16:21                                                    PAGE1

COMMONWEALTH OF THE BAHAMAS                    2006

IN THE SUPREME COURT                           CLE/gen/ *O 1191*

Common Law and Equity Division

BETWEEN

VICKIE LYNN MARSHALL

Plaintiff

and

BAHAMAS ELECTRICITY CORPORATION

1St Defendant

and

WATER & SEWERAGE CORPORATION

2nd Defendant

G. BEN THOMPSON

3rd Defendant

O R D E R

BEFORE the Honourable   *J. Thompson*   Justice of the Supreme Court on the 20th day of November, A.D., 2006.

AND UPON HEARING  Wayne R. Munroe Esq. of Counsel for the Plaintiff.

AND UPON READING the draft Affidavit of Jairam Mangra sworn on the    <sup>th</sup> day of November, A.D.,2006

AND THE PLAINTIFF by her said Counsel undertaking:

1      To forthwith file and serve an Affidavit in the form of the draft attached hereto.

2      To forthwith file and serve a Wit of Summons herein.

3      To keep current all payments due to the First and Second Defendants.

4      To abide by any Order the Court may make as to damages, in case the Court
       shall hereafter be of the opinion that the Defendants shall have sustained any
       by reason of this Order which the Plaintiff ought to pay;

**IT IS ORDERED AND DIRECTED** that:

1.     The Defendants whether by themselves, their servants or agents or
       howsoever otherwise be restrained and an injunction be granted
       restraining them from doing the following acts or any of them, that is
       to say, entering, crossing or disconnecting or causing to be
       disconnected the supply of electricity or water or in any way
       interfering with the Plaintiff's possession or enjoyment of the land
       being the Southern portion of Lot No.50 of the Winton Estates also
       known as and hereinafter referred to as "Horizons" and situate in the
       Eastern District of the Island of New Providence one of the Islands of
       the Commonwealth of The Bahamas.

**AND THAT** such Order shall remain in force until Judgment in the action
CLE/gen/01127 of 2006 of the Supreme Court unless before then it is varied
or discharged by order of the Court.

2.     That there be liberty to apply to discharge or vary this Order on 2
       days' notice in the meantime.

3.     That costs of this application be reserved.

## BY ORDER OF THE COURT

## REGISTRAR

## <u>PENAL NOTICE</u>

If you, the within named **Bahamas Electricity Corporation, Water & Sewerage
Corporation** and **G. Ben Thompson** neglect to obey this Order, you will be liable to
process of execution for the purpose of compelling you to obey the same.

Dated the        day of November, A.D., 2006.

**Lockhart & Munroe**

Attorneys for the Plaintiff.

# **AMENDED COMPLAINT**

# **EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | MISC. DOCKET |
| SUBPOENA SERVED ON BKD, LLP | § | NO. 09-mc-86 |

| | | |
|---|---|---|
| HOWARD K. STERN | § | ISSUED FOR |
| | § | CAUSE NO. 4:08-cv-2753-TLW |
| V. | § | PENDING IN THE DISTRICT OF |
| | § | SOUTH CAROLINA, |
| STANCIL SHELLEY, ET AL | § | FLORENCE DIVISION |

## ORDER QUASHING SUBPOENA

Came on to be heard Virgie Arthur's Motion to Quash Subpoena Issued to BKD,

LLP.  After hearing the motion, this Court was of the opinion that it should be

GRANTED.  It is therefore

ORDERED, ADJUDGED and DECREED that the subpoena set out above is

hereby QUASHED, and BKD, LLP need not produce any documents or things in

response to it.

_____
JUDGE

# **AMENDED COMPLAINT**

# **EXHIBIT E**

## COMMON INTEREST AND CONFIDENTIALITY AGREEMENT

This Agreement, which memorializes an earlier oral agreement made on or about March 3, 2007, is executed by and between Virgie Arthur, Ford Shelley, and Gaither Thompson (the "Parties"), through their undersigned counsel, on this 15th day of May, 2008.

WHEREAS, Virgie Arthur has sued Howard Stern and others in Arthur v. Stern, et al., 4:07-CV-03742 and in Arthur v. Stern, et al, No. 2008-24181 (collectively, the "Arthur Libel Actions"); and

WHEREAS, Ford Shelley and Gaither Thompson are investigating the possibility of commencing legal action against Howard K. Stern; and

WHEREAS, the Parties believe and anticipate that given the nature of the various legal Actions and contemplated Actions, there will be various common legal and factual issues and a mutuality of interest in a joint defense in connection with the Actions; and

WHEREAS, the Parties wish to continue to pursue their separate but common interests, and to avoid any suggestion of waiver of the confidentiality or immunity of communications and documents protected by the attorney-client privilege, the attorney's work product doctrine or any other privilege or immunity; and

WHEREAS, it is the intention and understanding of the Parties that past and future communications among and between the Parties and their counsel shall remain confidential and shall continue to be protected from disclosure to any other person, firm or entity by applicable privileges and immunities.

IT IS THEREFORE AGREED as follows:

1.    The Parties in their discretion may, either through their respective counsel (including in-house attorneys) or otherwise, share materials, views and information that is related to the Actions and related issues ("Confidential Information"). Such Confidential Information may be disclosed between the Parties orally or in writing, and may include legal research and analysis, mental impressions, strategy, interview memoranda, reports, electronically stored information, and other relevant information. The Parties intend that no claim of work product, attorney-client privilege, or other privilege shall be waived by reason of such disclosure. The Parties further intend that all communications made in connection with the litigation efforts contemplated by this Agreement shall be protected from discovery by the work product doctrine, the attorney-client privilege, the common interest privilege, and the joint defense doctrine to the fullest extent possible. By offering or accepting any Confidential Information, each of the Parties and each of their respective counsel represents that the common interests of the Parties are continuing, that the offering and accepting of such Confidential Information is covered by this Agreement, and that all applicable privileges remain in effect.

2.    Confidential Information shared as part of the defense effort shall be held in strict confidence by the Parties. Should a Party elect to disclose Confidential Information beyond the terms of this paragraph, it is the burden of the disclosing Party to establish prior receipt of such information or other grounds for disclosure. Such information may be disclosed only to those outside and inside counsel, consultants and experts and other representatives for purposes of advancing the Parties' common interests in connection with the Actions. Each of the Parties shall take appropriate measures to

maintain the confidentiality of all Confidential Information, and shall not disclose such information to any person, firm or entity except as provided herein.

3.    The Parties recognize and agree that Confidential Information that is not otherwise privileged from disclosure shall not gain privilege simply because such information may be shared in a common interest communication, but the absence of privilege does not mean Confidential Information ceases to be such.  The common interest and work product privileges do protect against disclosure of (a) the fact that particular common interest communications have been made among the Parties, (b) the contents of such common interest communications and (c) any part of memoranda or other work product containing or referring to such common interest communications.

4.    Each of the Parties understands that they are represented exclusively by their own attorneys in the Actions.  While attorneys representing other Parties have a duty to preserve the confidences disclosed to them pursuant to this Agreement, they will not act for any Party other than their own clients in this matter.  Each of the Parties understands that this Agreement itself does not and will not create any attorney-client relationship with any other Party's attorneys.  Each of the Parties expressly acknowledges that attorneys representing other Parties owe an uncompromising duty of loyalty to their own respective client and to no other Party.

5.    It is expressly understood that nothing in this Agreement restricts any of the Parties from disclosing information that was obtained or developed independently of this Agreement.

6.    The undersigned also agree that if any attempt is made by any third party to secure or obtain any Confidential Information from a Party, the other Parties shall be

promptly notified and shall be given copies of any writings or documents, including subpoenas, summonses and transmittals related thereto, that request the Confidential Information. Each of the Parties agrees that, in such a case, it will consult the others and agree to (a) assert the attorney-client privilege, the attorney work product doctrine, and all other applicable privileges and objections with respect to such requests for Confidential Information or strategy; (b) not waive any applicable privilege or objection without the consent of the originating Party; and (c) make every other reasonable effort to prevent or limit disclosure of Confidential Information or strategy originating from any other Party.

7.     It is further agreed that all Confidential Information disclosed by and between the Parties and their counsel shall be treated as if protected by the attorney-client and attorney work product privileges, whether or not so identified or marked. Any documents or information shared pursuant to this Agreement that contain any factual information concerning the originating Party may be used solely for the purposes of representing the Parties in connection with the Actions. The Parties agree not to enter into any settlement or cooperation agreement with any person, firm or entity that would require or result in disclosure of any Confidential Information, the disclosure of which is restricted by this Agreement.

8.     Any of the Parties may withdraw from this Agreement at any time by giving written notice, in which case this Agreement shall no longer be operative as to the withdrawing Party, but shall continue to protect all Confidential Information disclosed to the withdrawing Party prior to the withdrawing Party's notification of intent to withdraw. Moreover, any Party's withdrawal shall be solely on a prospective basis and Confidential

Information made available to the withdrawing Party prior to withdrawal shall continue to be governed by this Agreement. The withdrawing Party and its counsel shall return all Confidential Information in tangible form and copies thereof covered under this Agreement within ten (10) business days of such withdrawal.

9.      The confidentiality obligations of the Parties shall survive the termination of this Agreement and shall remain in full force and effect if the interests of the Parties subsequently cease to be common or become adverse, irrespective of any claim that the common interest or joint defense privileges may become prospectively ineffective or unavailable due to such claimed diversity of interests. Confidential Information shall be used solely in relation to the Actions and for no other proceeding.

10.     Each of the Parties knowingly and voluntarily waives the right to object to the continued or future retention by any other of the Parties of counsel or to seek the counsel's disqualification, on the ground that: (a) the counsel had access to the Confidential Information pursuant to this Agreement; or (b) the counsel has a conflict of interest by reason of participation in common interest efforts under this Agreement. In addition, no attorney representing one of the Parties who has entered into this Agreement in relation to the Actions shall be disqualified from examining or cross-examining any other Party who testifies in relation to the Actions because of such attorney's access to information under this Agreement, but no information obtained pursuant to this Agreement can be used by the attorney in the examination. Further, each of the Parties knowingly and voluntarily waives any right to take testimony from counsel for another Party based on that counsel's participation in common interest efforts except as may be necessary in seeking to enforce this Agreement.

11.    At any time, any of the Parties may request the return of any Confidential Information that it has disclosed pursuant to this Agreement. Such a request shall be honored within ten (10) business days of the request, and the original and all photocopies of any Confidential Information shall be returned to the requesting Party.

12.    This Agreement may be modified only in a writing signed by each of the Parties or their counsel. The addition of parties to this Agreement is permitted upon notice to and written consent by each of the Parties or their counsel.

13.    This Agreement shall bind the Parties and their respective heirs, successors, affiliates and assigns.

14.    This Agreement shall be governed by New York law.

15.    This Agreement may be signed using one or more counterparts. The several executed copies together will be considered an original and will be binding on the Parties.

16.    The signature of a Party's counsel hereunder shall bind the respective Party to this Agreement.

ACCEPTED AND AGREED:

THE O'QUINN LAW FIRM

By: _____

Neil C. McCabe
2300 Lyric Centre Building
440 Louisiana
Houston, TX 77002
Telephone:  (713) 223-1000
Facsimile:  (713) 222-6903

*Attorneys for Virgie Arthur*

LAW OFFICE OF SUSAN M. BROWN

By: _____

    Susan M. Brown
    525 Clubhouse Drive
    Peachtree City, GA 30269

*Attorneys for Ford Shelley and Gaither Thompson*

# AMENDED COMPLAINT

# EXHIBIT F



*The Law Office of*

## Susan M. Brown, P.C.

September 25, 2009

Neal McCabe
The O'Quinn Law Firm
2300 Lyric Centre Building
440 Louisiana
Houston, TX 77002

> **Re:**  **Common Interest Agreement between Virgie Arthur, Ford Shelley and Gaither Thompson**

Dear Neil,

Please accept this a notification that Gaither Thompson hereby wishes to withdraw from the Common Interest Agreement between the above referenced parties. Pursuant to paragraphs eight and eleven of said agreement, please immediately return all copies of any item forwarded to your firm under this agreement. I recognize that the copies of the original hard drives have been returned.

Additionally, if you could please confirm in writing that no information received by your firm from the hard drives has been disseminated to any other party or person and that all information has remained confidential as per the agreement.

Please return the items, if any exist, to my office at 525 Clubhouse Drive, Suite 120, Peachtree City, GA 30269.

Thanking you in advance for your cooperation in this matter.

Sincerely,

Susan M. Brown

SMB:js

# **AMENDED COMPLAINT**

# **EXHIBIT G**



**FOWLER WHITE**

ATTORNEYS AT LAW

**BURNETT**

MIAMI · FORT LAUDERDALE · WEST PALM BEACH · ST. PETERSBURG

ESPIRITO SANTO PLAZA
FOURTEENTH FLOOR
1395 BRICKELL AVENUE
MIAMI, FLORIDA 33131
TELEPHONE (305) 789-9200
FACSIMILE (305) 789-9201

WWW.FOWLER-WHITE.COM

LILLY ANN SANCHEZ
DIRECT PHONE NO.: (305) 789-9279
DIRECT FACSIMILE NO.: (305) 728-7579
LSANCHEZ@FOWLER-WHITE.COM

March 30, 2007

<u>**VIA FACSIMILE & U.S. MAIL**</u>

Walter "Skip" Campbell, Esq.
Krupnick Campbell Malone, et al.
700 SE 3rd Avenue
Suite 100
Ft. Lauderdale, FL 33161

      Re:    Estate of Anna Nicole Smith and Stolen Items
              Our File No. 72421

Dear Mr. Campbell:

      As you are aware from our conversation on March 28, 2007, I represent Howard K. Stern in his capacity as Executor of the Estate of Anna Nicole Smith in connection with the recovery of items stolen from Ms. Smith's home on February 9, 2007. I am a former federal prosecutor and represented Mr. Stern in connection with the death investigation that Florida and Seminole Tribe law enforcement conducted.

      This correspondence shall reiterate my client's formal demand directed to your client, Stancil Ford Shelly, for **immediate** turnover of any and all items currently in Mr. Shelly's possession or control that he improperly secreted from Ms. Smith's Bahamian home. The items stolen include, but are not limited to, the items identified in the attached press release from Mr. Stern to the media upon discovery of the theft. You should be aware that we have the trial transcripts where Mr. Shelly admitted under oath in the Florida proceedings that he entered the property and removed items from Ms. Smith's Bahamian home the day after her February 8, 2007 death for alleged "safekeeping" purposes. Also, there is an outstanding warrant for Mr. Shelly's arrest in the Bahamas in connection with the trespass and theft of items from the home and that Mr. Shelly's trespass onto the property violated a Bahamian injunction against him with respect to entry thereon.

      As we discussed, computer forensic evidence in connection with the death investigation of which I have personal knowledge has confirmed that the stolen personal computers and external hard drive were accessed between February 9, 2007 through February 13, 2007, when your client delivered the computers and certain other items to law enforcement in South Carolina. In addition, personal documents, video and photographs have been published in the mainstream media, including the

FOWLER WHITE BURNETT P.A.

Page 2

distressing publication of highly sensitive photographs of Ms. Smith's predeceased son, all of which could only have been accessed from items stolen from the home.

As we discussed, I urged you to immediately confer with your client and mitigate his civil and criminal exposure under these circumstances. To date, I have not received any response from you. I can assure you that Mr. Stern, in both his representative and individual capacity, shall pursue all available remedies to the fullest extent of the law. I would appreciate the courtesy of a return phone call on this matter at your earliest convenience.

Sincerely,

Lilly Ann Sanchez

FOWLER WHITE BURNETT P.A.

From: Howard K. Stern

Notice To The Media Regarding The Theft And Publication Of Stolen Property From
Anna Nicole's House

I cannot believe that in my grief stricken state that I find myself having to defend Anna
Nicole's honor. It is incomprehensible that the Tribune in the Bahamas and later
TMZ.com have published pictures that were stolen from Anna Nicole's house of Anna
Nicole with the Hon. Shane Gibson and made scurrilous accusations regarding their
relationship. However, I know in my heart that Anna Nicole would want me to set forth
the truth about our relationship with the entire Gibson family.

As a little background, less than 24 hours after Anna Nicole's death, persons purporting
to act on behalf of G. Ben Thompson, including his son-in-law Stancil (Ford) Shelly and
Tracy Ferguson of Callenders & Co., came onto the property and the locks to the house
were changed. As has been reported to the Royal Bahamas Police Force, some of these
people were also seen removing numerous items from the premises.

When I returned to the house a day later, I learned that ALL of Anna Nicole's personal
items had been stolen. These items included computers, external hard drives, mini dv
tapes, and dvd's---containing all of Anna Nicole's personal digital pictures and digital
home videos, many of which are extraordinarily personal in nature. All of Anna Nicole's
personal documents were also stolen, including confidential contracts, banking
information, attorney-client privileged documents, and our daughter Dannielynn's birth
certificate. Also stolen was a dvd of Anna Nicole's most recent movie "Illegal Aliens"
that has yet to be released in theatres. Even paintings hanging in the nursery that Anna
Nicole had painted for Dannielynn were stolen.

Upon my return, I also found pinned to a lamp next to our bed a piece of paper with the
names and phone numbers of Stancil (Ford) Shelly, his wife Gina, Gaither Ben
Thompson II, and his wife Melanie.

I am absolutely certain that the pictures published in the Tribune and on TMZ.com are
from an external hard drive that was stolen from Anna Nicole's house. I shot all of the
pictures myself with Anna Nicole's camera, some of which I then transferred directly
onto the hard drive that was stolen. However, I transferred some of the other pictures
first to my computer and then from my computer to the hard drive. Since my computer
was with me, and not in the house at the time of the break-in, I still have the proof.

It absolutely sickened both Anna Nicole and I when the lies came out months ago about
Minister Gibson supposedly coming over to the house to pick up a $10,000 check.
Minister Gibson never came to the house to pick up the check, and in any event, the
check was made out to the public treasury, not to him personally.

Ironically, we actually met Minister Gibson for the first time after Tracy Ferguson of
Callenders & Co. advised us to do so. We had never met any member of the Gibson

1

family prior to coming to the Bahamas. After our initial meeting, we shared a cordial, but not close, relationship with Minister Gibson prior to the death of Anna Nicole's son Daniel.

It was when Daniel passed away that we really came to know Minister Gibson, his wife Jackie, their wonderful children, his father King Eric, his mother Gerlene, and many of Minister Gibson's brothers and sisters. The entire Gibson family---not just Minister Gibson---provided a great deal of emotional support to both Anna Nicole and I during a very difficult period. They came to the house to pray with us on too many occasions to count. Jackie helped in designing the program for Daniel's funeral. King Eric took us boating and came over and cooked for us, and Gerlene came to the house to help us care for Dannielynn.

We never asked any member of the Gibson family to do anything illegal or in any way improper and none of them have ever done so.

I can honestly say that the Gibson family did all of these things out of the goodness of their hearts. They were genuinely concerned with the health and well-being of Anna Nicole, Dannielynn, and I---as many people in the Bahamas have been---and I will forever be grateful.

To suggest any intimate or improper relationship between Minister Gibson and Anna Nicole, particularly by publishing pictures that were stolen from Anna Nicole's house less than 24 hours after her death, is truly reprehensible.

Lawyers protecting Anna Nicole's interests are currently working with authorities in the Bahamas and the United States to prosecute all culpable individuals to the fullest extent of the law, to prevent the further dissemination of any illegally obtained material, and to secure the return of all of the stolen items.

I can assure you that we intend to hold any individual, firm or entity that uses, reproduces and/or otherwise disseminates any item of personal property of Anna Nicole and/or her estate liable to the fullest extent of the law.



POWELL
GOLDSTEIN LLP

Atlanta  •  Washington  •  Dallas

Resident in the Atlanta Office
L. LIN WOOD, ESQ.
Direct Dial No.:  (404) 572-6633
E-Mail Address:  llwood@pogolaw.com

April 13, 2007

**BY FACSIMILE (954-763-8292);**
**BY EMAIL     (wcampbell@krupnicklaw.com); and**
<u>**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**</u>

Walter G. "Skip" Campbell, Jr., Esq.
Krupnick Campbell Malone, et al.
700 SE Third Avenue, Suite 100
Fort Lauderdale, Florida  33316-1154

      Re:  **Anna Nicole Smith**

Dear Mr. Campbell:

      I am the attorney for Howard K. Stern in his capacity as the nominated Executor of the Estate of Anna Nicole Smith.  On behalf of Mr. Stern, I am writing you with respect to personal and private items taken without authorization from the Estate of Anna Nicole Smith.

      As you are aware, less than 24 hours after the tragic death of Ms. Smith, your client, Stancil [Ford] Shelley, and others without authorization removed from Ms. Smith's home personal and private items that passed to the Estate of Ms. Smith upon her death.  These items included paintings, legal and other documents pertaining to Ms. Smith and Dannielynn, and tens of thousands of images and videos stored on various computers, external hard drives, mini dv tapes, and dvd's.  These items unequivocally are the property of Ms. Smith's Estate.  As you are also aware, Mr. Shelley's actions in relation to these items are the subject of an ongoing investigation in the Bahamas.

      I understand that Mr. Shelley claims to have turned over to authorities all the items he took from Ms. Smith's home.  However, Mr. Stern has reviewed the inventory of the items in police custody and it does not include many items your client and his accomplices took without authorization from the house.  For example, the inventory does not include any of Ms. Smith's paintings nor does it include Ms. Smith's cell phone.  Furthermore, the inventory does not include many of the videos taken from the house.  In addition, as Lilly Ann Sanchez communicated to you in her letter dated March 30, 2007, forensic analyses of Ms. Smith's computers and external hard drives surrendered by Mr. Shelley indicate that files were copied and downloaded from Ms. Smith's computers and external hard drives between the time at which they were taken from the home by Mr. Shelley and his accomplices and the time at which Mr. Shelley surrendered the computers and external hard drives to the authorities.

Walter G. "Skip" Campbell, Jr., Esq.
April 13, 2007
Page 2 of 3

Personal and private images and videos contained solely on the items taken from Ms. Smith's home have been released to the media. For example, on Monday, February 19, 2007, a personal and private video of Ms. Smith was broadcast during *On the Record with Greta Van Susteren*. This video was among those images and videos contained on the external media devices your client took without authorization from Ms. Smith's home, and this video is the property of Ms. Smith's Estate.

In addition, Fox News Channel has broadcast during *On the Record with Greta Van Susteren* other personal and private items taken without authorization from Ms. Smith's home, including a photograph of Ms. Smith with Shane Gibson, messages on Ms. Smith's telephone, a video of Ms. Smith and Mr. Stern's commitment ceremony, and a video of Ms. Smith and Mr. Shelley. All of these items were stored on the devices your client took without authorization from Ms. Smith's home and are the property of Ms. Smith's Estate.

Ms. Smith's Estate intends to vigorously pursue the return of the personal and private items taken without authorization from Ms. Smith's home, will take whatever means necessary to secure the return of these items, and will to the fullest extent of the law hold to account those persons and entities that have profited through their reprehensible acts at the expense of Ms. Smith's Estate.

In order for your client to mitigate his damages, I am requesting that your client immediately take the following actions:

(i)     cease and desist from disseminating the personal and private items Mr. Shelley and his accomplices took without authorization from Ms. Smith's home;

(ii)    immediately return to Mr. Stern, by forwarding to me, all originals and all copies of personal and private items Mr. Shelley and his accomplices took without authorization from Ms. Smith's Estate;

(iii)   identify the persons or entities to which Mr. Shelley and his accomplices disseminated originals or copies of the personal and private items of Ms. Smith; and

(iv)    describe the nature of the transaction through which Mr. Shelley disseminated these items to Fox News Channel and/or any other persons or entities, including but not limited to, the amount of any fees or monies paid by Fox News Channel and/or any other persons or entities to obtain possession of, or the alleged right to use, these items.

You would be well-advised to instruct your client to act quickly. Based on comments Mr. Shelley made during *Geraldo at Large* about the number of persons who have copies of the images and videos stored on the external media devices your client took without authorization from Ms. Smith's home, your client's damages could escalate exponentially should he fail to act with the requisite urgency.

Walter G. "Skip" Campbell, Jr., Esq.
April 13, 2007
Page 3 of 3

Please advise me by the close of business on Monday, April 16, 2007, whether Mr. Shelley intends to comply with Mr. Stern's requests.

Sincerely,

L. Lin Wood

cc:    Howard K. Stern, Esq.
       Krista Barth, Esq.

1155563



PØWELL
GOLDSTEIN LLP

Atlanta  ■  Washington  ·  Dallas

Resident in the Atlanta Office
L. LIN WOOD, ESQ.
Direct Dial No.: (404) 572-6633
E-Mail Address:  llwood@pogolaw.com

May 17, 2007

BY FAX — (843-497-6124)
  and
FIRST CLASS MAIL

Mr. Thomas C. Brittain
Hearn, Brittain & Martin, P.A.
4614 Oleander Drive
Myrtle Beach, South Carolina  29577

　　　　　Re:　　Estate of Anna Nicole Smith

Dear Mr. Brittain:

　　　　　I am writing in response to your letter of April 24, 2007, regarding property of the Estate of the late Anna Nicole Smith (the "Estate").

　　　　　I understand that you and your firm are now representing Stancil [Ford] Shelly in connection with matters involving the Estate.

　　　　　As I pointed out in my earlier letter to Walter G. "Skip" Campbell on this matter, my firm represents Howard K. Stern, as nominated executor and now Special Administrator of the Estate.  Mr. Stern was appointed Special Administrator of the Estate by Order of the Superior Court of Los Angeles County dated May 14, 2007.  The Court has granted Mr. Stern those powers with respect to the Estate that are more fully set forth in the California Probate Code § 8544.  In addition, Mr. Stern has been granted the power to secure or store Ms. Smith's personal property.  A copy of the Court's Order is enclosed for your easy reference.

　　　　　The Estate has no intention of debating with you or your client at this time the circumstances under which your client came into possession of the personal property of Anna Nicole Smith, title to which is now held in the Estate.  The Estate remains convinced that the personal property taken by Mr. Ford and his associates was taken without authorization and in violation of specific orders from the Bahamian courts.  The Estate expressly reserves the right to bring any and all claims it may have arising out of your client's and his associates' activities at a later date.

　　　　　On behalf of the Estate, Mr. Stern demands that any and all personal property (including copies, if made) in the possession or control of your client be turned over immediately to this law firm no later than Monday, May 21, 2007.  Please call me or my Assistant, B. Lyle, so that we can make arrangements for the receipt of these materials.

Mr. Thomas C. Brittain
May 17, 2007
Page 2 of 2

      To the extent that your client, and those associated with him, elect to refuse the legitimate request of the Estate for the prompt and lawful return of its property, please rest assured that the Estate is fully prepared to immediately initiate litigation to secure its return.

      This letter should in no way be considered an offer of settlement or an offer to enter into settlement negotiations. It is a simple demand that your client and his associates return what they have unlawfully taken from the Estate. Your client and his associates have absolutely no legal basis upon which to refuse this demand. I would hope that your client and his associates would immediately comply with this demand and thereby attempt to mitigate the damage that he and those associated with him have already caused the Estate.

      I do not intend to itemize the personal property to be returned beyond the description in my earlier letter to Mr. Campbell. Your client is well aware of each and every item that was taken and he is to return each and every item that was taken by May 21.

      Please let me hear from you at your first convenience.

Sincerely,

L. Lin Wood

LLW/b
Enclosure
cc:    Howard K. Stern, Esq.
       M. Krista Barth, Esq.

1169628

DE-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:<br>Bruce S. Ross, SBN 51468<br>John T. Rogers, Jr., SBN 101280<br>Luce, Forward, Hamilton & Scripps LLP<br>601 S. Figueroa St. Suite 3900, Los Angeles, CA 90017 | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR *(Name)*: Petitioner Howard K. Stern

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS: 111 N. Hill St.

MAILING ADDRESS: 111 N. Hill St.

CITY AND ZIP CODE: Los Angeles 90012

BRANCH NAME: Central

**ORIGINAL FILED**

**MAY 1 1 2007**

**LOS ANGELES SUPERIOR COURT**

ESTATE OF *(Name)*: Vickie Lynn Marshall, aka Vickie Lynn Smith, aka Vickie Lynn Hogan, aka Anna Nicole Smith

DECEDENT

| ORDER FOR PROBATE | CASE NUMBER: |
|---|---|
| ORDER APPOINTING ☐ Executor<br>☐ Administrator with Will Annexed<br>☐ Administrator ☒ Special Administrator<br>☐ Order Authorizing Independent Administration of Estate<br>☐ with full authority ☐ with limited authority | BP104575 |

## WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.

1. Date of hearing: May 10, 2007    Time: 8:30 a.m.    Dept./Room: 258    Judge:

**THE COURT FINDS**

2. a. All notices required by law have been given.
   b. Decedent died on *(date)*: 02/08/07
      (1) ☐ a resident of the California county named above.
      (2) ☒ a nonresident of California and left an estate in the county named above.
   c. Decedent died
      (1) ☐ intestate
      (2) ☒ testate
      and decedent's will dated: July 30, 2001    and each codicil dated:
      was admitted to probate by Minute Order on *(date)*:

**THE COURT ORDERS**

3. *(Name)*: Howard K. Stern
   is appointed personal representative:
   a. ☐ executor of the decedent's will          d. ☒ special administrator
   b. ☐ administrator with will annexed             (1) ☐ with general powers
   c. ☐ administrator                               (2) ☒ with special powers as specified in Attachment 3d(2)
                                                     (3) ☐ without notice of hearing
                                                     (4) ☒ letters will expire on *(date)*: 6-1-07
   and letters shall issue on qualification.

4. a. ☐ Full authority is granted to administer the estate under the Independent Administration of Estates Act.
   b. ☐ Limited authority is granted to administer the estate under the Independent Administration of Estates Act (there is no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

5. a. ☐ Bond is not required.
   b. ☒ Bond is fixed at: $ $10,000.00    to be furnished by an authorized surety company or as otherwise provided by law.
   c. ☐ Deposits of: $    are ordered to be placed in a blocked account at *(specify institution and location)*:
      and receipts shall be filed. No withdrawals shall be made without a court order. ☐ Additional orders in Attachment 5c.
   d. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

6. ☐ *(Name)*:    is appointed probate referee.

Date:

7. Number of pages attached: 1

☒ SIGNATURE FOLLOWS LAST ATTACHMENT

JUDGE OF THE SUPERIOR COURT

Form Approved by the<br>Judicial Council of California<br>E-140 [Rev. January 1, 1998]<br>Mandatory Form [1/1/2000]

ORDER FOR PROBATE

Probate Code, §§ 8006, 8400

American LegalNet, Inc.
www.USCourtForms.com

Estate of Vickie Lynn Marshall,
 aka Vickie Lynn Smith,
 aka Vickie Lynn Hogan,
 aka Anna Nicole Smith
Order Appointing Special Administrator

Attachment 3d(2)

The Special Administrator of the Estate is granted the following powers in addition to the powers of a special administrator as described in Probate Code § 8544:

The power to pay the REGULAR + RECURRING expenses of maintaining the Decedent's house, including without limitation, the mortgage, principal and interest, utilities, gardener, and pool person.

The power to secure, OR store, ~~or otherwise dispose~~ of the Decedent's personal property.

The power to participate in, commence, maintain, and defend litigation involving the Decedent, including but not limited to the *Marshall v. Marshall* case.

IT IS SO ORDERED.

Dated: MAY 1 4 2007

MITCHELL L. BECKLOFF

_____
Judge of the Superior Court
of the State of California

214048 1

Order Appointing Special Administrator



POWELL
GOLDSTEIN LLP

Atlanta  •  Washington  •  Dallas

Resident in the Atlanta Office
L. LIN WOOD, ESQ.
Direct Dial No.: (404) 572-6633
E-Mail Address: llwood@pogolaw.com

May 31, 2007

**BY FAX – (843-497-6124)**
**and**
**FIRST CLASS MAIL**

Thomas C. Brittain, Esq.
Hearn, Brittain & Martin, P.A.
4614 Oleander Drive
Myrtle Beach, South Carolina  29577

Re:    Estate of Anna Nicole Smith

Dear Mr. Brittain:

I am writing in response to your letter of May 23, 2007, regarding property of the Estate of the late Anna Nicole Smith (the "Estate").

Your most recent letter indicates that you are not representing Stancil [Ford] Shelly in connection with matters involving the Estate, but your prior letter plainly implied that you are or were representing him. If you are not representing him in connection with the items taken without authorization from the Estate, please immediately forward this letter to Mr. Shelly and/or to the lawyer who is representing him in connection with this matter. Also, if you know the identity of his counsel, I would appreciate it if you would share that information with me.

Contrary to the statements in your May 23 letter, Mr. Shelly has not returned all of the items in his possession belonging to the Estate, and he was not authorized to return those items to anyone other than my law firm. In my correspondence to you dated May 17, I specifically instructed that all Estate items in Mr. Shelly's possession be delivered to my office no later than May 21, 2007. Mr. Shelly, however, unilaterally decided to deliver a small portion of the Estate items in his possession to Larry Birkhead in Kentucky. Mr. Birkhead also notified your client that the items should be returned to Mr. Stern's attorneys here in Atlanta. Mr. Birkhead has no standing to act on behalf of the Estate.

Mr. Birkhead has documented the items that Mr. Shelly left with him, which include eight paintings/drawings by Ms. Smith, a photo of Ms. Smith, a photo album containing ultrasounds of Dannielynn, two mini dv tapes, and three pairs of sunglasses. At least one of the mini dv tapes appears to be a copy and not the original.

There are numerous items that were taken from the Estate without authorization that are still in Mr. Shelly's possession. In fact, it is my understanding that Mr. Shelly admitted to Mr. Birkhead that he has additional Estate items in his possession. I do not intend to provide a complete list of those items because Mr. Shelly knows full well what they are, but they include,

Mr. Thomas C. Brittain
May 31, 2007
Page 2 of 2

among others, various items that were released or sold to the media, such as certain videos of Ms. Smith and a cell phone.

As Special Administrator of the Estate, Mr. Stern's most immediate concern is the safe recovery of all of the items that were taken without authorization from the Estate. Therefore, I am providing Mr. Shelly with one final opportunity to attempt to mitigate his damages by returning all property in his possession, custody or control that was taken from the Estate without authorization. That includes all copies of any of those items. Those items must be returned to my office on or before Tuesday, June 5. Though it should be unnecessary, I must emphasize that my office is the only place authorized by the Estate to accept the return of Estate property. Please call me or my Assistant, B. Lyle, so that we can make arrangements for the receipt of these materials.

Mr. Shelly must also provide a list of any items that were copied and distributed to third parties so that the Estate can pursue the return of all such copies. If there are any Estate items that are no longer in Mr. Shelly's possession, he must provide a list of those items and their current location so that the Estate can pursue their safe return. I also need a list of any individuals or entities who Mr. Shelly knows or believes received Estate property.

This letter should in no way be considered an offer of settlement or an offer to enter into settlement negotiations. As I pointed out to you in my previous correspondence, Mr. Shelly and his associates have absolutely no legal basis upon which to refuse this demand by the Estate for the return of its property. Absent complete compliance with this demand, Mr. Stern will have no choice but to immediately pursue all available legal remedies against your client.

Sincerely,

L. Lin Wood

LLW/b
cc:     Howard K. Stern, Esq.
        M. Krista Barth, Esq.

1174036



Atlanta  •  Washington

Resident in the Atlanta Office
L. LIN WOOD, ESQ.
Direct Dial No.: (404) 572-6633
E-Mail Address: llwood@pogolaw.com

June 21, 2007

**BY FAX – (843-497-6124)**
**and**
**FIRST CLASS MAIL**

Thomas C. Brittain, Esq.
Hearn, Brittain & Martin, P.A.
4614 Oleander Drive
Myrtle Beach, South Carolina  29577

      Re:    Estate of Anna Nicole Smith

Dear Mr. Brittain:

      I am writing in response to your letter of June 15, 2007, regarding property of the Estate of the late Anna Nicole Smith (the "Estate").

      I am currently on vacation and will be returning to the office on July 2. I would like to schedule the meeting with Mr. Shelley and his counsel as soon as possible after my return, and we would like to have a court reporter present so that our discussions with Mr. Shelley can be transcribed.  Please let me know if Mr. Shelley can be available here in my office on July 4, 5, 6, 11, or 12.  I expect that Mr. Shelley will bring with him to this meeting all remaining Estate items in his possession, custody or control.

      I trust you understand the fiduciary responsibility of my client to take and document all efforts to marshal all estate assets.

      I look forward to hearing from you.

                      Sincerely,

                      L. Lin Wood

LLW/b
cc:    Howard K. Stern, Esq.
      M. Krista Barth, Esq.
1181700

One Atlantic Center  •  Fourteenth Floor  •  1201 West Peachtree Street, NW  •  Atlanta, GA 30309-3488
Tel: 404.572.6600  •  Fax: 404.572.6999
www.pogolaw.com



POWELL
GOLDSTEIN LLP

Atlanta  •  Washington  •  Dallas

Resident in the Atlanta Office
L. LIN WOOD, ESQ.
Direct Dial No.: (404) 572-6633
E-Mail Address: llwood@pogolaw.com

July 25, 2007

**BY FAX**    **(843) 497-6124**

Thomas C. Brittain, Esq.
Hearn, Brittain & Martin, P.A.
4614 Oleander Drive
Myrtle Beach, South Carolina  29577

     Re:   Estate of Anna Nicole Smith

Dear Mr. Brittain:

     I am writing to follow up regarding the property of the Estate of the late Anna Nicole Smith (the "Estate") that is currently in the possession of your client, Ford Shelley.

     The last communication I received from you on this topic was your note dated June 22, 2007, to the effect that Mr. Shelley wanted our meeting to take place in Myrtle Beach. Although my partner, Nicole Wade, has left you numerous phone messages attempting to schedule this meeting, you have not returned any of her calls.

     We would prefer to move forward with a meeting with Mr. Shelley, but the Estate cannot tolerate further delay. If I do not hear back immediately from you with dates in the very near future upon which we can conduct a transcribed interview of Mr. Shelley and obtain from Mr. Shelley all remaining Estate items in his possession, custody or control, we will proceed with litigation against Mr. Shelley.

     I look forward to hearing from you.

Sincerely,

L. Lin Wood

LLW/b
cc:   Nicole Jennings Wade, Esq.
1192574

One Atlantic Center • Fourteenth Floor • 1201 West Peachtree Street, NW • Atlanta, GA 30309 3488
Tel: 404.572.6600 • Fax: 404.572.6999
www.pogolaw.com



POWELL
GOLDSTEIN LLP

Atlanta  •  Washington  •  Dallas

Resident in the Atlanta Office
L. LIN WOOD, ESQ.
Direct Dial No.: (404) 572-6633
E-Mail Address: llwood@pogolaw.com

October 30, 2007

**BY FAX**      **(770) 631-3548**

Susan M. Brown
The Law Office of Susan M. Brown, P.C.
525 Clubhouse Drive
Suite 120
Peachtree City, GA  30269

    Re:    *Estate of Anna Nicole Smith*

Dear Susan:

    I want to confirm the request I made to you during our telephone conversation on Friday, October 26, on behalf of the Estate of Anna Nicole Smith, for which my client Howard K. Stern is the Executor. I requested that your clients Ford Shelley and Ben Thompson return all property – including original property and copies – that previously belonged to Ms. Smith and that now belongs to her Estate. That property should be returned to my office, as counsel for the Executor of the Estate. This request is being made only on behalf of the Estate, and I have not requested that you provide me with any property relating to Mr. Stern in his individual capacity.

                        Sincerely,

                        L. Lin Wood

LLW/b
cc:    Howard K. Stern, Esq.

1225333



POWELL
GOLDSTEIN LLP

Atlanta   •   Washington   •   Dallas

RESIDENT IN ATLANTA OFFICE
DIRECT DIAL: (404) 572-6857
NWADE@POGOLAW.COM

November 29, 2007

_Via Facsimile: (770) 631-3548_

Susan M. Brown
The Law Office of Susan M. Brown, P.C.
525 Clubhouse Drive
Suite 120
Peachtree City, GA  30269

      Re:    _Estate of Anna Nicole Smith_

Dear Susan:

      This letter will confirm our recent discussions in which you have advised me that you are in possession of two hard drives that you obtained from Ford Shelley, which contain copies of hard drives from computers belonging to Anna Nicole Smith.  You have recognized that the information on those hard drives belongs to the Smith Estate and have indicated that you plan to return them to us.

      It is my understanding that the only delay is that a few personal files of Ford Shelley are apparently also on one or both of these hard drives.  As I indicated in my voicemails to you earlier this week, our IT department has indicated that they can remove Mr. Shelley's personal files from the hard drives when you bring the hard drives to us.

      Please let me know when you can meet with me to return the hard drives. We would like to accomplish this as soon as possible.

                  Very truly yours,

                  Nicole Jennings Wade

NJW/dsc
cc:    L. Lin Wood, Esq.
::ODMA\PCDOCS\ATL\1234959\1

# **AMENDED COMPLAINT**

# **EXHIBIT H**

From:
Sent:            Wednesday, May 23, 2007 8:18 AM
To:              Ford Shelley
Subject:         Re: Fwd:

Ford,

You don't need to write and tell me what I said or what you claim I said.  My
reason for writing you was that I have a responsibility to the estate to return
anything that was given to me. For both of our protection, since I do not have
the authority to receive items I felt it was necessary to correspond with those
responsible for making sure that all items are returned to the estate, in this
case it is Howard.  I am sure that is the same reason that you took pictures of
the items you returned. So that you and I do not get into an argument about this
and other matters it is probably best that you turn over the things you said you
would give me later that you still have to Howard through the attorneys you both
have retained.  That way I can focus on being a dad and regaining my health.  I
am glad everyone got to see the baby and hope that we can talk about things in
the future other than legal matters, as you know I asked you to come see the baby
long before you ever mentioned bringing those items to me and I also told you to
come see the baby even without bringing those items. The items you returned were
not a condition of you and your family coming here to see me and Dannielynn.


Sent from my BlackBerry® wireless device

-----Original Message-----
From:
Date: Wed, 23 May 2007 06:46:57
To:
Subject: Re: Fwd:

I forgot to say that u did send me an instant message around 8 or so the nite
before we came and told me what howard stated. You then asked me to call u and I
did. U told me to bring it if I wanted to that u just wanted us to come up. We
love you all and hope this will be resolved soon. We have faith that u will do
what u said and it will be done.    Love to all
Sent via BlackBerry from SunCom Wireless

-----Original Message-----
From:
Date: Wed, 23 May 2007 00:01:58
To:                          ,
Subject: Fwd:

Ford,

  I am sending you as well as Howard, an attachment (including photographs) of the
complete list of items that you delivered to me today in Louisville, Kentucky.
Even though I informed you that the items should be returned through the
attorneys (from yours to the estate) because of the pending litigation, I will
forward the items you delivered so that they can be marked off of the list of
outstanding items still missing that belong to the estate.

  Thanks,

                                                    REDACTED
                        1

# **AMENDED COMPLAINT**

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| HOWARD K. STERN, as Executor of the Estate of Vickie Lynn Marshall, a/k/a Vickie Lynn Smith, a/k/a Vickie Lynn Hogan, a/k/a Anna Nicole Smith, | CIVIL ACTION NO. 3:09-CV-00082-JTC-RGV |
| Plaintiff | |
| v. | Civil Action No.: 4:08-CV-2753-TLW (Pending in the United States District Court for the District of South Carolina, Florence Division) |
| STANCIL SHELLEY, a/k/a Ford Shelley, G. BEN THOMPSON, and John or Jane Doe 1-12 whose true names are unknown, | |
| Defendants. | |

<u>ORDER</u>

In a motion pending before this Court, non-party Susan M. Brown ("Brown") objects to and seeks to quash a subpoena requiring her to appear for a deposition and to produce documents issued by plaintiff Howard K. Stern, as Executor of the Estate of Vickie Lynn Marshall (the "Executor").[1]  [Doc. 1].  The Executor, who initiated the suit in which this subpoena was issued, seeks to compel Brown's

---

[1] As indicated in the caption of this case, Vickie Lynn Marshall was also known as Anna Nicole Smith, and the Court will refer to her by the latter name since it is the name referenced in the subpoena and used by the Executor.

compliance with the subpoena. [Doc. 4]. For the reasons stated herein, the Court **DENIES** Brown's motion to quash the subpoena, [Doc. 1], **GRANTS** in part the Executor's motion to compel, [Doc. 4], and **MODIFIES** the subpoena to limit the scope of production and testimony consistent with this Order.[2]

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Executor has filed an action in the United States District Court for the District of South Carolina, Florence Division, alleging that certain actions were taken by Stancil "Ford" Shelley ("Shelley"), G. Ben Thompson ("Thompson"), and other accomplices with respect to personal property of Anna Nicole Smith ("Smith") that passed to Smith's Estate upon her death on February 8, 2007.[3] [Doc. 2-2 at 2-39].[4] At the time of her death, Smith lived in the Bahamas in a house known as Horizons,

---

[2] The Executor has also filed a request for oral argument on Brown's motion to quash and his motion to compel. [Doc. 3]. However, the undersigned has reviewed the pleadings in this case and finds that oral argument on either motion is unnecessary. See Butts v. Tyco Healthcare Group LP, Civil Action No. 1:06-CV-1377-RLV, 2007 WL 1545232, at *4 (N.D. Ga. May 24, 2007) (denying request for oral argument on motion to compel as unnecessary). Accordingly, the Executor's request for oral argument, [Doc. 3], is hereby **DENIED**.

[3] The facts are taken from the pleadings and supporting exhibits, including the complaint in the underlying action, and do not constitute findings of fact by the Court.

[4] Smith's daughter, Dannielynn Hope Marshall Birkhead, is the sole heir to Smith's Estate. [Doc. 2-3 (Stern Decl.) ¶ 3].

2

and was involved in a dispute with Shelley and Thompson over ownership of Horizons. [Doc. 2-2 at 6 ¶¶ 18-19].

On February 9, 2007, the day following Smith's death, Shelley and others allegedly entered Horizons without authorization and in violation of an injunction entered by a Bahamian court, which prohibited Shelley from entering the property. [Id. at 7 ¶ 28; Doc. 2-2 at 69-71]. After entering Horizons, Shelley and his accomplices, without authorization from Smith's Estate, allegedly removed numerous of Smith's personal and private items of commercial and other intangible proprietary value that had passed to Smith's Estate upon her death. [Doc. 2-2 at 8-9 ¶¶ 32, 34-35]. Among the items allegedly removed by Shelley were two computers and one external hard drive all of which contained Smith's personal files and images. [Id. at 9 ¶ 35]. After learning of the removal of these items, the Executor filed a police report with the Bahamian authorities. [Doc. 2-3 ¶ 7]. Additionally, the Executor issued a press release regarding the theft of these items from Horizons, which was published by Fox News. [Doc. 2-4 at 2-4]. Nonetheless, Shelley allegedly provided the items he removed from Horizons to various media outlets, and within days after Smith's death, these items, including various videos and images, began appearing in the media. [Doc. 2-2 at 11-13 ¶¶ 46, 53-60, 62].

The Executor demanded return of the items taken by Shelley and his accomplices. [Id. at 16 ¶ 76]. On or about February 12, 2007, Shelley surrendered the two computers and the external hard drive, among other items, to authorities in South Carolina. [Id. at 16 ¶ 77]. Subsequently, forensic analysis of the computers and the external hard drive revealed that between February 9 and February 12, 2007, all of the files on the computers and the external hard drive were copied onto other external hard drives and DVDs. [Id. at 16 ¶ 78]. The Executor continued to make numerous demands upon Shelley for the return of the items, including written demands on March 30, April 13, May 17, May 31, June 21, July 25, October 30, and November 29, 2007. [Id. at 17 ¶ 81; Doc. 2-2 at 73-74, 77-81, 84-89]. Beginning in October 2007, the Executor directed his demands for the return of property to Brown, who represented that she was acting as counsel for both Shelley and Thompson,[5] and that she had in her possession the two USB hard drives onto which Shelley had copied the files from the Estate computers and external hard drive. [Doc. 2-2 at 88-89].

After Brown failed to return the hard drives despite repeated promises to do so, the Executor filed a motion for a temporary restraining order in the underlying

---

[5] During the course of the underlying litigation, Brown also acted as counsel for Melanie Thompson and Gaither B. Thompson, two of the John/Jane Doe defendants named by the Executor in the underlying complaint. [Doc. 1-2 at 1-2].

4

litigation to enjoin Shelley and Thompson from disposing of or disseminating any property belonging to the Estate. [Doc. 2-7 at 2-5; see also Doc. 12-17 at 2]. Thereafter, on January 16, 2009, an order was entered in the underlying litigation, requiring Brown to return the two hard drives in her possession, and on January 21, 2009, a courier retrieved the two USB drives from Brown's office. [Doc. 2 at 6; Doc. 2-10 at 3-4 ¶ 2]. The retrieved drives had three separate stickers on them that stated, "BKD, LLP Forensics & Dispute Consulting Digital Evidence Laboratory," "Clark Arthur 14985," and "001" and "002," respectively. [Doc. 2-11 at 2]. The "Clark Arthur" sticker refers to Don Clark, an in-house investigator for the O'Quinn Law Firm, which represents Virgie Arthur ("Arthur"), Smith's biological mother. [Doc. 2 at 6-7]. According to the Executor, these stickers indicate that the O'Quinn Law Firm provided the USB drives to BKD, a computer forensics company, and had services performed on the drives. [Id. at 7].

Brown admits that she provided the two USB drives to the O'Quinn Law Firm based on a Common Interest Agreement between Shelley, Thompson, and Arthur. However, Shelley and Thompson testified that Brown was not authorized by them to provide the drives to the O'Quinn Law Firm. [Doc. 2-12 (Shelley Dep. Vol. I) at 11-12, pp. 164-65; Doc. 2-13 (Thompson Dep.) at 4, pp. 151-52].[6] Similarly, both

---

[6] The Executor filed deposition excerpts as exhibits attached to his response to Brown's motion to quash. For the sake of consistency, when the Court is citing

Shelley and Thompson testified that they did not enter into a joint defense or Common Interest Agreement with Arthur. [Doc. 2-12 at 12, p. 165; Doc. 2-13 at 5, p. 154].

The Executor also claims that Brown was present during conversations her clients had with third parties regarding the underlying litigation and transfer of Estate property. [Doc. 2 at 9]. Specifically, the Executor points to the fact that Brown was present for interviews Shelley, Thompson, Gina Shelley, Gaither Thompson, and Melanie Thompson had with Special Agent Danny Santiago of the California Department of Justice. [Id. at 9-10; Doc. 2-12 at 3-4, pp. 72-74; Doc. 2-15 (Gaither B. Thompson, II Dep.) at 3-4, pp. 36-38]. He also points to Brown's discussions with her clients in the presence of the O'Quinn Law Firm, conversations her clients had with members of the media in her presence, the fact that Brown has personal knowledge of the transfer of Estate property to the O'Quinn Law Firm, and her clients' testimony during their depositions regarding the substance of their communications with her. [Doc. 2 at 10-12; Doc. 2-12 at 5-7, 9, pp. 91-94, 141-42, 152; Doc. 2-13 at 3, p. 103; Doc. 2-15 at 5, pp. 75-76; Doc. 2-16 (Shelley Dep. Vol. II) at 3-4, pp. 35-37].

------

to those excerpts, the listed page numbers refer to the page numbers shown on the Adobe file reader linked to this Court's electronic filing database (CM/ECF), as well as to the deposition page numbers.

After the Executor discovered Brown's personal knowledge of and involvement in the distribution of the stolen Estate property, the Executor issued nearly identical subpoenas in the underlying action to Brown and her law firm dated June 18, 2009,[7] requiring Brown to appear for a deposition on June 30, 2009, and to produce documents as follows:

1. All communications between you or The Law Offices of Susan M. Brown, P.C. and any of the following individuals, the same of which refer or relate in any way to (i) the above-referenced lawsuit or any potential claims by the Estate of Anna Nicole Smith against anyone; (ii) any potential claims against the Estate of Anna Nicole Smith; (iii) Howard K. Stern; (iv) any of the items which were removed from the residence in the Bahamas known as "Horizons" after the death of Anna Nicole Smith and which are the subject of the above-referenced litigation (the "Property"); (v) the circumstances surrounding the removal of the Property from Horizons; or (vi) the transfer or dissemination of any of the Property to anyone or the broadcast or display of the Property by anyone:

   a. Callenders & Co. or anyone purporting to represent Callenders & Co., including but not limited to Tracy Ferguson or Michael Scott;

   b. Rita Cosby or anyone purporting to represent Rita Cosby;

   c. Any member of the media; or

   d. Any member of law enforcement, including but not limited to, the Royal Bahamian Police, Horry

---

[7] Brown's motion only addresses the subpoena issued directly to her and not the subpoena issued to her law firm.

County Sheriff's Department, California
Department of Justice, Drug Enforcement Agency,
Federal Bureau of Investigation, Seminole Police
Department, Broward County Sheriff's Department,
or Florida State Attorney's Office.

2.     All communications between you or The Law Offices of Susan
M. Brown, P.C. and any of the following individuals, the same
of which refer or relate in any way to (i) the above-referenced
lawsuit or any potential claims by the Estate of Anna Nicole
Smith against anyone; (ii) any potential claims against the Estate
of Anna Nicole Smith; (iii) Howard K. Stern; (iv) any of the
Property; (v) the circumstances surrounding the removal of the
Property from Horizons; or (vi) the transfer or dissemination of
any of the Property to anyone or the broadcast or display of the
Property to anyone:

a.     Virgie Arthur or anyone purporting to represent
Virgie Arthur;

b.     Don Clark or anyone purporting to represent Don
Clark;

c.     Wilma Vicedomine or anyone purporting to
represent Wilma Vicedomine;

d.     The O'Quinn Law Firm or anyone purporting to
represent The O'Quinn Law Firm, including but not
limited to John M. O'Quinn or Neil C. McCabe;

e.     Tom Pirtle or anyone purporting to represent Tom
Pirtle;

f.     Stephen Tunstall or anyone purporting to represent
Stephen Tunstall; or

g.     Debra Opri or anyone purporting to represent
Debra Opri.

3.  All communications between you or The Law Offices of Susan M. Brown, P.C. and any of the following individuals, the same of which refer or relate in any way to the transfer or dissemination of any of the Property to anyone or the broadcast or display of the Property by anyone:

    a.  Stancil "Ford" Shelley or anyone purporting to represent Stancil Shelley;

    b.  G. Ben Thompson or anyone purporting to represent G. Ben Thompson;

    c.  Gaither Thompson or anyone purporting to represent Gaither Thompson;

    d.  Melanie Thompson or anyone purporting to represent Melanie Thompson;

    e.  Gina Shelley or anyone purporting to represent Gina Shelley; or

    f.  Internal communications within The Law Offices of Susan M. Brown, P.C.

4.  All documents, including handwritten or typed notes, which refer or relate in any way to the transfer or dissemination of any of the Property to anyone or the broadcast or display of any of the Property by anyone.

5.  That portion of all bills or invoices for services rendered by you or The Law Offices of Susan M. Brown, P.C. to Stancil "Ford" Shelley, G. Ben Thompson, Gaither Thompson, Melanie Thompson, or Gina Shelley which refer or relate in any way to the transfer or dissemination of any of the Property to anyone or the broadcast or display of any of the Property by anyone.

6.    All receipts or invoices in your possession or the possession of The Law Offices of Susan M. Brown, P.C. (whether paid by you or not) from any third party for any service relating in any way to the Property, including but specifically not limited to storage, courier or delivery, forensic examinations, copying, reproduction or duplication.

7.    All engagement letters or contracts for services between you or The Law Offices of Susan M. Brown, P.C. and Stancil "Ford" Shelley, G. Ben Thompson, Gaither Thompson, Melanie Thompson, or Gina Shelley.

8.    All documents concerning the transfer of the Property or any copies, reproductions, or duplicates of the Property to you or The Law Offices of Susan M. Brown, P.C.

9.    All joint defense or common interest agreements purportedly entered into on behalf of Stancil "Ford" Shelley, G. Ben Thompson, Gaither Thompson, Melanie Thompson, or Gina Shelley, the same of which concern (i) the above-referenced lawsuit or any potential claims by the Estate of Anna Nicole Smith against anyone; (ii) any potential claims against the Estate of Anna Nicole Smith; (iii) Howard K. Stern; (iv) any of the Property; (v) the circumstances surrounding the removal of the Property from Horizons; or (vi) the transfer or dissemination of any of the Property to anyone or the broadcast or display of the Property to anyone.

10.    All documents concerning the California Department of Justice or any agent thereof, including but not limited to all documents reflecting telephone calls (specifically including telephone records or message slips showing calls), emails, or other communications with:

      a.     The California Department of Justice or any agent thereof;

      b.     Don Clark;

      c.     Wilma Vicedomine;

      d.     The O'Quinn Law Firm or anyone purporting to represent The O'Quinn Law Firm, including but not limited to John M. O'Quinn or Neil C. McCabe.

11.     All documents referring, reflecting or evidencing any item of value given to you or The Law Offices of Susan M. Brown, P.C. from Don Clark, Wilma Videdomine [sic], or The O'Quinn Law Firm or anyone purporting to represent the O'Quinn Law Firm, including but not limited to John M. O'Quinn or Neil C. McCabe, including but not limited to cash compensation, in kind compensation, reimbursement of any service performed, or gifts.

12.     All contracts, agreements, or other documents entered into between you or The Law Offices of Susan M. Brown, P.C. and Don Clark, Wilma Vicedomine, or The O'Quinn Law Firm or anyone purporting to represent the O'Quinn Law Firm, including but not limited to John M. O'Quinn or Neil C. McCabe.

[Doc. 2-5 at 2-11; Doc. 2-6 at 2-11]. Brown objects to the subpoena served on her and asks that it be quashed. [Doc. 1]. The Executor has responded, [Doc. 2], and filed a motion to compel compliance with the subpoena, [Doc. 4], and these motions are now ripe for ruling.

11

## II. DISCUSSION

Brown objects to the subpoena served on her, asserting that it provides inadequate time to respond, seeks documents and information protected from disclosure by the attorney-client privilege and the work product doctrine, and imposes an undue burden on her as an individual. [Doc. 1-2 at 2-6]. On these grounds, she asks that the subpoena be quashed. [Doc. 1]. In response, the Executor only addresses Brown's privilege arguments, asserting that her reasonable time and undue burden arguments are moot because several weeks have passed since the original date of compliance, [Doc. 2 at 13], and seeks to compel compliance with the subpoena, [Doc. 4].[8] Additionally, the Executor requests reasonable attorney's fees for defending Brown's motion to quash and for filing his motion to compel compliance with the subpoena. [Doc. 2 at 24]. The Court will address the merits of the pending motions with regard to these arguments.

### A.    Attorney-Client Privilege and Work Product

Rule 45(c)(3) provides that an "issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). Brown asserts that because she is an attorney of record in the underlying case for Thompson, Gaither

---

[8] Brown did not file a reply in support of her motion to quash, or a response to the Executor's motion to compel compliance with the subpoena.

12

B. Thompson, and Melanie Thompson, a former attorney of record for Shelley, and not a witness, the information and documents sought to be discovered are protected from disclosure by the attorney-client privilege and work product doctrine. [Doc. 1-2 at 4-5].

"The attorney-client privilege is one of the oldest privileges recognized in common law." In re Certified HR Servs. Co., Bankruptcy No. 05-22912-BKC-RBR et al., 2008 WL 2783157, at *3 (Bkrtcy. S. D. Fla. July 16, 2008) (citing Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)). However, "[t]he privilege is not absolute and there are certain communications which fall outside of its protective embrace." Id. In order for Brown to invoke the attorney-client privilege, she must establish:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or [her] subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by [her] client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Carnes v. Crete Carrier Corp., 244 F.R.D. 694, 696-97 (N.D. Ga. 2007) (quoting United States v. Noriega, 917 F.2d 1543, 1550 (11th Cir. 1990)). Additionally, "a party asserting work product protection must show that the materials withheld are: 1) documents and tangible things; 2) prepared in anticipation of litigation or for trial;

and, 3) the documents or tangible things were prepared by or for the party or the attorney asserting the privilege." Id. at 698 (internal marks and citation omitted). "Work product must be specifically raised and demonstrated rather than asserted in a blanket fashion." Id. (internal marks and citation omitted). Furthermore, "[t]he party asserting the attorney-client privilege or the work product doctrine bears the burden to provide a factual basis for its assertions," which "is met when the party produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel." Id. (internal marks and citation omitted).[9]

The Executor contends that Brown has failed to satisfy her burden that the attorney-client privilege applies to the information and documents sought, and seeks to depose Brown regarding her personal knowledge concerning the transfer of Estate property to the O'Quinn Law Firm and her communications with third parties and her clients regarding the stolen Estate property, asserting that Brown is

---

[9] Brown refers to the attorney-client privilege in a conclusory fashion and discusses the work product doctrine in two sentences consisting of boilerplate language. [Doc. 1-2 at 4-5]. "A party cannot carry its burden of establishing the applicability of the privilege by simply asserting that the privilege applies." Waldemar E. Albers Revocable Trust v. Mid-Am. Energy, Inc., Miscellaneous Action No. 7:08-MC-2-HL, 2008 WL 4539379, at *1 (M.D. Ga. Oct. 3, 2008). Nevertheless, because the Executor discusses the application of the attorney-client privilege, the undersigned will address the merits of the arguments with regard to that privilege and its application to the information and documents requested in this case.

not just an attorney but a witness, is the person with the best information surrounding these matters, that her communications with third parties are not privileged, that any privilege that would apply has been waived by her clients through their deposition testimony, and that the crime-fraud exception applies. [Doc. 2 at 15-23]. In addition, the Executor seeks documents responsive to requests numbered 1 through 4, and 8 through 12 in relation to the removal and dissemination of the Estate property at issue. [Doc. 2-5 at 7-11]. The Court will address these arguments in connection with the specific numbered requests in the subpoena.

    1.    *Deposition of Brown and Document Requests 1, 2, 4, and 8 through 12*

"The Federal Rules of Civil Procedure do not prohibit the deposition of an attorney for a party." Ed Tobergte Assocs. Co. v. Russell Brands, LLC, Civil Action No. 08-2290-JWL-GLR, 2009 WL 2406257, at *2 (D. Kan. Aug. 3, 2009) (footnote omitted). "Pure facts are not subject to attorney-client privilege or work product protection." Carnes, 244 F.R.D. at 699 (citing Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981)). Indeed, while the attorney-client privilege "'protects disclosure of communications,' the privilege 'does not protect disclosure of the underlying facts by those who communicated with the attorney.'" Hope for Families & Cmty. Serv.,

Inc. v. Warren, No. 3:06-CV-1113-WKW, 2009 WL 174970, at *26 (M.D. Ala. Jan. 26, 2009) (quoting Upjohn, 449 U.S. at 395) (footnote omitted).

In addition, "'[t]he attorney-client privilege 'belongs solely to the client,' and the client may waive it, either expressly or by implication.'" Carpenter v. Mohawk Indus., Inc., Civil Action File No. 4:07-CV-0049-HLM, 2007 WL 5971741, at *10 (N.D. Ga. Oct. 1, 2007) (quoting Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994) (internal marks and citation omitted)). "Once a party waives the attorney-client privilege as to a communication, the waiver generally extends to all other communications relating to the same subject matter." Id. (internal marks and citation omitted). "'[O]nce waived, the attorney-client privilege cannot be reasserted.'" Id. (quoting United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987)). Further, "[b]ecause the attorney-client privilege is a shield and not a sword, a party may waive the privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications." Id. (internal marks and citations omitted). "A waiver of the attorney-client privilege also may occur when a party discloses otherwise privileged communications, or testifies as to those communications." Id. at *10 n.9 (citing Outside the Box Innovations, LLC v. Travel Caddy, Inc., 455 F. Supp. 2d 1374, 1376-77 (N.D. Ga. 2006) & Sperling v. City of Kennesaw Police Dep't, 202 F.R.D. 325, 328 (N.D. Ga. 2001)). Finally,

16

"communications divulged to strangers or outsiders can scarcely be considered a confidential communication between attorney and client." Hope for Families & Cmty. Serv., Inc., 2009 WL 174970, at *25 (internal marks and citation omitted).

In the present case, the Executor has established that Brown, who admits she gave the Estate property to the O'Quinn Law Firm based on an alleged Common Interest Agreement, is the individual most knowledgeable about the transfer of Estate property to that law firm, certain communications with third parties regarding the transfer of the property, meetings arranged by her between her clients and third parties regarding the property, and the basis of the Common Interest Agreement and whether her clients entered into such an agreement. [Doc. 2-12 at 3-9, pp. 72-74, 91-94, 141-42, 145, 152; Doc. 2-15 at 4, p. 38]. Specifically, Shelley testified in his deposition that Brown was present for his communications with certain media outlets, that he gave possession of the Estate property to Brown and never authorized her to turn the property over to anyone else, that he discussed with Brown her distribution of the Estate property to the O'Quinn Law Firm, and that he knew nothing about a Common Interest Agreement with Arthur. [Doc. 2-12 at 7-12, pp. 141-42, 147, 152-53, 163-65; Doc. 2-16 at 3-5, pp. 35-37, 66]. Shelley indicated that plaintiff's counsel would "have to ask [Brown]" whether she gave copies of the hard drive to Clark, the in-house investigator for the O'Quinn Law Firm. [Doc. 2-12 at

152]. Additionally, Thompson testified that he never authorized Brown to transfer the Estate property to the O'Quinn Law Firm, and that he never entered into a Common Interest Agreement with Arthur. [Doc. 2-13 at 4-6, pp. 150-54, 156-57].

Since Brown contends that she provided the O'Quinn Law Firm the property at issue based on the Common Interest Agreement, an agreement that her clients deny entering into and which does not bear their signatures, [see Doc. 2-14 at 2-8], the Executor is entitled to depose her on this subject matter. Brown's communications with third parties regarding the removal and transfer of the Estate property at issue and the circumstances surrounding the Common Interest Agreement are not privileged, and testimony can be taken from Brown regarding these topics pursuant to the subpoena. See Underwriters Ins. Co. v. Atlanta Gas Light Co., 248 F.R.D. 663, 670 (N.D. Ga. 2008) ("To the extent a communication is made for the purpose of disclosure to a third party, it is not protected by the attorney-client privilege . . .") (internal marks and citations omitted). Moreover, the Executor is entitled to documents relating to the same as requested in numbers 1, 2, 4, and 8 through 12 of the subpoena.[10]

---

[10] The undersigned modifies the subpoena, and specifically requests 1 through 2 and 10 through 11, to limit Brown's deposition and the production of documents to information pertaining only to the Estate property removed from Horizons, the circumstances of its removal, the subsequent transfer of the property to anyone, and communications with third parties regarding the same.

18

2.    *Deposition of Brown and Document Request 3*

As for Brown's communication with her clients, encompassed by request number 3, the Executor asserts that the clients have waived any attorney-client privilege with regard to communications surrounding the removal, distribution, and transfer of the Estate property as well as the alleged Common Interest Agreement with Arthur. However, the Court is not persuaded that there has been a wholesale waiver of the privilege with regard to all the subjects of the request. In fact, there are no facts before the Court to establish that Thompson, Gaither Thompson, Melanie Thompson, or Gina Shelley have waived any attorney-client privilege with regard to their communications with Brown. As for Shelley, the Executor has identified testimony that Shelley gave about the substance of one conversation with Brown,[11] but it is not sufficient to constitute a waiver as to all of the subjects contemplated by request number 3.

Even though it has not been shown that Brown's clients waived the attorney-client privilege as claimed by the Executor, some discovery on the matters covered by request number 3 is appropriate, however, pursuant to the crime-fraud exception

_____

[11] Specifically, Shelley testified about a conversation with Brown regarding the transfer of the Estate property to the O'Quinn Law Firm. [Doc. 2-16 at 3-4, pp. 35-37]. While Shelley's testimony constitutes a waiver as to the subject matter of that conversation, the Executor has not identified other instances in which Shelley testified about the substance of conversations with Brown that would support finding a broader waiver of the privilege.

19

because "[c]ommunications that otherwise would be protected by the attorney-client privilege 'are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.'" Cendant Corp. v. Shelton, 246 F.R.D. 401, 405 (D. Conn. 2007) (quoting In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984)). See also United States v. Cleckler, 265 Fed. App. 850, 853 (11th Cir. 2008) (unpublished). A two-part test is employed to determine the applicability of the crime-fraud exception:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

In re Certified HR Servs. Co., 2008 WL 2783157, at *3 (citing Cleckler, 265 Fed. App. at 853 & Cox, 17 F.3d at 1416). See also SEC v. Dowdell, No. 8:02-mc-94-T-17TBM, 2006 WL 3876294, at *4 (M.D. Fla. May 15, 2006) (citations omitted).

The Executor has met the first prong of the test as to Shelley by making a *prima facie* showing that Shelley and his accomplices engaged in a crime when they removed, without authorization, certain of Smith's property that had passed to her Estate upon her death. The Executor filed a police report with the Bahamian police

regarding the stolen property and issued a press release announcing the theft of the property.  [Doc. 2-3 ¶ 7; Doc. 2-4 at 2-4].  Moreover, Shelley even admitted that he entered Horizons and took the property in question without proper authorization. [Doc. 2-12 at 11, pp. 163-64; Doc. 2-13 at 5, pp. 150, 153].[12]  The Executor has also established that Brown's assistance was sought by Shelley and that she, knowing this property had been unlawfully taken, had communications with third parties regarding the property, and even provided it to third parties, including certain media outlets.

The Executor has also met the second prong of the test by showing that Brown's actions were in furtherance of the criminal or fraudulent activity or closely related to it.  Specifically, Brown advised the Executor that she would return the property, but failed to do so until ordered by the Court in the underlying action. [Doc. 2-7 at 2-5; Doc. 12-17 at 2; Doc. 2-10 at 3-4 ¶ 2].  In fact, during this time, Brown provided the property to another law firm without any authorization to do so and knowing that the property had been unlawfully removed from Horizons. Accordingly, because the crime-fraud exception applies with regard to the categories to which the Executor seeks to depose Brown and obtain documents, the attorney-

_____

[12] In fact, Shelley testified that he entered Horizons under his lawyer's direction and that she even met him there, [Doc. 2-12 at 11, p. 163], which substantiates the Executor's need for discovery on these issues directly from Brown.

21

client privilege does not shield Brown from compliance with the subpoena at issue. Therefore, to the extent the Executor seeks testimony from Brown regarding the facts and circumstances surrounding the removal and transfer of Estate property, communications she had with Shelley, and documents relating to the same in request number 3, he may discover it. Carnes, 244 F.R.D. at 699.

However, with regard to Thompson, Gaither Thompson, Melanie Thompson, and Gina Shelley, there are no facts before the undersigned that indicate that these individuals were accomplices in the removal of the Estate property from Horizons or that they in any way participated in Brown's transfer of the property to the O'Quinn Law Firm. Because the Executor has not presented the undersigned with evidence sufficient to demonstrate a *prima facie* showing that these clients made communications in furtherance of contemplated or ongoing criminal or fraudulent conduct, the undersigned finds that the crime-fraud exception to the attorney-client privilege does not apply to Brown's communications with them. Cendant Corp., 246 F.R.D. at 405. Hence, subpoena request number 3 is modified to exclude from discovery and deposition privileged communications Brown had with Thompson, Gaither Thompson, Melanie Thompson, and Gina Shelley based on the current record.

3.    *Deposition of Brown and Document Requests 5 through 7*

The Executor seeks Brown's testimony on and documents relating to legal fees and services rendered by her or her law firm concerning the Estate property at issue. Specifically, he seeks all bills or invoices from Brown or her law firm to Shelley, Thompson, Gaither Thompson, Melanie Thompson, or Gina Shelley with regard to the transfer or dissemination of Estate property to anyone or the broadcast or display of any of the property by anyone; receipts or invoices in Brown or her law firm's possession from any third party for services relating in any way to the property, including storage, courier or delivery, forensic examinations, copying, reproduction, or duplication of the property at issue; and all engagement letters or contracts for services between Brown or her law firm and Shelley, Thompson, Gaither Thompson, Melanie Thompson, or Gina Shelley. [Doc. 2-5 at 9-10 ¶¶ 5-7].

Brown has not specifically addressed these requests, but rather, asserts a blanket objection as protected by the attorney-client privilege. [Doc. 1-2 at 5]. However, "[i]n *O'Neal v. United States*, [258 F.3d 1265, 1276 (11th Cir. 2001)], the Eleventh Circuit reiterated the law of this circuit that information involving receipt of attorneys' fees from a client is not generally privileged." Hope for Families & Comm. Serv., Inc., 2009 WL 174970, at *21 (internal marks and citation omitted) (quoting Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("as a matter of federal law, '[o]ur decisions have recognized that the identity of the

client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege'")). See also United States v. Leventhal, 961 F.2d 936, 940 (11th Cir. 1992) (noting that the "identity of a client or matters involving the receipt of fees from a client are not normally within the attorney-client privilege") (internal marks, citations, and alteration omitted).  Additionally, fee arrangements and engagement letters which do not reveal client communications are also not protected by the attorney-client privilege.  See McCollough v. Johnson, Rodenberg & Lauinger, No. CV-07-166-BLG-CSO, 2009 WL 44551, at *1 (D. Mont. Jan. 6, 2009) (finding document in the nature of an engagement letter not protected by attorney-client privilege); Pucket v. Hot Springs Sch. Dist. No. 23-2, 239 F.R.D. 572, 584 (D.S.D. 2006) ("Absent special circumstances, client identity and fee arrangements are not confidential communications protected by the attorney-client privilege.") (internal marks and citation omitted); FTC v. Cambridge Exchange, Ltd., 845 F. Supp. 872, 874 (S.D. Fla. 1993) (fee arrangements which do not reveal client communications not protected by attorney-client privilege).  Thus, the Executor is entitled to depose Brown regarding these topics and obtain documents responsive to requests numbered 5 and 7.

Furthermore, receipts and invoices in Brown's possession from third parties performing services relating to the Estate property at issue, including services such

24

as storage, courier or delivery, forensic examinations, copying, or reproduction and duplication, are not protected by the attorney-client privilege as they do not reveal any substantive communications between attorney and client which the privilege is designed to protect. Therefore, the Executor is also entitled to documents responsive to request number 6. Accordingly, the undersigned finds that the information and documents requested in 5 through 7 of the subpoena at issue are not protected by the attorney-client privilege and **ORDERS** their production.

**B.    Undue Burden and Reasonable Time to Respond**

Brown asks the Court to quash the subpoena, asserting that the subpoena failed to provide her with reasonable time for compliance in violation of Federal Rule of Civil Procedure 45. [Doc. 1-2 at 3 (citing Donahoo v. Ohio Dep't of Youth Servs., 211 F.R.D. 303, 306 (N.D. Ohio 2002), for the proposition that reasonable time for compliance is fourteen days after service of the subpoena)]; see also Fed. R. Civ. P. 45(c)(3)(A)(i). Specifically, Brown asserts that the Executor served the subpoena on June 23, 2009, directing her to appear for a deposition and produce documents on June 30, 2009, only seven days after service of the subpoena. [Doc. 1-2 at 3]. Therefore, Brown also argues that compliance with the subpoena would result in an undue burden to her. [Id. at 5-6].

Federal Rule of Civil Procedure 45(c)(3), however, does not set a minimum amount of time required to be considered a "reasonable time to comply" with a

subpoena, and "generally, courts make the determination of reasonableness on a case-by-case basis, considering the factors at work in the given case." Parrot, Inc. v. Nicestuff Distributing Int'l, Inc., No. 06-61231, 2009 WL 197979, at *4 (S.D. Fla. Jan. 26, 2009). See also Subair Sys., LLC v. Precisionaire Sys., Inc., No. 08-60570-CIV, 2008 WL 1914876, at *2 n.4 (S.D. Fla. Apr. 26, 2008) (finding 10 days notice to deponents could be deemed "reasonable" under Rule 45(c)(3)). Here, because the time for response to the subpoena has already passed, the Court hereby modifies the subpoena to allow twenty (20) days from the date of this Order for Brown to comply with the subpoena. See Biological Processors of Ala., Inc. v. N. Ga. Environmental Servs., Inc., Misc. Action No. 09-3673, 2009 WL 2160984, at *3 (E.D. La. July 15, 2009) (modifying subpoena to allow additional days to produce documents where it initially only provided 7 days for compliance, noting that pursuant to Rule 45, "[w]hen a subpoena fails to allow a reasonable time to comply and the respondent files a timely motion, the issuing court must quash or modify a subpoena") (internal marks and citation omitted). Thus, Brown's reasonable time and undue burden arguments are moot.

C.     **Attorney's Fees**

The Executor requests reasonable attorney's fees against Brown pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and against Brown's attorneys pursuant to 28 U.S.C. § 1927 ("§ 1927") for responding to Brown's motion to quash

and for filing his motion to compel compliance with the subpoena. [Doc. 2 at 24]. However, the undersigned finds that attorney's fees are not warranted here.

When a motion to compel is granted in part and denied in part, Rule 37 provides that the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(c). See also Knights Armament Co. v. Optical Systems Tech., Inc., 254 F.R.D. 470, 471-72 (M.D. Fla. 2008). "The court 'has wide latitude in imposing sanctions for failure to comply with discovery.'" Murphy v. Cooper Tire & Rubber Co., No. 5:08cv40/RS/EMT, 2008 WL 5273548, at *6 (N.D. Fla. Dec. 18, 2008) (quoting Aziz v. Wright, 34 F.3d 587, 589 (8th Cir. 1994)). "Where the producing party's actions necessitate the motion to compel, or where the objections and failure to respond are not substantially justified, an award of sanctions is appropriate." Id. "Further, a party against whom a motion to compel is enforced may only avoid payment of sanctions by demonstrating that [her] position is substantially justified." Id. "A motion is substantially justified if it raises an issue about which there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." Id. (internal marks and citations omitted).

Although some of Brown's arguments were made in a conclusory fashion, there was justification for an objection based on the attorney-client privilege as to the production of certain documents and some topics for the deposition identified in the

27

par=1

subpoena as discussed earlier. Because this argument– "although not persuasive–could be characterized as a justification having 'substan[ce],' an award of attorney's fees is not warranted." Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying Rule 37 attorney's fees where court granted defendant's motion to compel in its entirety, finding some of the arguments were substantially justified). Accordingly, the Executor's motion for reasonable attorney's fees is hereby **DENIED**.

The Executor also requests attorney's fees from Brown's lawyers pursuant to § 1927. [Doc. 2 at 24; Doc. 4 at 24]. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The plain statutory language of section 1927 makes clear that this section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." Benavides v. Miami Atlanta Airfreight, Inc., 612 F. Supp. 2d 1236, 1241 (S.D. Fla. 2008) (citation omitted). The statute requires "(1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings. All three requirements must be met before sanctions are imposed." Macort v. Prem, Inc., 208 Fed. App. 781, 785-86 (11th

28

Cir. 2006) (unpublished) (citing Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997)). "An attorney's conduct meets the first of these conditions 'only when the attorney's conduct is so egregious that it is tantamount to bad faith.'" Benavides, 612 F. Supp. 2d at 1241 (quoting Hudson v. Int'l Computer Negotiations, Inc., 499 F.3d 1252, 1262 (11th Cir. 2007)). "For an attorney's conduct to classify as egregious, the attorney must knowingly or recklessly pursue a frivolous claim." Id. "Negligent conduct alone will not support a finding of bad faith under § 1927, and for sanctions to be appropriate something more than a lack of merit is required." Id.

"While an attorney's conduct must be tantamount to bad faith, for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." Id. (internal marks and citations omitted). "What is crucial is whether, regardless of the attorney's subjective intentions, the conduct was unreasonable and vexatious when measured against an objective standard." Id. (internal marks and citation omitted). "That is not to say the attorney's purpose or intent is irrelevant. Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be unreasonabl[e] and vexatious[ ] if it is done with a malicious purpose or intent." Id. (internal marks and citations omitted). Therefore, "under either the Court's inherent powers or section 1927, the Court must

29

first conclude that the [attorney] pursued [her] tactics in bad faith. That finding is, intentionally, a difficult mountain to climb." Traffic Sports USA, Inc. v. Federacion Nacional Autonoma De Futbol De Honduras, No. 08-20228-CIV, 2008 WL 4792196, at *5 (S.D. Fla. Oct. 31, 2008) (internal citation omitted).

Here, Brown's attorney's actions are not sanctionable under § 1927. While the Court denies Brown's motion to quash, it does not find that Brown's arguments are frivolous or that they were pursued in bad faith. Therefore, the Court declines to sanction Brown's attorneys and **DENIES** the Executor's request for attorney's fees pursuant to Rule 37 and § 1927.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the Executor's request for oral argument, [Doc.3], **DENIES** Brown's motion to quash, [Doc. 1], **GRANTS** in part the Executor's motion to compel, [Doc. 4], and **MODIFIES** the subpoena at issue to limit production and testimony to the specific subject matter consistent with this Order.

**IT IS SO ORDERED,** this 28th day of August, 2009.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

30