**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| HOWARD K. STERN, as Executor of the Estate of Vickie Lynn Marshall, a/k/a Vickie Lynn Smith, a/k/a Vickie Lynn Hogan, a/k/a Anna Nicole Smith,<br><br>    Plaintiff,<br><br>vs.<br><br>STANCIL SHELLEY, a/k/a Ford Shelley, G. BEN THOMPSON, and John or Jane Doe 1-12 whose true names are unknown,<br><br>    Defendants. | )<br>)<br>)  Civil Action No. 4:08-cv-2753-TLW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>/ |

**THE EXECUTOR'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR CONTEMPT AND SANCTIONS</u>**

COMES NOW Plaintiff Howard K. Stern, as Executor of the Estate of Vickie Lynn Marshall a/k/a Anna Nicole Smith (the "Executor"), and hereby moves this Court for an order holding Defendant G. Ben Thompson ("Ben Thompson") and his attorney-of-record, Susan M. Brown, ("Brown") in contempt of court for violating the Consent Order Entering Preliminary Injunction [DE 39] (the "Order") and entering appropriate sanctions against Ben Thompson and Brown.

**<u>STATEMENT OF FACTS</u>**

1.  The Executor filed the above-referenced action against Stancil ["Ford"] Shelley ("Ford") and Ben Thompson on August 4, 2008. [DE 1.] The action is for compensatory, equitable, and punitive relief arising from actions taken by the Defendants with respect to the

1

personal property of Vickie Lynn Marshall a/k/a Anna Nicole Smith ("Ms. Smith") that passed to her Estate upon her death and which was removed from the residence known as Horizons after Ms. Smith's death. (Id.)

2.     Prior to filing suit, the Executor had repeatedly demanded that the Defendants surrender all Estate property to the Executor's counsel. [See Compl. (DE 1), at Ex. D.] These demands were largely ignored and any purported compliance with the demands came either months after the initial demands were made or upon order or this Court, if at all.

3.     On or about November 8, 2007, Brown, delivered certain Estate property to Stern's counsel in Atlanta, Georgia.

4.     At the time that Brown delivered certain Estate property to the Executor's counsel on November 8, 2007, she had in her possession the two (2) hard drives containing property belonging to the Estate; however, Brown neither mentioned nor surrendered the hard drives when she delivered certain Estate property to the Executor's counsel on November 8, 2007. [See pages 136-38 of the true and correct copy of the relevant portions of the Deposition of Susan M. Brown, taken October 5, 2009 ("Brown Dep."), as Exhibit A.]

5.     After the Executor learned of the existence of the two (2) hard drives, he immediately made demands for return of the Estate property contained on the hard drives. Despite the Executor's demands to Brown to return the Estate property contained on the hard drives and despite knowledge that information on the hard drives belonged to the Estate, Brown provided the hard drives to The O'Quinn Law Firm whom she knew would perform computer forensic services on the Estate property contained on the hard drives. (Brown Dep., at 26, 65, 93, 101.)

6.     Brown purportedly transferred the two (2) hard drives to The O'Quinn Law Firm based on a Common Interest and Confidentiality Agreement between Ms. Smith's estranged biological mother and Ford Shelley and Gaither Thompson, II. (A true and correct copy of the Common Interest and Confidentiality Agreement is attached hereto as Exhibit B.)

7.     Paragraphs 8 and 11 of the Common Interest and Confidentiality Agreement provide that a party to the agreement may (1) withdraw from the agreement at any time and demand return of any information – including tangible materials – provided the other party within ten (10) days of withdrawal or (2) at any time demand the return of information – including tangible materials – provided to the other party pursuant to the agreement. (See Ex. B.)

8.     Despite the Executor's demands to Brown to return the Estate property contained on the hard drives, despite assurances to the Executor's counsel that neither Ford nor Ben Thompson had access to the hard drives, and despite knowledge that information on the hard drives belonged to the Estate, Brown provided the hard drives to Ford. (Brown Dep., at 138-40.)

9.     On August 19, 2008, the Executor filed a Motion for Temporary Restraining Order, seeking an order enjoining Ford and Ben Thompson from disposing of, transferring, moving, selling, assigning, alienating, conveying, or otherwise disseminating the property belonging to the Estate which is the subject of the above-referenced litigation, which includes, among other things, copies of all files from the two computers and external hard drive that Ford surrendered to Horry County, South Carolina authorities. [DE 9-11.]

10.    Neither Ford nor Ben Thompson filed a response to the Executor's Motion for Temporary Restraining Order and, therefore, the Motion for Temporary Restraining Order was unopposed.

11. On September 22, 2009, Brown moved this Court for *pro hac vice* admission in the above-captioned case. [DE 15.]

12. On October 31, 2008, this Court entered an order granting Brown's *pro hac vice* admission. [DE 19.]

13. On January 6, 2009, this Court provided notice of a telephonic hearing, in which the Court would, among other things, address the Executor's Motion for Temporary Restraining Order. [DE 37.]

14. During the telephone hearing on January 8, 2009, Brown consented to entry of a preliminary injunction concerning the property at issue in this litigation, and Brown made no representation to the Court that any additional Estate property remained in her possession, custody or control other than the 2 external hard drives that contained copies of the Estate property.

15. During the telephone hearing with the Court on January 8, 2009, Brown failed to inform the Court that she had given The O'Quinn Law Firm the two (2) external hard drives at issue and with the knowledge that The O'Quinn Law Firm intended to transfer the hard drives to a computer forensic expert for copying and/or various forensic services.

16. On January 16, 2009, this Court entered a Consent Order Entering Preliminary Injunction, which provided, among other things that

> At or before 5:00 p.m. on the fifth business day after entry of this Consent Order Entering Preliminary Injunction, Susan M. Brown, attorney for Defendant G. Ben Thompson, shall deliver to the Executor's attorneys at Bryan Cave Powell Goldstein, One Atlantic Center – Fourteenth Floor, 1201 West Peachtree Street, NW, Atlanta, Georgia 30309, <u>any of the Property belonging to the Estate which is in Ms. Brown's possession or custody,</u> **including all originals and all duplicates** <u>of such Property</u>, specifically including but not limited to the two (2) hard drives belonging to the Estate which are in Ms. Brown's possession.

[DE 39, at 2-3 (emphasis added).]

17.     Brown, as attorney for Ben Thompson, consented to entry of the Consent Order Entering Preliminary Injunction. [See DE 39, at 4.]

18.     On January 21, 2009, a courier retrieved the two (2) hard drives from Brown's office. Brown had the courier execute an affidavit indicating that he "received from the law office of Susan M. Brown a sealed box containing the hard drives of Howard K. Stern." (A true and correct copy of the Affidavit of Graham Kish is attached hereto as Exhibit C.) No other Estate property was provided by Brown to the courier other than the two (2) hard drives.

19.     It has become apparent, however, that Brown violated the Court's Consent Order Entering Preliminary Injunction, at a minimum, by maintaining hard copies of Estate property in her office and by maintaining electronic copies of Estate property on her computer.

20.     During discovery, the Executor learned that Brown personally had played a role not only in the possession of Estate property, but also in the unlawful dissemination of Estate property. Accordingly, the Executor served on Brown a subpoena to appear at a deposition and to produce documents and served on Brown's law firm a subpoena to produce documents. (True and correct copies of the subpoenas are attached hereto as Exhibits D and E, respectively.) Brown moved to quash the subpoenas based on the attorney-client privilege and work-product doctrine. (A true and correct copy of Brown's motion to quash is attached hereto as Exhibit F.)

21.     On August 31, 2009, the United States District Court for the Northern District of Georgia entered an order denying Brown's motion to quash, finding, at least in part, a sufficient *prima facie* showing of the applicability of the crime-fraud exception to the attorney-client privilege. (A true and correct copy of the Order denying Brown's motion to quash is attached hereto as Exhibit G.)

22.     Pursuant to the Order denying her motion to quash, on September 22, 2009, Brown produced documents and photographs responsive to the Executor's subpoena. (See Exhibit H, a true and correct copy of correspondence dated September 22, 2009, from Brown's counsel to the Executor's counsel.)

23.     Prior to September 22, 2009, Brown made no representation to the Executor's counsel that any additional Estate property remained in her possession, custody or control after having surrendered to the Executor's counsel the two (2) external hard drives that contained copies of the Estate property.

24.     On September 24, 2009, Brown supplemented her production to the Executor by producing additional electronic photographs responsive to the Executor's subpoena. (See Exhibit I, a true and correct copy of correspondence dated September 24, 2009, from Brown's counsel to the Executor's counsel.)

25.     Contained within the hard copies produced by Brown on September 22, 2009, were copies of the following documents that belong to the Estate:

        a.     Work for Hire Agreement;

        b.     Photography Copyright Agreement;

        c.     Agreement;

        d.     Materials License Agreement; and

        e.     Commonwealth of Bahamas Certificate of Permanent Residence.[1]

---

[1] While Brown apparently concedes that the items identified in Paragraph 25 are the property of the Estate, should the Court require that the Executor submit these documents in support of this Motion, the Executor would be agreeable to allowing the Court to inspect these documents *in camera* so as to not further devalue the property through its public dissemination.

26.     Though some files were duplicates and others were corrupt, Brown ultimately produced five (5) USB flash drives containing numerous copies of photographs that belong to the Estate.[2]

27.     On September 29, 2009 – nine (9) months after entry of the Consent Order Entering Preliminary Injunction – Brown first attempted to seek from The O'Quinn Law Firm return of the Estate property contained on the hard drives that Brown had provided to The O'Quinn Law Firm. (See Exhibit J, a true and correct copy of correspondence dated September 29, 2009, from Brown to McCabe.)

28.     On October 5, 2009 – the date of her deposition – Brown still had in her possession property that belongs to the Estate:

> Q.     What do you have in your possession now that you know are copies of the property of Anna Nicole Smith?
>
> . . . .
>
> A.     I have copies of the photographs that were turned over on the flash drive to you and I have copies of the documents that were turned over to you. And that is all I have.
>
> . . . .
>
> Q.     What -- do you have – you then are telling me you have copies of computer images and documents that are, under your assumption, property of Anna Nicole Smith or her estate?
>
> A.     Correct.
>
> Q.     And give me an inventory specifically of what copies of Anna Nicole Smith's estate property you still maintain in your possession.

---

[2] Again, it does not appear that Brown disputes that the photographs are Estate property. Indeed, recognizing their commercial value, Brown offered – and the Executor's counsel accepted her offer and further demanded of her – to not produce the photographs to Ford or to his counsel. However, should the Court so require, the Executor would be agreeable to allowing the Court to inspect these photographs *in camera* so as to not further devalue the property through its public dissemination.

7

A. There were pictures –

. . .

Q. (By Mr. Wood) Pictures of what?

A. Some of Anna Nicole Smith.

Q. That came from her hard drive?

A. I don't know where they came from.

Q. You assume they came from her hard drive?

A. I assume some of them came from the hard drive or the computer.

Q. What else?

A. There were two work contracts. There were –

Q. Work contracts with whom?

A. Between Anna Nicole Smith and somebody.

. . .

Q. These are some of the documents that Ford Shelley took when he went to Horizons?

MS. MAST: Object to the form.

THE WITNESS: Ford Shelley handed me the documents.

Q. (By Mr. Wood) You didn't think those were Ford Shelley's documents, did you?

A. No.

Q. What else?

A. Specifically from the hard drive and the laptop is what you're asking?

Q. I'm asking you, ma'am, as simple as I can make it what copies you have or property do you have, copies of any property -- personal property of the

8

>           Estate of Anna Nicole Smith or whatever personal property of hers you may still have in your possession?
>
>     . . .
>
>     Q.    . . . Tell me what you have, ma'am. Tell me what you have.
>
>     A.    Nothing other than what has already been produced over to you.
>
>     Q.    I want to know what -- so everything you produced to me, you kept copies of?
>
>     A.    Yes.
>
>     Q.    So everything that you gave to my law firm that you had that you assumed was the property of Anna Nicole Smith or from her computer hard drives, you still maintain copies of all of that material –
>
>     A.    No.
>
>     Q.    -- is that what you're telling me?
>
>     A.    No, that is not accurate.
>
>     . . .
>
>     Q.    What do you have, Ms. Brown?
>
>     A.    I have got a cop- -- the series of pictures that were given to you on the flash drive. I have got the documents that were handed to you in the discovery.
>
>           I do not have the hard drives.
>
>           I do not have copies of the files on the hard drives. I do not have any of that.[3]
>
>           I do not have the clown video.  I do not have any of that.

(Brown Dep., at 29-34.)

---

[3] In disclaiming that she has copies of the files on the hard drives, Brown contradicts her prior and subsequent testimony. The photographs belonging to the Estate that Brown produced in response to the subpoenas were from the Estate's hard drives.

29.     At the time the Court entered the Consent Order Entering Preliminary Injunction, duplicates of Estate property were on Brown's hard drive. [See Brown Dep., at 55 (testifying that the duplicates of the Estate's property were imaged onto Brown's computer in 2007).]

30.     At the time the Court entered the Consent Order Entering Preliminary Injunction, to the best of Brown's belief, The O'Quinn Law Firm had in its possession, custody, or control the Estate property which she gave to it. (See Brown Dep., at 109-13.)

31.     Brown testified that she is aware of what the Consent Order Entering Preliminary Injunction required her to do. (Brown Dep., at 35.)

32.     Brown testified that although she is in violation of this Court's Consent Order Entering Preliminary Injunction, her violation was "unintentional." (Brown Dep., 35-36.)

33.     During her deposition, Brown surrendered to the Executor's counsel purportedly all hard copies she possessed of:

   a.    Work for Hire Agreement;

   b.    Photography Copyright Agreement; and

   c.    Agreement.

(See Brown Dep., at 37-53.)

34.     Pursuant to agreement, Brown's hard drive on which the electronic copies of Estate property were stored was destroyed on October 9, 2009. (See Exhibit K, a true and correct copy of the Affidavit of Niall Cronnolly.)

## ARGUMENT AND CITATION OF AUTHORITIES

It has long been the law that the violation or disobedience of an injunction issued by a court having the requisite jurisdiction is punishable as a contempt of court. See Howat v. State of Kansas, 258 U.S. 181 (1922). Moreover, this Court has the inherent power to sanction both

10

parties and attorneys who fail to follow injunctive orders. See, e.g., Equal Employment Opportunity Comm'n v. International Longshoremen's Ass'n, 541 F.2d 1062 (1976); Hanahan v. John Hancock Life Ins. Co., 518 F. Supp.2d 786, 790 (D.S.C. 2007).

Ben Thompson and Brown have failed to produce documents and evidence regarding the underlying matter, which this Court ordered them to produce. In doing so, Ben Thompson and Brown have violated the Consent Order Entering Preliminary Injunction, which ordered Brown to deliver to the Executor's counsel all property belonging to the Estate which was in Brown's possession or custody, including all originals and all duplicates of such property.

Ben Thompson and Brown apparently had no intention of ever disclosing the fact that Brown was maintaining hard copies of Estate property in her office and electronic copies of Estate property on her computer. Had the United States District Court for the Northern District of Georgia not denied Brown's motion to quash, the Executor would have never known about the Estate property that was being concealed by Brown in violation of the Consent Order Entering Preliminary Injunction.

Further, Brown sat silent during the telephone hearing with this Court when the hard drives and their return to the Executor's counsel were discussed. Her silence regarding her distribution of the hard drives to The O'Quinn Law Firm is – if not a blatant misrepresentation to the Court – a material omission. Under the Common Interest and Confidentiality Agreement, Brown had within her power the ability to demand at any time the return from The O'Quinn Law Firm the property she provided to it which she knew belonged to the Estate. Yet – in utter contempt of the Consent Order Entering Preliminary Injunction entered nine (9) months earlier – Brown waited until just a few days before her deposition to request the return of the Estate property from The O'Quinn Law Firm.

Brown is an officer of the court and one granted the privilege of practicing law in this District. Brown knew of the Order and knew what the Preliminary Injunction required, yet she 'unintentionally' violated it for nine (9) months. Under these circumstances, including Brown's history of hiding Estate property, the harshest sanctions are appropriate.

## I.    BEN THOMPSON AND BROWN ARE IN CONTEMPT OF COURT BECAUSE THEY VIOLATED THE CONSENT ORDER ENTERING PRELIMINARY INJUNCTION.

To establish civil contempt of an order, the moving party must prove each of the following by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor,' (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000). With regard to the third element, the alleged contemnor must violate an "unequivocal demand" set forth in "specific detail" within the order at issue. See In re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995). The Executor easily satisfies these elements.

### A.    The Consent Order Entering Preliminary Injunctions Satisfies All Requirements Of The Federal Rules Of Civil Procedure.

As an initial matter, there should be no dispute that the Consent Order Entering Preliminary Injunction complies with the Federal Rules of Civil Procedure. Brown consented to it, and there is no dispute that Ben Thompson and Brown had actual notice of the Consent Order Entering Preliminary Injunction. See Fed. R. Civ. P. 65(d)(2). The Consent Order Entering Preliminary Injunction was in the Executor's favor insofar as it ordered Brown to produce documents and evidence to the Executor. [See DE 39, at 2-3.] Moreover, Brown concedes that the Consent Order Entering Preliminary Injunction was clear and unambiguous. (Brown Dep., at

35.) By its very nature of being an injunction, violation of the Consent Order Entering Preliminary Injunction causes harm to the Estate. At a minimum, the Executor has incurred significant attorneys' fees and expenses pursuing knowledge regarding Brown's conduct concerning the Estate property and pursuing the return of the actual Estate property concealed by Brown. Therefore, the only question before this Court is whether Ben Thompson and Brown's conduct violated the Consent Order Entering Preliminary Injunction and if so, what penalties to assess.

### B. Brown's Conduct Violated The Consent Order Entering Preliminary Injunction.

The clear, unambiguous language of the Consent Order Entering Preliminary Injunction commanded Brown to perform a simple task:

> At or before 5:00 p.m. on the fifth business day after entry of this Consent Order Entering Preliminary Injunction, Susan M. Brown, attorney for Defendant G. Ben Thompson, shall deliver to the Executor's attorneys at Bryan Cave Powell Goldstein, One Atlantic Center – Fourteenth Floor, 1201 West Peachtree Street, NW, Atlanta, Georgia 30309, any of the Property belonging to the Estate which is in Ms. Brown's possession or custody, including all originals and all duplicates of such Property, specifically including but not limited to the two (2) hard drives belonging to the Estate which are in Ms. Brown's possession.

[DE 39, at 2-3 (emphasis added).] By Brown's own admission, she understood what the Consent Order Entering Preliminary Injunction required of her. (Brown Dep., at 35.) Also by Brown's own admission, after time for compliance under the Consent Order Entering Preliminary Injunction, she continued to maintain in her office and on her computer duplicates of property which – at a minimum – she assumed belonged to the Estate. (Brown Dep., at 29-34.) The best excuse Brown can muster is that her violation of the Consent Order Entering Preliminary Injunction was "unintentional." (Brown Dep., at 35-36.)

### B.     Brown's Claim That The Violation Was 'Unintentional' Is Irrelevant.

Brown's claim that her violation of the Consent Order Entering Preliminary Injunction was "unintentional" may not factor into this Court's inquiry. A party need not intend to violate an injunction to be found in civil contempt. Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996) ("Willfulness is not an element of civil contempt, so the intent of a party to disobey a court order is 'irrelevant to the validity of [a] contempt finding.'"); Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1353 (Fed. Cir. 1998) ("The general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt."); American Airlines, Inc. v. Allied Pilots Ass'n, 53 F. Supp.2d 909, 939 (N.D. Tex. 1999) (willfulness is not an element of civil contempt for the violation of an injunction). The state of mind with which the contemnor violated the injunction is irrelevant, so that good faith or the absence of an intent to violate the injunction is no defense in a contempt proceeding. In re Cox, 214 B.R. 635, 641 n.6 (Bankr. N.D. Ala. 1997). Brown violated the Consent Order Entering Preliminary Injunction; her claim that her violation was 'unintentional' is no defense.

### C.     Ben Thompson Cannot Disavow His Attorney's Actions.

The United States Supreme Court long ago closed the door on any defense Ben Thompson may try to assert that he should not be held accountable for his attorney's misconduct:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) (citations omitted); see Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 227 (4th Cir. 2005) (citing Link and holding that client could be

14

penalized for her attorney's negligence in filing an untimely appeal); Riggs v. Wal-Mart Stores, Inc., 119 Fed. Appx. 569, 569-70 (4th Cir. 2005) (citing Link and holding that because a client is bound by the acts of his or her attorney, the client's remedy for an attorney's failure to subpoena key witnesses or to present other evidence lies in a malpractice suit); Graham v. Office Depot, Inc., No. 4:04-23361-TLW-TER, 2007 WL 2891478, at *4 (D.S.C. Sept. 28, 2007) ("it is well-settled that parties are accountable for the mistakes of their attorneys"). Accordingly, if this Court finds that Brown violated the Consent Order Entering Preliminary Injunction, sanctions must also be imposed on Ben Thompson for his attorney's misconduct.

The only question left for this Court is the appropriate sanctions for Ben Thompson's and Brown's violation of the Consent Order Entering Preliminary Injunction.

## II. THIS COURT HAS AUTHORITY TO STRIKE PLEADINGS AS A SANCTION FOR CONTEMPT OF THIS PARTICULAR ORDER.

The general rule is that a court has no inherent power to strike a defendant's answer as a punishment for contempt of court. See Hovey v. Elliott, 167 U.S. 409, 413-14 (1897). There is, however, an exception to this general rule. Striking a defendant's answer is appropriate when a defendant has suppressed or failed to produce relevant evidence in his possession which he has been ordered to produce. See Hammond Packing Co. v. State of Arkansas, 212 U.S. 322, 349-54 (1909); see also Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co., 518 F.2d 671, 674 (2d Cir. 1975) (comparing Hammond and Hovey and discussing the distinction between striking an answer and entering a default judgment as punishment for contempt, as compared with entry of a default judgment "for failure to produce documents on the ground that failure to do so created a presumption of no merit to the defense"); Duell v. Duell, 178 F.2d 683, 687 (D.C. Cir. 1950) (comparing Hammond and Hovey and finding that "[t]he court's action in striking the answer

and rendering a default fashion unless it grows out of a failure to produce, when ordered to do so, material evidence in his possession or under his control").

Ben Thompson's and Brown's contemptuous conduct is sufficient to strike Ben Thompson's answer. Not only did Ben Thompson and Brown violate a preliminary injunction. They failed to produce documents and evidence they were ordered to produce. See Hammond, 212 U.S. at 349-54. Moreover, Brown's prior conduct with respect to Estate property cannot be ignored in fitting an appropriate sanction. Brown has repeatedly hidden and failed to produce property she acknowledges belongs to the Estate. Furthermore, her conduct – specifically her failure to inform the Court during the January 2009 hearing on the Motion for Temporary Restraining Order or the Executor's counsel at any point during the intervening nine (9) months that she continued to possess Estate property as well as her frivolous attempt to quash the subpoenas seeking the production of documents – makes overwhelmingly clear that Brown's intent was to never disclose the existence of the Estate property in her possession. This type of conduct warrants the harshest sanctions.

At a minimum, a finding of contempt and an award of attorneys' fees are an appropriate sanction. Where a party or attorney willfully disobeys a court order, assessment of attorneys' fees is an appropriate sanction. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258 (1975). Reimbursement of attorneys' is not considered a punitive sanction so as to trigger the due process rights afforded in criminal contempt proceedings. See, e.g., Jacobs v. CitiBank, N.A., 318 Fed. Appx. 3 (2d Cir. 2008); Jove Eng'g, Inc. v. IRS, 92 F.3d 1539 (11th Cir. 1996) (awarding out-of-pocket expenses for bringing contempt action is not an imposition of criminal sanctions). The Executor should be awarded all attorneys' fees and expenses incurred in obtaining the Consent Order Entering Preliminary Injunction, directing discovery efforts toward

16

Brown (e.g., issuing subpoenas, opposing motion to quash, deposing Brown), and addressing the aftermath of Brown's misconduct (e.g., communications with Brown's counsel, negotiation of appropriate activities to be performed on Brown's computer, coordination of the destruction of Brown's hard drive, and filing this Motion).

## CONCLUSION

Based on the foregoing, Howard K. Stern, as Executor of the Estate of Vickie Lynn Marshall a/k/a Anna Nicole Smith, respectfully requests that the Court hold an evidentiary hearing on this Motion, including a hearing regarding the reasonableness of the Executor's attorneys' fees and expenses as set forth above, and enter an order:

A. Striking Ben Thompson's defenses to the Executor's Complaint;

B. Entering judgment in favor of the Executor on his Complaint as against Ben Thompson;

C. Awarding the Executor all of his expenses and reasonable and necessary attorneys' fees incurred as a result of the violation of the Order, including but not limited to fees incurred through discovery concerning the Property held by Brown in violation of the Order, attempts to retrieve the Property, and efforts taken to ensure the destruction of Brown's hard drive;

D. Ordering Ben Thompson and Brown to immediately turn over to the Executor's attorneys all property belonging to the Estate – including all originals and duplicates; and

E. Granting such other and further relief as the Court deems appropriate.

Respectfully submitted this 28th day of October, 2009.

       /s/ L. Lin Wood
       L. Lin Wood
       (Georgia Bar No. 774588) (Pro hac vice)

        Lin.Wood@BryanCave.com
        Nicole Jennings Wade
        (Georgia Bar No. 390922) (Pro hac vice)
        Nicole.Wade@BryanCave.com
        Luke A. Lantta
        (Georgia Bar No. 141407) (Pro hac vice)
        Luke.Lantta@BryanCave.com

        **BRYAN CAVE LLP**
        One Atlantic Center
        Fourteenth Floor
        1201 West Peachtree Street, N.W.
        Atlanta, Georgia  30309
        Telephone:     (404) 572-6600
        Facsimile:       (404) 572-6999


        /s/ Louis Nettles
        Karl A. Folkens
        (District Court ID No. 854)
        Karl@folkenslaw.com
        Louis Nettles
        (District Court ID No. 2521)
        Louis@folkenslaw.com

        **FOLKENS LAW FIRM, P.A.**
        3326 West Palmetto Street
        Florence, South Carolina 29501
        Telephone:     (843) 665-0100
        Facsimile:       (843) 665-0500

        *Attorneys for the Executor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2009, I electronically filed the foregoing document with the Clerk of Court, which will automatically send notification of such filing to the following attorneys of record:

| | |
|---|---|
| R. Scott Joye | Susan P. MacDonald |
| Joye, Nappier & Risher, LLC | Nelson Mullins Riley & Scarborough LLP |
| 3575 Highway 17 Business | Beach First Center, 3rd Floor |
| Murrells Inlet, SC  29576 | 3751 Robert M. Grissom Parkway |
| | Myrtle Beach, SC 29577 |

Susan M. Brown
The Law Offices of Susan M. Brown P.C.
525 Clubhouse Drive
Peachtree City, GA 30269

I further certify that the foregoing document has been served on the following by email and U.S. First Class Mail:

Christine L. Mast, Esq.
Hawkins & Parnell, LLP
4300 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243
cmast@hplegal.com


This 28th day of October, 2009.

        /s/ Louis Nettles
Louis Nettles
(District Court ID No. 2521)
Louis@folkenslaw.com

606811