IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HOWARD K. STERN, as Executor of the Estate of Vickie Lynn Marshall, a/k/a Vickie Lynn Smith, a/k/a Vickie Lynn Hogan, a/k/a Anna Nicole Smith, <br><br> Plaintiff, <br><br> vs. <br><br> STANCIL SHELLEY, a/k/a Ford Shelley, G. BEN THOMPSON, and John or Jane Doe 1-12 whose true names are unknown, <br><br> Defendants. | C.A. No. 4:08-CV-2753-TLW <br><br><br><br><br> NON-PARTIES SUSAN M. BROWN AND LAW OFFICES OF SUSAN M. BROWN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND |

This matter is before the Court on the motion of Plaintiff Howard K. Stern to amend his complaint to join additional Defendants Gaither Bengene Thompson, II, Melanie Thompson, Gina Thompson Shelley, Susan M. Brown, and The Law Offices of Susan M. Brown, P.C. Susan M. Brown and The Law Offices of Susan M. Brown, P.C. (hereinafter collectively referred to as "Brown") hereby opposes the motion to amend as it relates to Brown.

### FACTS

The underlying facts in this case are set out in Brown's Memorandum in Opposition to Plaintiff Stern's Motion for Sanctions and are hereby adopted in full.

### LEGAL ARGUMENT

A motion to amend a complaint may be denied when the amendment would be prejudicial to the opposing party, where there has been bad faith on the part of the moving party, or when the amendment would be futile. Matrix Capital Management Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009); Alonso v. McAllister Towing of Charleston, Inc., 595 F.Supp.2d 645, 648

(D.S.C. 2009).

## I.     BROWN IS PREJUDICED BY THE TIMING OF THE AMENDMENT

Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing.  Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006).  A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial."  Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986).  An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.  Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.").

This matter has been pending since August of 2008.  Since that time, the Scheduling Order has been amended five times.  Deadlines for naming experts have long since passed.  Discovery is currently due to be over January 29, 2010.  Numerous depositions have been taken, including depositions of the current Defendants and most of the proposed new Defendants.  These depositions were taken without any knowledge that Brown would become a potential Defendant until counsel for Plaintiff suggested as much during Brown's deposition.  In other words, the majority of Plaintiff's discovery has already taken place without Brown as a party, and the matter as it currently stands is essentially ready for trial.  Clearly, Brown would be prejudiced by her late addition, both due to the fact that she has not had an opportunity to participate in discovery as a party and also because of the little time that is left for discovery.

Of course, there was no reason for the late date of this effort to add Brown as a party.

2

Plaintiff's counsel has been aware of Brown's actions that form the basis for the Amended Complaint for nearly a year. In his Amended Complaint, Plaintiff candidly admits that Brown informed Plaintiff that Brown had the two subject hard drives on November 12, 2007. Proposed Amended Complaint, Paragraph 174. This was confirmed in a letter from Plaintiff's counsel on November 29, 2007. 11/29/07 Wade Letter, Exhibit No. 1. Thus, Plaintiff was aware that Brown had possession of the subject hard drives for nearly two years before attempting to add Brown to this lawsuit.

Plaintiff has also claimed that Brown wrongfully retained documents taken from Horizons. Amended Complaint, Paragraph 201. In fact, Ms. Brown disclosed to Plaintiff's counsel in September of 2008 all the documents she and Defendant Shelley had when Defendant Shelley was subpoenaed in other litigation. 9/18/08 Wade Letter, Exhibit No. 2. Plaintiff's counsel identified the documents she felt might have originated from Horizons at that time. Again, there is no explanation as to why Plaintiff waited a year to try to add Brown as a Defendant.

Similarly, when Brown provided Plaintiff with the hard drives on January 21, 2009 pursuant to this Court's order, the hard drives had stickers on them that indicated that BKD, LLP, had examined the hard drives. Picture of Hard Drives, Exhibit No. 3. On February 13, 2009, Plaintiff subpoenaed BKD regarding its examination of the hard drives. BKD Subpoena, Exhibit No. 4. Thus, since discovering that the hard drives had been provided to BKD, Plaintiff waited ten months before moving to amend his complaint.

In summary, Plaintiff waited nearly a year after discovering all relevant facts upon which his claims against Brown are based before filing this effort to add Brown to the lawsuit. No explanation for this delay has been proffered.

Of course, delay alone does not amount to prejudice. What does amount to prejudice is the

3

fact that the majority of discovery, including all depositions and the deposition of Brown herself, was conducted without Brown being a party. Thus, Brown did not have a chance to participate in the discovery or to question the witnesses. Likewise, Brown is severely prejudiced by the outstanding Fifth Amended Scheduling Order. Under the Order, the time for naming experts has passed, and discovery is scheduled to end January 29, 2010. This will leave little or no time for Brown to conduct what will surely be contentious discovery.[1]

Moreover, the issues for discovery are broad. With regards to liability, Brown will need to conduct discovery into the origin and status of the photographs and videos in question. As of now, it would appear that the overwhelming majority of this material either did not belong to the Estate or was not removed from Horizons. Similarly, Brown will need to conduct extensive discovery into the completely baseless allegations that the material at one point held by Brown and allegedly belonging to the Estate was distributed to media outlets and the public in general. As it currently stands, there is not one bit of evidence contradicting the statements of both Brown and Neil McCabe, the one person that Brown sent the hard drives to, that they did not provide the material to any media outlets or otherwise disclose it to the public.

With regards to damages, Brown will need to conduct discovery into the Plaintiff Estate's handling of the pictures and videos in question to determine their true value. Plaintiff has apparently named an expert on the value of this material and any testimony he provides will have to be examined. Of course, none of this discovery can take place until counsel for Brown is provided with a copy of the material that Brown allegedly held and transferred. It would literally be impossible to defend this matter without access to the material that forms the basis of all of

---

[1] At this point, Brown does not even have possession of the materials she is accused of distributing. If Brown is added as a party, the first order of business will have to be an amendment to the Preliminary Injunction allowing Brown and her counsel to maintain and review a copy of the material she is accused of wrongfully procuring and distributing.

4

Plaintiff's claim, both from a liability and from a damages standpoint. Based on the unreasonable demands of Plaintiff's counsel to date, it does not appear that Plaintiff is willing to conduct this litigation on a level playing field where Brown can see the material she is accused of unlawfully retaining and disbursing.

In summary, Plaintiff's effort to bring Brown into this lawsuit in the eleventh hour, after discovery has been nearly completed, after experts have been named and expert deadlines passed, after all major depositions have been taken, is far too late, especially in light of the fact that Plaintiff has been aware of the underlying facts for nearly a year and longer. Brown would therefore ask the Court to deny Plaintiff's motion to add her as a Defendant on the grounds of prejudice.

## II.     PLAINTIFF'S EFFORT TO ADD BROWN AS A DEFENDANT IS FUTILE.

A motion to amend can be denied on the grounds of futility if the amendment is "clearly insufficient or frivolous on its face." Oroweat Foods Co., 785 F.2d at 510-511. Courts can examine the potential futility of an amendment and deny it on the grounds that it is not a legally cognizable claim. See, e.g., Curry v. South Carolina, 518 F.Supp.2d 661, 668-69 (D.S.C. 2007).

### A.     PLAINTIFF CANNOT RELY UPON CALIFORNIA SUBSTANTIVE OR PROCEDURAL STATUTES BECAUSE THE ALLEGED CLAIMS AROSE IN SOUTH CAROLINA.

Plaintiff has apparently assumed that California law will apply to the actions of Brown. Amended Complaint, Paragraph 28. In fact, South Carolina law applies under the principal of *lex loci delicti* in that the alleged acts were committed here in South Carolina.

Because this matter is in federal court on diversity grounds, the choice of law rules of the forum state, South Carolina, apply. Klaxon v. Stentor, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the lex loci delicti, the law of the state in which the injury

5

occurred." Boone v. Boone, 345 S.C. 8, 546 S.E.2d 191, 193 (2001); Federal Ins. Co. v. Smith, 63 Fed.Appx. 630, 632 (4th Cir. 2003) (apply *lex loci delicti* to conversion claims). The fact that the Plaintiff estate is located in California does not mean that California law should apply to property allegedly converted in South Carolina. Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873 (1900).

Plaintiff has not pled causes of action under South Carolina law. Plaintiff's Second, Third, and Fifth causes of action are based on California statutes. Under South Carolina's choice of law principals, California law simply is not applicable to an alleged conversion that occurred in South Carolina. Indeed, Plaintiff's Second Cause of Action is based on California Probate Code § 850, *et seq.*, which simply sets up a procedure for making a specific performance type claim in the California Probate Court. In re Bailey's Estate 42 Cal.App.2d 509, 109 P.2d 356, 357 (1941). Because the statute creates a procedural rule, as opposed to a substantive right, it is clearly inappropriate to rely upon the statute in a South Carolina Court. McDaniel v. McDaniel, 243 S.C. 286, 289, 133 S.E.2d 809, 811 (1963) ("Procedural matters are to be determined in accordance with the law of South Carolina, the lex fori.").

Similarly, California Civil Code § 3344.1 is a procedural remedy that cannot be imported into the South Carolina court system. In fact, the statute by its very language limits its rights to those that occur solely in California:

> (n) This section shall apply to the adjudication of liability and the imposition of any damages or other remedies in cases in which the liability, damages, and other remedies arise from acts occurring directly in this state.

California Civil Code § 3344.1(n).

### B. PLAINTIFF HAS NOT PROPERLY PLED ANY CAUSE OF ACTION AGAINST BROWN.

Plaintiff's First Cause of Action is for conversion, but Plaintiff has apparently pled a California version of the tort. Plaintiff has alleged that Brown "assumed and exercised dominion

6

and control over the following Estate items in a manner inconsistent with the Estate's ownership or right of control of same."  Amended Complaint, Paragraphs 200, 201, and 202.  Under South Carolina law, to recover in an action for conversion the Plaintiff must prove: (1) an interest by the Plaintiff in the thing converted; (2) the defendants converted the property to their own use; and (3) the use was without the plaintiffs' permission.  <u>Crane v. Citicorp. Nat'l Servs., Inc.</u>, 313 S.C. 70, 437 S.E.2d 50 (1993); <u>Oxford Finance Companies v. Burgess</u>, 303 S.C. 534, 402 S.E.2d 480 (1991).  Since Plaintiff has not pled that Brown converted the property to her own use, the allegations are inadequate and futile under South Carolina law.

Plaintiff's Third Cause of Action under California Civil Code § 3344.1, even if it could be brought in South Carolina, is not applicable to any actions undertaken by Brown.  The statute bars the use of "a deceased personality's name, voice, signature, photograph, or likeness, in any manner, on **or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services** . . ."  California Civil Code § 3344.1(a)(1) (emphasis added).  Later the statute repeats:

> For purposes of this section, acts giving rise to liability shall be limited to the use, on or in products, merchandise, goods, or services, or the advertising or selling, or soliciting purchases of, products, merchandise, goods, or services prohibited by this section.

California Civil Code § 3344.1(e).  Plaintiff has neither alleged nor provided any evidence that Brown used Smith's likeness for the purpose of advertising or selling goods or services.

Plaintiff's Fourth Cause of Action is for unjust enrichment.  Under South Carolina law, unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff.  <u>Barrett v. Miller</u>, 283 S.C. 262, 321 S.E.2d 198, 199 (Ct.App.1984).  Since Plaintiff has failed to allege how Brown could possibly have been unjustly enriched by her brief retention of copies of her own client's hard

7

drives, this claim also fails.

Plaintiff's Sixth Cause of Action is based on 18 U.S.C. § 1030(a)(5), which creates criminal penalties for whosoever:

> (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
>
> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a)(5).

Again, at most, Brown accepted two hard drives from her own client, the hard drives were not removed from Horizons, and Brown did nothing but hold the hard drives and forward them to another attorney at her client's request. Brown never "accessed" a "protected computer" without authorization. Indeed, the purpose of these statutes is to criminalize "hacking" into computers, not holding on to your own client's hard drives for safekeeping. YourNetDating, Inc. v. Mitchell, 88 F.Supp.2d 870 (N.D.Ill. 2000). See also International Association of Machinists and Aerospace Workers v. Werner-Masuda, 390 F.Supp.2d 479, 495-96 (D.Md. 2005) (similar computer protection act directed toward "hacking").

Finally, Plaintiff's Seventh Cause of Action is for conspiracy. This claim is based on the prior claims, in particular an alleged violation of the California Probate Code. Amended Complaint, Paragraph 257. It does not set out the elements of civil conspiracy under South Carolina law. As such, this claim, like all the others, is futile with regards to Brown. Accordingly, the motion to amend to add Brown as a Defendant should be denied.

C. **BROWN IS IMMUNE FROM CLAIMS BY PLAINTIFF BECAUSE BROWN WAS ACTING AT ALL TIMES AS AN ATTORNEY FOR AN OPPOSING PARTY.**

All actions attributed to Brown in the Amended Complaint were undertaken in her roll as attorney for Defendants Thompson and Shelley and at their bidding. All she did was hold some material for Shelley and then provide that material to other attorneys who Shelley was considering retaining for a possible suit against Plaintiff. All of these acts were undertaken at the direction of her clients, Shelley and Thompson. In the context of Brown's involvement with the materials, she was simply providing evidence to a potential co-counsel. She took steps to insure that the other attorney would keep the material in confidence, and there is no evidence that this confidence was breached or that the material was provided to the public or to the media.

Plaintiff, an opposing party, seeks to hold Brown liable for following the instructions of her own clients and providing evidence of a potential tort to another attorney for analysis. The law does not allow for this.

Brown, as the attorney for an opposing party, is immune from liability to third persons arising from her performance of her professional activities and owes Plaintiff no duty. South Carolina has firmly declared that a party cannot sue an opposing party's attorney if the attorney acts within the scope of his representation. Garr v. North Myrtle Beach Realty Co., 287 S.C. 525, 339 S.E.2d 887 (Ct.App. 1986). An attorney is immune from liability to third persons arising from performance of his professional activities as an attorney on behalf of and with knowledge of his client. Id. at 889.

Even if an attorney lacks probable cause to act, he is not liable for doing so if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of the client's claim. Id., citing Restatement (Second) of Torts, Section 674 comment d (1975).

9

> The reasoning behind such a rule is strongly applicable to the current matter:
>
> Attorneys must be free to act and advise their clients without constant fear of harassment from lawsuits. Peck v. Chouteau, 91 Mo. 138, 2 S.W. 577 (1887). An attorney has an ethical obligation zealously to pursue any lawful claim of his client. Rule 32, Canon 7, Rules of Practice in the Supreme Court of South Carolina. If he does not properly represent and support his client's position, an attorney is subject to a suit for malpractice. To hold that an attorney who files pleadings in support of his client's position has acted overzealously, and is therefore liable to the other party in damages for malicious prosecution, would create a conflict of interest with the attorney's obligation to properly represent and support his client. Junot v. Leek, 372 So.2d 707 (La.App. 1979); W.D.G., Inc. v. Mutual Mfg. & Supply Co., [5 Ohio Op.3d 397 (1976)]. Such suits could conceivably prohibit attorneys from pursuing and developing new causes of action, and could hinder development of new legal theories. Central Florida Machinery Co. v. Williams, 424 So.2d 201 (Fla.App. 1983).

Id. at 889-90.

Plaintiff's claims against Brown are clearly barred by the Gaar opinion. The claims arise out of actions taken by Brown during the performance of her professional duties in representing her client. The South Carolina Supreme Court has made it clear that attorneys should not have to worry about claims made by adversaries while engaged in the vigorous representation of their clients. As such, the proposed Amended Complaint against Brown is futile and should not be granted.

### D. PLAINTIFF CANNOT BASE A LAWSUIT ON AN ALLEGED VIOLATION OF A COURT ORDER FOR WHICH HE IS ALREADY SEEKING SANCTIONS.

Most of Plaintiff's allegations against Brown in the Amended Complaint are based on Brown's alleged violation of the Court's Consent Order Entering Preliminary Injunction. This is not an appropriate basis for a lawsuit for two reasons.

First, Plaintiff has already chosen to pursue relief for this alleged violation by way of a motion for sanctions contemporaneously filed with the motion to amend the complaint. In other words, Plaintiff seeks two bites of the apple – both a motion for sanctions and a legal claim – for

the same action.  Assuming the motion for sanctions is denied, it will have a collateral estoppel effect on the claims in the lawsuit.  Collateral estoppel denies a plaintiff the right to re-litigate in a second action issues which were adequately and necessarily litigated and determined in an earlier proceeding.  Pye v. Aycock, 325 S.C. 426, 480 S.E.2d 455, 459 (Ct. App. 1997).

Second, a lawsuit is not an appropriate vehicle to seek sanctions for the alleged violation of a Court order.  There is no cause of action for "civil contempt."  Sanctions for violations of Rule 11 of the Federal Rules of Civil Procedure include "nonmonetary directives; an order to pay a penalty into court; or . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Rule 11(c)(4), FRCP.  There is nothing in the Rules creating a cause of action for the alleged violation of a Court order.

## CONCLUSION

Based on the foregoing, Susan M. Brown and The Offices of Susan M. Brown, PC, would hereby request that the Court deny Plaintiff's Motion to Amend his Complaint to add Brown as a Defendant.  This proposed late addition is highly prejudicial to Brown and is a futile effort in any case.

In the alternative, Brown would ask that, if she is added as a Defendant, that the Scheduling Order be amended to provide Brown adequate time to conduct discovery and to prepare and name any experts Brown deems necessary.

RESPECTFULLY SUBMITTED,

/S/ JOSEPH C. WILSON, IV
Carl E. Pierce, II (Fed. ID#3062)
Joseph C. Wilson, IV (Fed. ID#5886)
Pierce, Herns, Sloan, & McLeod, LLC
P.O. Box 22437
Charleston, SC  29413
(843) 722-7733
(843) 722-7732
joewilson@phsm.net

ATTORNEYS FOR SUSAN M. BROWN
AND THE LAW OFFICES OF SUSAN M.
BROWN, PC

November 24, 2009
Charleston, South Carolina

12